IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 1:25-cv-00254-NYW-TPO

FW-CO, Inc. d/b/a FORTIS,

    Plaintiff,

v.

CHARLES SCHULZ,
DAVID SCHUPMANN, and
TRIDENT SOLUTIONS OF SUGAR GROVE LLC,

    Defendants.

---

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

---

This matter is before the Court on the Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Emergency TRO Motion" or "Motion") filed by Plaintiff FW-CO, Inc., d/b/a Fortis ("Plaintiff" or "Fortis") on February 6, 2025. [Doc. 10].[1] Fortis seeks immediate injunctive relief to protect against irreparable harm threatened to its business if its former executive, Defendant David Schupmann ("Mr. Schupmann"), performs managerial or sales and marketing functions for Roofing USA, Inc. ("Roofing USA"), or any other competing business. *See generally* [*id.*].

For the reasons set forth in Fortis's Verified Amended Complaint, [Doc. 20]; the instant Motion, [Doc. 10]; and Fortis's oral argument at the hearing on the Emergency

---

[1] Where the court refers to the filings made in the Electronic Court Filing ("ECF") system in this action, it uses the convention [Doc. ___]. When citing to transcripts filed on the docket, this Court refers to the ECF docket number, and the original page and line number in the transcript for the purposes of consistency.

TRO Motion, *see* [Doc. 27], the Court **GRANTS** Plaintiff's request for a temporary restraining order.

## BACKGROUND[2]

This case involves an employment dispute between Plaintiff and two of its former employees, Mr. Schupmann and Charles Schulz ("Mr. Schulz"),[3] as well as an entity formed by Messrs. Schupmann and Schulz, Trident Solutions of Sugar Grove LLC ("Trident" and collectively, "Defendants"). *See* [Doc. 20 at ¶¶ 1–3]. Fortis is a roof reconditioning, replacement, and insurance company serving commercial clients looking to avoid full roof replacements, [*id.* at ¶ 23; Doc. 10 at 3], which can be "extremely expensive and cumbersome operationally," [Doc. 10 at 3]. Fortis assesses commercial roofs, performs "reconditioning" to extend the life of commercial roofs, and issues warranties to commercial clients whereby Fortis covers the cost of any additional roof reconditioning needed during the warranty period. [*Id.*; Doc. 20 at ¶¶ 23–24].

On February 27, 2018, Fortis hired Mr. Schupmann as Senior Vice President of Sales and Marketing. [Doc. 20 at ¶ 4]. In connection with the same, Mr. Schupmann signed an Employment Agreement containing various restrictive covenants (the "Agreement"). [*Id.* at ¶¶ 32–37]; *see also* [Doc. 10-1 (Agreement)]. Relevant here, the Agreement provides that Mr. Schupmann:

---

[2] The following facts are drawn from Fortis's Verified Amended Complaint, [Doc. 20], and several documents filed by Fortis in support of its Emergency TRO Motion, *see* [Doc. 10; Doc. 10-1; Doc. 10-2; Doc. 10-3], and are taken as true for the purposes of this instant Order. The Court also has drawn facts from Mr. Schupmann's Declaration provided in support of his Response to the Motion for TRO, [Doc. 21-2], and taken those as true.

[3] Mr. Schupmann hired and supervised Mr. Schulz during their respective tenures at Fortis. [Doc. 20 at ¶¶ 5, 8, 30].

2

> shall keep secret and shall not divulge any of the names of, or any other information relative to, the clients and business operations of [Fortis], and any information concerning [Fortis's] clients, employees, . . . techniques, methods, and any [and] all business associations or activities of [Fortis] and its clients and any information or knowledge that [Mr. Schupmann] acquires during [Mr. Schupmann's] employment with [Fortis].

[Doc. 10-1 at § 5.1.1]. Mr. Schupmann also agreed that he would not directly or indirectly "approach, solicit, induce, divert or hire, or attempt to approach, solicit, induce, divert or hire, any . . . customer or prospective customer" of Fortis to "terminate such . . . relationship with [Fortis]," during his employment and for two years thereafter. [*Id.* at § 5.2.1]. Finally, Mr. Schupmann also agreed that, during his employment and for two years thereafter, he would not:

> within the Area, either directly or indirectly, on his own behalf or in the service or on behalf of others, or in any other capacity which involves duties and responsibilities similar to those [Mr. Schupmann] has undertaken for [Fortis], engage in any . . . business organization . . . engaged in any business or enterprise which is the same as, or substantially the same as, the business of [Fortis].

[*Id.* at §§ 5.3, 5.3.1 ("non-competition provisions")].[4]

According to Fortis, Defendants operated a "kickback scheme" during Messrs. Schupmann and Schulz's employment in violation of the terms of the Agreement. [Doc. 20 at ¶¶ 9–11, 49–61]. Among other things, Messrs. Schupmann and Schulz guaranteed repeat business to certain contractors from within Fortis's contractor network in exchange for kickbacks, which Defendants funneled to Trident. [*Id.*]. Defendants also redirected Fortis customers and prospective customers to Trident. [*Id.* at ¶¶ 62–81]. Upon discovering and investigating Defendants' misconduct, Fortis terminated Messrs. Schulz

---

[4] The "Area" is defined as "any state or country where [Fortis] engages in any business during [Mr. Schupmann's] employment with [Fortis]." [Doc. 10-1 at § 5.3.1].

and Schupmann on August 9 and December 24, 2024, respectively. [*Id.* at ¶¶ 91, 93–94; Doc. 10 at 6].

Fortis initiated this lawsuit on January 24, 2025, *see* [Doc. 1], bringing claims for breach of fiduciary duty of loyalty and breach of contract against Defendants Schulz and Schupmann; claims for tortious interference with contract and prospective business advantage against Trident; and claims for civil theft, conversion, and civil conspiracy against all Defendants, *see generally* [Doc. 20]. Plaintiff also seeks damages and injunctive relief.[5]

On January 31, 2025, Fortis learned that Mr. Schupmann is now working for Roofing USA, "a company that provides the same services that Fortis does, namely roof repairs, replacement, and maintenance," [Doc. 10 at 10], allegedly in contravention of restrictive covenants contained in the Agreement, [*id.* at 6; Doc. 20 at ¶ 101 (alleging that Fortis "is often directly competitive with the services offered by companies like Roofing USA because a business in need of roofing services can choose to buy the Fortis warranty or have repairs done by a traditional roofing contractor")].[6] Given the role that Mr. Schupmann held at Fortis, Plaintiff asserts that he is uniquely positioned to "[e]xploit [Fortis's] strengths and weaknesses . . . to help Roofing USA tailor pitches to Fortis

---

[5] Although Fortis pleads injunctive relief as a cause of action (Count III), *see* [Doc. 20 at ¶¶ 121–28], injunctive relief is not a separate cause of action but instead a request for a certain type of relief, *Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019).

[6] Roofing USA's website advertises its "superior roofing solutions for commercial properties," and highlights "Roof Maintenance," "Roof Replacement," and "Roof Repairs," as three of its four services. [Doc. 10-3]; *see also* [*id.* (describing Roofing USA's "Roof Maintenance" service as "[a] proactive maintenance plan [that] can help you stay on top of your repairs, protect your roof's warranty, AND extend the life of your roof!")].

customers and prospects, . . . to the detriment of Fortis's additional services, including coordination of roof servicing, roof assessments, and roof management." [Doc. 20 at ¶ 101].

Accordingly, Fortis filed the instant Emergency TRO Motion on February 6, 2025. [Doc. 10].[7] On February 11, 2025, Fortis filed a Verified Amended Complaint, [Doc. 20], and shortly thereafter, Mr. Schupmann and Trident responded to the instant Motion, [Doc. 21]. The Court held a hearing on the Emergency TRO Motion on February 13, 2025. [Doc. 27].[8]

## ANALYSIS

Rule 65(b) of the Federal Rules of Civil Procedure provides for the issuance of temporary restraining orders. To merit the issuance of a temporary restraining order, the movant must establish that (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest. *See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002) (citing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996)); *Briscoe v. Sebelius*, 927 F. Supp. 2d 1109, 1114 (D. Colo.

---

[7] While the Emergency TRO Motion seeks a TRO against Mr. Schupmann and Trident, [Doc. 10 at 1], Plaintiff does not assert any independent basis for immediate injunctive relief against Trident and thus falls far short of meeting its burden to obtain a TRO against Trident. Trident, through Mr. Schupmann's Declaration under oath, represented that it "is not currently conducting business and has no plans to do so in the future." [Doc. 21 at 4 (citing [Doc. 21-1 at ¶ 8])]. Plaintiff's counsel further clarified at oral argument that Plaintiff seeks a TRO only "against Mr. Schupmann and anyone in active concert with him." [Doc. 32 at 27:11–16].

[8] Fortis and Mr. Schulz have filed a Joint Motion for Entry of Consent Preliminary Injunction, [Doc. 29], which is separately pending before the Court.

2013).   Here, Fortis contends that Mr. Schupmann's current employer, Roofing USA, is engaged in a business which is the same as, or "similar" to the business of Fortis by providing roofing replacement, repair, and maintenance services in Florida, Georgia, North Carolina, South Carolina, South Dakota, Texas, and Virginia, "just outside the warranty context ," and seeks to enforce the non-competition provisions of its Agreement with Mr. Schupmann.  [Doc. 10 at 6].  Mr. Schupmann disagrees, arguing that Fortis and Roofing USA are not competitors, as Roofing USA is in the roofing contractor business and Fortis is in the warranty business.  [Doc. 21 at 6].   Because Fortis seeks only to enforce the non-compete provisions of the Agreement, this Court construes this as a request to preserve the status quo.  *See Bar Method Franchisor LLC v. Henderhiser LLC*, 580 F. Supp. 3d 979, 988 n.6 (D. Colo. 2022) (observing that "[s]eeking the relief of simply enforcing the current terms of the Settlement Agreement, on the other hand, would preserve the status quo"); *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (quoting 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2948 (3d ed. 2018) (defining "[t]he status quo" as "the last peaceable uncontested status existing between the parties before the dispute developed")).

***Substantial Likelihood of Success on the Merits***. The Court turns first to the question of whether Fortis has established a substantial likelihood of success on the merits that Mr. Schupmann breached his Agreement with Fortis by working for Roofing USA because the analysis contained herein intrinsically impacts its consideration of irreparable harm. This Court is persuaded that Fortis has adequately established that Mr. Schupmann was "an executive or management personnel" as contemplated by Colo.

6

Rev. Stat. § 8-2-113(2)(d), so that Mr. Schupmann falls within the exception set forth in the statute.[9] *See, e.g.*, [Doc. 20-1 (referring to Mr. Schupmann as an "executive" and identifying him as a Senior Vice-President of Sales and Marketing); Doc. 20 at ¶¶ 8 (characterizing Mr. Schupmann as Mr. Schulz's supervisor), 30 (alleging that "[f]rom the start of his employment, Schupmann operated in an executive role and managed Fortis's marketing and operations staff")].

Thus, the Court now turns to the central inquiry, i.e., whether Fortis has carried its burden to establish a substantial likelihood that Mr. Schupmann:

> within the Area, either directly or indirectly, on his own behalf or in the service or on behalf of others, or in any other capacity which involves duties and responsibilities similar to those [Mr. Schupmann] has undertaken for [Fortis], engage in any . . . business organization . . . engaged in any business or enterprise which is the same as, or substantially the same as, the business of [Fortis].

[*Id.* at §§ 5.3, 5.3.1]. Based on the record currently before it, including review of Fortis's Amended Verified Complaint and the exhibits attached thereto, [Doc. 20]; the exhibits to instant Motion, [Doc. 10], this Court concludes that Fortis has carried its burden at this juncture.

While Mr. Schupmann emphasizes the distinction between the respective business models of Fortis and Roofing USA, this Court focuses on the plain language of

---

[9] In determining whether the executive or management personnel exception applies, courts consider several factors, including where the employee fits in the company's compensation structure; the number of employees under the employee's supervision; whether the alleged manager had a role in setting company strategy; and the amount of autonomy the alleged manager possessed to make business decisions. *See Exec. Consulting Grp., LLC v. Baggot*, No. 18-cv-00231-CMA-MJW, 2018 WL 1942762, at *6 (D. Colo. Apr. 25, 2018) (citing *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1122 (D. Colo. 2017); *DISH Network Corp. v. Altomari*, 224 P.3d 362, 366 (Colo. App. 2009)).

the Agreement.  First, Mr. Schupmann does not dispute that as the Vice President of Sales, he works in a managerial capacity for Roofing USA and in a capacity that involves duties and responsibilities (e.g., sales) like those he provided to Fortis.  *Compare* [Doc. 20 at ¶ 100], *with* [Doc. 21-1 at ¶ 4].  Second, the non-competition provisions do not require that Fortis's and Roofing USA's respective business models, revenue drivers, or services be identical.  Rather, the plain language of the non-competition provisions requires this Court to determine whether Roofing USA is a "Competing Business", defined broadly to mean "any business organization *of whatever form* directly engaged in *any* business or enterprise which is the same as, or is substantially the same as, the business of" Fortis.  [Doc. 20-1 at § 5.3.1 (emphasis added)].[10]

Both Fortis and Roofing USA focus on commercial roofing.  *Compare* [Doc. 20 at ¶ 10], *with* [Doc. 10-3].  In its Verified Amended Complaint, Fortis states that it provides an initial roofing reconditioning service, i.e., roofing repair work that brings the subject roof up to the Fortis's standard to qualify for a roofing warranty.  [Doc. 20 at ¶¶ 7, 23].[11] [*Id.*].  Because not all roofs are eligible for the warranty program, Fortis advises clients if the roof requires an immediate replacement, and clients may request that Fortis manage the roof replacement process.  [*Id.* at ¶ 27].  In such instances, Fortis earns a general management fee and works with its contractor network to replace the roof.  [*Id.*].  Fortis

---

[10] While Fortis utilizes the term "similar" when comparing Fortis's business to that of Roofing USA, [Doc. 10 at 6], this Court hews to the language of the Agreement that requires "the same" or "substantially the same," [Doc. 20-1 at § 5.3.1].

[11] The fact that Fortis works with outside contractors to provide the labor and materials on these projects does not belie the fact that Fortis earns revenue for this initial roofing work.

8

has received over $1,000,000 in revenue for roof replacement management projects between 2022 and 2024. [*Id.*].

Roofing USA advertises that it performs roof maintenance, replacement, and repair work. [Doc. 10-3 at 1]. Mr. Schupmann concedes that Roofing USA performs roofing installation and remediation services for commercial roofs. [Doc. 21-1 at ¶ 5]. In addition, like Fortis, Roofing USA advertises a proactive maintenance program that helps "protect your roof's warranty, AND extend the life of your roof." [Doc. 10-3 at 1]. The fact that Roofing USA does not itself provide that warranty does not undercut the fact that it is offering a roofing service to allow a client to protect its warranty. [Doc. 21-1 at ¶ 6]. Nor is it disputed that Roofing USA also manages roofing replacement processes through subcontractors. *See generally* [Doc. 21-1 at ¶ 6]. Based on the record before it, this Court concludes that Fortis has carried its burden as to a substantial likelihood of success on the merits.

***Irreparable Harm***. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") recognizes that irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). While irreparable harm often arises in the context of a breach of a non-compete agreement, *see id.* at 1263 (citing cases), the breach alone does not automatically, nor as a matter of course, allow the Court to conclude that irreparable harm exists. Instead, courts also examine the following non-exhaustive list of factors: the inability to calculate damages, harm to goodwill, diminishment of competitive

9

positions in the marketplace, loss of employees' unique services, the impact of state law, and lost opportunities to distribute unique products.  *Id.*

Fortis alleges in its Verified Amended Complaint that in his capacity at Roofing USA, Mr. Schupmann "poses a serious threat of unfair competition in that he can exploit the relationships that he developed on behalf of Fortis with commercial clients and prospects to sell roofing maintenance, repairs, and replacement," and direct Fortis's current and prospective customers away from Fortis's warranty offering and additional services.  [Doc. 20 at ¶ 101].  Fortis avers it has received multiple inquiries from Coca-Cola regarding warranty forms and contractual language, and upon information and belief, Coca-Cola has taken such action because Mr. Schupmann continues to contact Coca-Cola in an effort to solicit its business away from Fortis.  [*Id.* at ¶ 102]. Fortis further contends that the loss of goodwill cannot be compensated.  [*Id.* at 11–12].  Mr. Schupmann argues that Fortis has failed to identify "a single customer it has lost to Roofing USA, points to no confidential information Schupmann purportedly is using in his current employment, and makes no specific allegation that Schupmann is, in fact, currently attempting to compete with it."  [Doc. 21 at 5].

Though recognizing the appeal of Mr. Schupmann's argument, this Court ultimately concludes that Fortis has sustained its burden of establishing irreparable harm at this juncture for the following reasons.  As an initial matter, to the extent that Roofing USA falls within the non-compete provisions of the Agreement, Mr. Schupmann's employment alone, with duties and responsibilities similar to those he performed for Fortis, violates the Agreement.  Mr. Schupmann does not rebut Fortis's verified contention that he performs duties or has responsibilities similar to those he performed for Fortis,

10

and he is not permitted under the Agreement to work for any business organization "engaged in any business or enterprise which is the same as, or substantially the same as, the business of" Fortis. *See generally* [Doc. 21-1]. In addition, Fortis avers that Mr. Schupmann was given significant access to its customer relationships, confidential information, and trade secrets. [Doc. 20 at ¶ 32]. While Mr. Schupmann states under oath that he has never used any proprietary information or trade secrets of Fortis while at Roofing USA and that he does not intend to do so, it is unrebutted that he cannot solicit work for Roofing USA that Fortis could perform as part of its services to Fortis's former, existing, and future business prospects that were developed while Mr. Schupmann was at Fortis. Mr. Schupmann does not address Fortis's contention that he cannot contact such prospects. *See generally* [Doc. 21-2]. As a result, based on the record before the Court, Fortis's contention that Mr. Schupmann's continued contact with Fortis customers threatens irreparable harm stands unrebutted.[12]

It is well-established that Colorado courts – both state and federal – have recognized that confidential and proprietary client lists and data can constitute protectible trade secrets. *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1114 (10th Cir. 2009); *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 522 (Colo. App. 2011). Second, courts have also recognized that a receiving party of customer lists can obtain a competitive advantage in terms of soliciting business. *See Fireworks Spectacular, Inc. v. Premier Pyrotechnics,*

---

[12] The Court recognizes that the factual record on this issue is subject to better development, which may ultimately impact its determination in the context of the forthcoming preliminary injunction motion, dispositive motions, or at trial. *EIS Ultimate Holding, LP v. Huset*, No. 23-cv-02324-GPG-MDB, 2024 WL 4472008, at *18 (D. Colo. Sept. 19, 2024).

*Inc.*, 86 F. Supp. 2d 1102, 1106 (D. Kan. 2000).[13]  Third, courts have recognized that injunctive relief is especially appropriate in non-competition cases because of the difficulty in proving money damages caused by illicit competition.  *Exec. Consulting Grp.*, 2018 WL 1942762, at *8.  Fourth, human relationships and goodwill often form the backbone for a successful sale of services, and it is difficult not only to determine how to quantify the value of those intangibles, but also how to repair them once damaged.  *See, e.g.*, [Doc. 20 at ¶ 102]; *EIS Ultimate Holding, LP v. Huset*, No. 23-cv-02324-GPG-MDB, 2024 WL 4472008, at *10 (D. Colo. Sept. 19, 2024).  In finding that Fortis has met its burden as to irreparable harm, this Court notes, as others have, that "absolute certainty" is not the standard.  *Id.*

**Balance of the Harms**.  The Court does not take lightly the potential harm to Mr. Schupmann and his career in granting a temporary restraining order.  But that injury may be discounted given Mr. Schupmann's awareness of his contractual obligations to Fortis when he took his position with Roofing USA.  *See Core Progression Franchise LLC v. O'Hare*, No. 21-cv-0643-WJM-NYW, 2021 WL 1222768, at *10 (D. Colo. Apr. 1, 2021), *aff'd,* No. 21-1151, 2022 WL 1741836 (10th Cir. May 31, 2022) (discounting injury to defendant based on the fact that the defendant brought that injury upon itself); *Fitness Together Franchise, L.L.C. v. EM Fitness, L.L.C.*, No. 20-cv-02757-DDD-STV, 2020 WL 6119470, at *11 (D. Colo. Oct. 16, 2020) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002));

---

[13] Not surprisingly in these kinds of cases, there is currently an asymmetry of information at this juncture regarding Mr. Schupmann's use of confidential customer lists or data that may be cured through the contemplated expedited discovery.

12

*ConvergeOne, Inc. v. Logicalis, Inc.*, No. 22-cv-02151-HLT-ADM, 2022 WL 2791177, at *12 (D. Kan. July 15, 2022).  This Court concludes that the balance of harms tips in favor of Fortis, but this Court will tailor the TRO to minimize the harm to Mr. Schupmann.

**Public Interest**.   Preventing unfair competition and enforcing appropriate restrictive covenants under Colorado law helps protect and encourage investment in not only businesses, but employees.  See *Bar Method Franchisor,* 580 F. Supp. 3d at 997 (collecting cases).  Simply put, "it is in the public interest for laws to be obeyed and contracts to be observed."  *Panorama Consulting Sols., LLC v. Armitage*, No. 17-cv-01400-RM, 2017 WL 11547493, at *4 (D. Colo. June 9, 2017).

**Duration.**   Plaintiff did not simultaneously move for a preliminary injunction, *see* [Doc. 10], and at oral argument, indicated that it only sought a TRO until the time of the preliminary injunction hearing.  [Doc. 32 at 53:12–16].  Generally, a TRO expires within 14 days of issuance, unless the Court extends it for good cause.  Fed. R. Civ. P. 65(b)(2).  Here, the Court finds good cause to extend the TRO, up to and including the determination of the forthcoming motion for preliminary injunction, with the explicit recognition that expedited discovery and a more fulsome record could tip the Court's consideration regarding the entry of a longer preliminary injunction in either Party's favor.

**Security**.   Rule 65(c) provides as follows:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c). Given the restrictions on Mr. Schupmann's employment, this Court finds that security is required, in the amount of Mr. Schupmann's compensation and

13

benefits (to the extent that they will not continue), for the duration of the TRO.

Thus, for the reasons set forth in herein, Plaintiff's request for a TRO is **GRANTED, subject to the posting of a bond and only until the determination of the forthcoming Motion for Preliminary Injunction**.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 10] is **GRANTED** as follows:

    (a) Defendant David Schupmann is restrained from engaging in managerial or sales and marketing functions for any entity that offers commercial roof maintenance plans, commercial roof repairs, or commercial roof replacements in any state in which FW-CO, Inc. d/b/a Fortis operated between February 27, 2018 and December 24, 2024;

    (b) Pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure, this Temporary Restraining Order shall expire upon the Court's ruling on Plaintiff's request for a preliminary injunction;

    (c) Pursuant to Fed. R. Civ. P. 65(c), Plaintiff shall post bond in an amount equal to Mr. Schupmann's anticipated compensation with Roofing USA for the period this Order remains in effect;

        i. On or before **February 26, 2025**, the Parties shall **meet and confer** regarding the necessary inputs for calculating the bond amount, which will be calculated based on Mr. Schupmann's

compensation (and if applicable, benefits) at Roofing USA while this Order is in effect;

ii. To the extent the Parties can agree, the Parties shall **FILE** a stipulation as to the bond calculation by no later than **February 28, 2025**; and

iii. To the extent the Parties are unable to reach an agreement, the Parties shall jointly contact chambers by no later than **February 28, 2025** to schedule a status conference; and

(2) Pursuant to Fed. R. Civ. P. 65, a preliminary injunction hearing is **SET** for **May 30, 2025** at **9:00 a.m.** in Courtroom A 902 before Judge Nina Y. Wang, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado 80294. The Parties shall submit all proposed exhibits and witness lists no later than **May 23, 2025**;

(3) Any expedited discovery shall be completed by no later than **April 8, 2025**; Fortis shall **FILE** its forthcoming Motion for Preliminary Injunction by no later than **April 29, 2025**; and any response thereto shall be filed by no later than **May 13, 2025**. No reply shall be permitted absent leave of the Court; and

(4) A telephonic Status Conference is **SET** for **February 26, 2025** at **11:00 a.m.** before Judge Nina Y. Wang to discuss the pending Joint Motion for Entry of Consent Preliminary Injunction [Doc. 29]. The Parties shall participate using the following dial-in information: 571-353-2301; Access Code: 783456374.

DATED: February 24, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge