**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 1:25-cv-00254-NYW-TPO

FW-CO, Inc. d/b/a FORTIS,

    Plaintiff,

v.

CHARLES SCHULZ,
DAVID SCHUPMANN, and
TRIDENT SOLUTIONS OF SUGAR GROVE LLC,

    Defendants.

___

**ORDER ON MOTION FOR PRELIMINARY INJUNCTION**
___

This matter is before the Court on Plaintiff FW-CO d/b/a Fortis's ("Plaintiff" or "Fortis") Motion for Preliminary Injunction (the "Motion" or "Motion for Preliminary Injunction"), [Doc. 61, filed April 29, 2025].[1] Plaintiff seeks the issuance of a preliminary injunction against its former employee, Defendant David Schupmann ("Defendant" or "Mr. Schupmann"). Plaintiff seeks injunctive relief to protect against alleged irreparable harm threatened to its business if its former executive, Mr. Schupmann, performs managerial or sales and marketing functions for his new employer, Roofing USA, Inc. ("Roofing USA"). *See generally* [*id.*]. Plaintiff brings the Motion pursuant to Fed. R. Civ. P. 65(a). [*Id.* at 1].

---

[1] When citing to a filing on the docket in this action, this Court uses the convention [Doc. __] and the page number assigned by the District's Electronic Court Files ("ECF") system. With respect transcripts of hearings or depositions, the court refers to the [Doc. ____], but the page and line number from the original transcript for the sake of consistency.

1

For the reasons set forth herein, the Motion for Preliminary Injunction is respectfully **DENIED**.

## BACKGROUND

The Court has previously recited the factual background of this case and will thus focus on the factual allegations as most pertinent to a preliminary injunction. *See* [Doc. 35 at 2–5]. This case stems from a dispute regarding the alleged breach of a non-compete clause in an employment contract between Fortis and Mr. Schupmann (the "Agreement"). *See* [Doc. 20]. Two relevant provisions in the Agreement frame the dispute. First, the non-compete provision (or "the non-compete clause") provides:

> During the Employment Period and for a period of two (2) years following the termination of such Employment Period, the Executive shall not (except on behalf of or with the prior written consent of the Company), within the Area, either directly or indirectly, on his own behalf or in the service or on behalf of others, as a manager or consultant, or in any other capacity which involves duties and responsibilities similar to those the Executive has undertaken for the Company, engage in any Competing Business. As used in this Agreement, "Area" means any state or country where the Company engages in any business during Executive's employment with the Company. As used in this Agreement, "Competing Business" means any business organization of whatever form directly engaged in any business or enterprise which is the same as, or substantially the same as, the business of the Company.

[Doc. 61-1 at 8 ¶ 5.3–5.3.1]. Second, the non-solicitation provision (or "the non-solicitation clause") provides:

> During the Employment Period and for a period of two (2) years following the termination of such Employment Period, the Executive shall not, either directly or indirectly, on the Executive's own behalf or on behalf of others, approach, solicit, induce, divert or hire, or attempt to approach, solicit, induce, divert or hire, any employee or customer or prospective customer of the Company, whether or not the employment or relationship of any such person or entity is pursuant to a written agreement or for a determined period or at will, to terminate such employment or relationship with the Company. Executive's agreement to not solicit customers shall be limited to the Area defined below in subparagraph 5.3.1.

[*Id.* at 7–8 at ¶ 5.2].

Plaintiff alleges that Mr. Schupmann violated the non-compete clause contained in the Agreement by taking on managerial and sales duties at Roofing USA, which Fortis contends is a Competing Business under the terms of the Agreement. [Doc. 61 at 1–2]. Based on the written record before it, and to allow the Parties to be heard on a subsequent Motion for Preliminary Injunction, the Court issued a Temporary Restraining Order ("TRO") on February 24, 2025. [Doc. 35 at 14]. The TRO prohibits Mr. Schupmann "from engaging in managerial or sales and marketing functions for any entity that offers commercial roof maintenance plans, commercial roof repairs, or commercial roof replacements in any state in which FW-CO, Inc. d/b/a Fortis operated between February 27, 2018 and December 24, 2024." [*Id.*].

On April 29, 2025, Plaintiff filed the instant Motion for Preliminary Injunction, [Doc. 21], and a Motion for Contempt, alleging that Mr. Schupmann had violated the TRO, [Doc. 62]. Plaintiff asserts four bases justifying a preliminary injunction:

> "(1) [Mr.] Schupmann began to provide services for Roofing USA while he was still employed by Fortis; (2) since he was officially hired by Roofing USA, he has assisted Roofing USA with developing a proactive roofing services offering that directly rivals the value proposition Fortis provides to its customers and prospects; (3) Roofing USA's marketing is nearly identical to Fortis's; and (4) [Mr.] Schupmann has continued to perform managerial, sales, and marketing functions on behalf of Roofing USA even after the entry of this Court's temporary restraining order."

[Doc. 61 at 1–2]. In response, Defendant argues that Fortis is not substantially likely to succeed on the merits, because Fortis failed to pay Mr. Schupmann wages and benefits due under the Agreement, rendering it unenforceable and Plaintiff's allegations of irreparable harm are merely speculative. [Doc. 74 at 7–9]. Mr. Schupmann also argues

3

that he has made a good-faith effort to comply with the TRO, making a preliminary injunction unnecessary. [Doc. 90 at 112:23–114:16].

The Court held a hearing on the Motion for Preliminary Injunction ("the PI Hearing") and took the Motion under advisement on May 30, 2025. [Doc. 89].

## LEGAL STANDARDS

Fed. R. Civ. P. 65(a) provides that a "court may issue a preliminary injunction only on notice to the adverse party." The primary goal of a preliminary injunction is to preserve the pre-trial status quo. "Status quo" is defined as the last uncontested status between the parties that preceded the controversy until the outcome of the final hearing. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). The United States Court of Appeals for the Tenth Circuit ("the Tenth Circuit") has stated that a preliminary injunction is an extraordinary remedy in equity. *See Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). The party seeking a preliminary injunction has the burden of demonstrating: "(1) a substantial likelihood that it will ultimately succeed on the merits of its suit; (2) it is likely to be irreparably injured without an injunction; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest." *Id.* at 1117 (citing *Gen. Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007). Because a preliminary injunction is extraordinary by nature, a movant must demonstrate its right to relief is clear and unequivocal. *See Schrier*, 427 F.3d at 1258.

## ANALYSIS

Because granting a preliminary injunction requires a showing on each factor and

4

this Court finds the element of irreparable harm to be dispositive, its analysis focuses solely on this element.  See *Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1095 (D. Colo. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23–24 (2008)) (holding that "[a] proper consideration" of the balance of equities and public interest "alone requires denial of the requested injunctive relief" and, therefore, declining to address the likelihood of success on the merits); *see also Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) (declining to address every factor because "the resolution of them will have no bearing on the outcome")).

I. **Irreparable Harm**

The Tenth Circuit recognizes irreparable harm as the "single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).  To satisfy the irreparable harm prong, a party must demonstrate that an injury is "certain, great, actual and not theoretical."  *Schrier*, 427 F.3d at 1267.  The harm may not merely be serious or substantial, it must be so serious and so imminent that there is a clear and present need for equitable relief to prevent the harm.  *Id.*  The "burden of showing irreparable harm is not an easy burden to fulfill."  *Keybank Nat'l Ass'n v. Williams*, No. 20-1384, 2022 WL 402379, at *3 (10th Cir. Feb. 10, 2022) (quotation omitted).  If the harm could be remedied through an award of compensatory damages or other relief, it is not irreparable.  *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003).  However, a party can satisfy the irreparable harm prong by demonstrating that a court could not effectively grant monetary relief for the injury in the absence of preliminary injunctive relief. *Exec. Consulting Grp. v. Baggot,* No.18-cv-CMA-MJW-00231, 2018 WL 1942762,

5

at *7 (D. Colo. Apr. 25, 2018).

When considering the presence of irreparable harm, the Court may consider "the difficulty in calculating damages" and the "existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video*, 356 F.3d at 1264. "Harm to goodwill can be irreparable even where the party seeking relief has not lost the customer entirely." *Keybank*, 2022 WL 402379, at *3. In such a circumstance, damages may not adequately compensate a plaintiff if the relevant business's foundation is "personal contacts and a knowledge of the special needs and requirements of customers." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191–92 (10th Cir. 2009) (quotation omitted) (concluding that the customer goodwill was a valuable commodity that the non-compete agreements were designed to protect and that damage to goodwill could constitute irreparable harm). However, pure economic loss "including the loss of business" is usually not irreparable harm absent other harm. *Keybank*, 2022 WL 402379, at *4; *see also First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1140, 1143 (10th Cir. 2017) (concluding that the district court erred in granting a preliminary injunction in light of its finding that possible damages caused by a former employee's use of a plaintiff employer's customer list to solicit clients would be quantifiable and the award of damages would remunerate the plaintiff adequately).

Plaintiff argues that irreparable harm exists for three reasons: (1) the law creates a presumption of irreparable harm in the context of the breach of a non-compete clause; (2) monetary damages will be difficult to calculate; and (3) Mr. Schupmann is able to "weaponize [his] access" to Fortis's "customer relationships, confidential information, and trade secrets" to support Roofing USA's business. [Doc. 61 at 20–22]. The Court will

address each argument in turn.

### A. Presumption of Irreparable Harm

Plaintiff contends that "breach is the controlling factor and injunctive relief follows almost as a matter of course. Damage is presumed to be irreparable and the remedy at law is considered inadequate." [*Id.* at 21 (first citing *Miller v. Kendall*, 541 P.2d 126, 127 (Colo. App. 1975); and then citing *Emp. Television Enters., LLC v. Barocas*, 100 P.3d 37, 44 (Colo. App. 2004)]. At the hearing, Plaintiff further argued that the Agreement creates a presumption of irreparable harm. [Doc. 90 at 165:6–166:20]. This Court respectfully disagrees.

Most significantly, the legal authority cited by Plaintiff does not support its contention. Plaintiff's reliance on *Employment Television Enterprises, LLC v. Barocas* is misplaced. *Barocas* did not arise from the context of a preliminary injunction to enforce a noncompetition provision of an employment contract, but rather a sale of a partnership interest. *See* 100 P.3d at 41. Furthermore, a jury in *Barocas* had already rendered a verdict that the defendant had breached its purchase agreement with the plaintiff; there is no discussion of how a presumption might apply in the context of a preliminary injunction. *Id.* at 42. Similarly, *Miller v. Kendall* also appears to arise after "[t]he trial court found that no damages had been proven and so denied the damages claim, but it granted plaintiffs' prayer for an injunction." 541 P.2d at 127. Indeed, at least one Colorado state appellate court has **declined expressly** to extend the presumption of irreparable harm to the enforcement of noncompetition agreements against an employee, explaining:

> We decline to extend the presumption [of irreparable injury] in *Ditus* to the enforcement of a noncompete agreement against an employee for the protection of trade secrets. *Cf. Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 787 (Colo. App. 2000) (noting that covenants not to compete ancillary to the

7

sale of a business "may be interpreted more liberally than an employer-employee noncompetition covenant"); *DBA Enters.*, 923 P.2d at 302 (noting that the purpose of a covenant not to compete is different in the employee context than in the sale of a business, which includes "protect[ing] the good will inherent in the purchase). Such a presumption is inconsistent with the public policy animating Colorado's statutory scheme voiding most covenants not to compete. Instead, as with any request for a preliminary injunction, the moving party must carry its burden of proving irreparable harm (in addition to the other *Rathke* factors) in order to be entitled to preliminary injunctive relief.

*A & A Quality Appliance, Inc. v. Vo*, No. 20CA0390, 2021 WL 12346844, at *4 (Colo. App. Aug. 5, 2021) (footnote omitted).[2] Federal courts have likewise rejected this authority in the past when plaintiffs invoke it in the context of a preliminary injunction under Rule 65. *See DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1130 (D. Colo. 2017) (rejecting the proposition that that the court may simply presume irreparable harm simply because this case involves a noncompete covenant, trade secrets, or the like at the preliminary injunction phase).

Furthermore, this Court applies "federal standards applicable to preliminary injunctive relief" pursuant to Federal Rule of Civil Procedure 65. *See Big O Tires, LLC v.*

---

[2] Frankly, this Court is troubled by the fact that neither side cited *A & A Quality Appliance, Inc. v. Vo*. Under Rule 11 of the Federal Rules of Civil Procedure, by presenting the Motion for Preliminary Injunction to the Court, Plaintiff and its counsel was certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 3.3 of the Colorado Rules of Professional Conduct provides that a lawyer shall not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Colo. RPC 3.3(a)(2). In addition, this Court has no obligation to perform legal research or make arguments on behalf of any party, particularly ones who are ably represented by counsel. *See United States v. Davis*, 622 Fed. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

8

*Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1118 (D. Colo. 2010) (citation omitted).  Therefore, even if Colorado courts recognize any presumption of irreparable harm—which is not supported by the cases to which Plaintiff cites—Fortis must still satisfy all four federal factors to warrant a preliminary injunction in this case.[3]  *Id.* at 1118–19.

Accordingly, the Court respectfully rejects Plaintiff's argument regarding the application of a presumption of irreparable harm in the context of a preliminary injunction.

### 2. Compensable Monetary Damages

Plaintiff contends that injunctive relief is "particularly appropriate" in the context of non-compete agreements, [Doc. 61 at 20], because proving monetary damages is "very difficult," [Doc. 90 at 165:16–24, 166:11–25, 167:1–4].  Specifically, Plaintiff alleges that the Court would be "unable to grant a complete monetary remedy to Fortis" because the full extent of damages would be incalculable.  [Doc. 61 at 21].  To support this argument, Plaintiff states that Roofing USA is a competitor of Fortis, the two companies have similar branding and marketing, and Mr. Schupmann is an experienced salesperson who will take advantage of with knowledge of Fortis's trade secrets and customer relationships to "build . . . Roofing USA into something a lot more sophisticated than . . . when it was a residential roofing company not long ago."  [*Id.* at 21–22; Doc. 90 at 168:6–9].  At oral

---

[3] In the context of a trade secret misappropriation, the Tenth Circuit has rejected a presumption of irreparable harm in the context of a preliminary injunction, observing that the presumption of irreparable harm does not apply when a statute merely authorizes—rather than mandates—injunctive relief.  *See Malamed*, 874 F.3d at 1143.  Analogous here, there is no authority cited to suggest that Colorado common law mandates permanent injunctive relief even if Fortis ultimately prevails.  Indeed, Fortis agreed in the context of the preliminary injunction against Defendant Charles Schulz that any non-competition or non-solicitation obligations arising from his employment agreement would naturally expire on August 9, 2026 and August 9, 2025, respectively, regardless of whether this action was resolved at that point.  [Doc. 75 at ¶ 2].

argument, Plaintiff argued that if Mr. Schupmann continued to work at Roofing USA and build Roofing USA's business based on knowledge from Fortis, he would make Roofing USA a "formidable competitor" and thus irreparably harm Fortis. [Doc. 90 at 156:8–11]. The Court interprets Fortis's argument to be that one advantage of an enforceable non-compete provision in the Agreement is that it bargained for, and would enjoy, two years free of competition from Mr. Schupmann. But as discussed above, the existence of a non-compete alone is insufficient to satisfy the irreparable harm requirement for a preliminary injunction, under either Colorado or federal law. And the additional evidence before the Court now does not support a finding of irreparable harm.

Fortis did not adduce evidence that Mr. Schupmann is currently using any trade secrets from Fortis to compete with it. Indeed, Rick Lewis ("Mr. Lewis"), the President and CEO of Fortis, testified at deposition that:

> Q      Do you have any information that Mr. Schupmann right now is in possession of trade·secret information of Fortis?
>
> A       No, but I don't know that he doesn't. And he was -- he was in the room where -- where decisions were made about -- big decisions about strategy and capitalization and -- and regulation and -- so he's intimately familiar with market strategy, intimately familiar with how we use the reinsurance to back the warranties. He's intimately familiar with how the risk financing evolved over a period of what's now 22 years.
>
> Q      Okay. So you're not aware that he has any of this information. Are you -- do you have any information that would suggest that he, during his employment with Roofing USA, prior to the entry of the TRO in this case, utilized any Fortis confidential trade secret or other protected information?
>
> A      Well, with Roofing USA or with other parties?
>
> Q      With Roofing USA.
>
> A      I'm not -- I mean, my judgment is he's capable. Do I have evidence of it having occurred? No. Do I think it's a risk? Absolutely.

[Doc. 74-4 at 75:4–76:3].

Nor are there allegations or sufficient evidence in the record to demonstrate that Mr. Schupmann copied or maintains access to Fortis's trade secrets, defined to include "manuals, programs, documents, computer programs, compilations of technical data, client and prospective client lists, specifications and other records of any nature relating to the Company, its clients or others, or any reproductions." [Doc. 20 at ¶ 34 (citing [Doc. 20-1 at ¶ 5.1.1])]. *See generally* [Doc. 20; Doc. 90]. At the Preliminary Injunction hearing, Mr. Schupmann testified that his access to Fortis's computer system was shut down upon his termination. [Doc. 90 at 113:10–12]. To be sure, Mr. Schupmann also testified at the Preliminary Injunction hearing that after his access to Fortis's computer system was shut down:

> Q. Do you have any proprietary information of Fortis' in your possession?
>
> A. I have some documents for the trial that I was asked to preserve. But, I mean, I don't have anything beyond that.

[Doc. 90 at 113:10–17]. But Fortis did not adduce any additional evidence about the documents that Mr. Schupmann preserved, or their significance to assessing whether there is an imminent threat that Fortis will lose market share to Roofing USA. Even taken together, this evidence is insufficient for Fortis to carry its burden.

"Purely speculative harm will not suffice, but rather, a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative" and will be held to have satisfied his burden. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (cleaned up). And while diminution of competitive advantage in the marketplace may support a finding of irreparable harm, a party seeking an injunction must nevertheless demonstrate that such irreparable harm is imminent. *See Loxo Oncology,*

11

*Inc. v. Array Biopharma Inc.*, No. 18-cv-03062-PAB-MEH, 2019 WL 10270263, at *6 (D. Colo. June 26, 2019) (applying *RoDa* to an action involving breach of the duty of loyalty and trade secret misappropriation). Fortis has not carried its burden of establishing irreparable harm based on the mere threat that Roofing USA will become more of a competitive threat to Fortis based on its TRM program.

Nevertheless, because the ability to calculate compensatory damages in the instant case is intertwined with Plaintiff's allegations regarding current and prospective customers, the Court turns to that issue now to determine if taken together, Fortis has carried its burden.

### C.    Customer Relationships

Plaintiff argues that absent a preliminary injunction, Mr. Schupmann will make Roofing USA a "formidable competitor," [Doc. 90 at 156:1–11], and continue to threaten some of Fortis's most prominent customer relationships while violating both the non-compete and the non-solicitation provision of the Agreement. [Doc. 61 at 21]. As discussed above, the non-solicitation provision provides, in pertinent part, that Mr. Schupmann "[f]or a period of two (2) years following the termination of such Employment Period, [Mr. Schupmann] shall not, either directly or indirectly. . . .solicit, induce, divert or hire, or attempt to approach, solicit, induce divert, or hire, any employee or customer or prospective customer of [Fortis]. [Doc. 61-1 at 7 ¶ 5.2]. Fortis alleges that Mr. Schupmann has diverted work from a pre-existing customer, Coca-Cola, and is attempting to solicit work from a prospective customer, Greystar. [Doc. 61 at 21; Doc. 90 at 42:24–43:2]. Plaintiff alleges that Mr. Schupmann "is integral to the Coca-Cola relationship," [Doc. 90 at 155:22–23], and that he "diverted non-warranty [C]oke work to

12

Roofing USA." [*Id.* at 151:5–10]. Fortis further alleges that Mr. Schupmann "has clearly stated that he intends to solicit at least one of Fortis's active prospects, Greystar, despite the Agreement's non-solicitation provision." [Doc. 61 at 21 (citing Doc. 61-10 at 2)]. Plaintiff cites to an email that Mr. Schupmann wrote to Brian Tice, the owner of Roofing USA, in which he states, "[l]ooking to climb the ladder at Greystar to see if we can get more of a top down push to help us gain more traction." [Doc. 61-10 at 2].

The loss of business itself is not necessarily irreparable harm because it can be compensable. *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1190 (10th Cir. 2008) ("[L]oss of business can be compensated in money damages."). For instance, a court in this District concluded that it would be possible to compensate a plaintiff former employer with monetary damages for defendant former employees' engagement with particular customers and deals. *KeyBank Nat'l Ass'n v. Williams*, No. 1:19-cv-03714-CMA-SKC, 2020 WL 6257180, at *8 (D. Colo. Sept. 11, 2020) ("Because these deals are identifiable and known, to the extent they were the result of misappropriation, unlawful competition, breach of contract, etc., it's possible to compensate [the former employer] with monetary damages."), *recommendation aff'd in relevant part*, 2020 WL 6255293 (D. Colo. Sept. 28, 2020).

Other courts have entertained similar arguments that "it [wa]s difficult to know how many current or potential customers" the defendant would take from the plaintiff, but such courts still found inadequate basis to conclude that irreparable harm existed. *See, e.g.*, *Email on Acid, LLC v. 250ok, Inc.*, No. 19-cv-3496-WJM-MEH, 2020 WL 364562, at *4 (D. Colo. Jan. 22, 2020). Given the record before the Court, while there is ample evidence that Mr. Schupmann and his co-Defendant Mr. Schulz had

undisclosed communications with Fortis customers about side businesses during their employment, Fortis has failed to carry its burden to demonstrate that those communications continue into their current employment. Mr. Lewis testified at deposition:

> Q    Do you believe, as you sit here today, Mr. Lewis, that Mr. Schupmann has had any contact with representatives of Coca-Cola?
>
> A    I don't -- I do not have any factual evidence that suggests that he's interfered or trying to interfere with that relationship. What I do know is he attempted to carve it out -- carve out eight to ten different relationships in the noncompete that represented a significant portion of our revenue in that we ultimately ended up rejecting. And I think the carve-out for Coke was on the basis that Roofing USA had done work for them in the past. And, of course, we have a pretty deep relationship with Coke and made an inquiry about the nature of the relationship with Roofing USA and Coke. And verbatim from Darren Gonsalves, who is at the top of the hierarchy that we deal with, he -- he stated unequivocally, I've never heard of them.
>
> Q    Mr. Gonzales stated that he had never heard of Roofing USA?
>
> A    That's correct.

[Doc. 74-4 at 18:24–19:19].

Without more, courts considering the potential loss of customers have stated that "these losses are purely economic" because the plaintiffs could later solicit evidence regarding the losses, including customer lists, pricing models, customer use of the service, and other information to accurately calculate the losses. *Email on Acid,* 2020 WL 364562, at *4. Plaintiff has not introduced evidence that Fortis's "potential loss [will] threaten[] . . . the continued viability of the entire business." *See id*.

With respect to trade secrets and confidential information, Fortis alleges that Roofing USA did not offer the TRM program before Mr. Schupmann joined the company, as Mr. Schupmann stated in his deposition: "[t]hey were offering a maintenance program

14

of some sort, but just trying to define it, and give it some different options." [Doc. 61-2 at 94:16–23]. Mr. Tice stated that Roofing USA had just started offering the TRM program in "the last couple of months" and sought to bring Mr. Schupmann in to help develop the TRM program. [Doc. 61-3 at 43:1–44:13]. Fortis claims that Roofing USA developed the TRM program after it hired Mr. Schupmann and that the two programs are direct competitors. [Doc. 61 at 16–17].

In *Keybank,* the Tenth Circuit concluded that the district court did not abuse its discretion in denying a preliminary injunction despite finding that former employees' "took and had unfettered access to. . . . [r]eports, solicited and closed deals with [their former employer's] customers, and continue[d] to use [their former employer's] confidential information to divert business to [their company]." 2022 WL 402379, at *4. The Tenth Circuit concluded that the operative question was not whether the former employees' allegedly prohibited conduct occurred, but rather whether such conduct caused injury that was non-compensable. *Id.* Importantly the court stated that, "not all plaintiffs who have already suffered lost customers, stolen trade secrets, or intangible injury can show a sufficient probability of future irreparable harm to warrant a preliminary injunction." *Id.* (quoting *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1271 (10th Cir. 2018)). In *Keybank,* the plaintiffs alleged that defendants had violated confidentiality agreements and non-compete agreements they signed when they obtained new employment and shared confidential documents. *Id.* at *1. However, the district court concluded, and the Tenth Circuit affirmed, that there was no evidence that defendants had used specific pieces of confidential information to compete with Keybank or divert customers from Keybank. *Id.* at *2, *4.

15

Similarly in the instant case, at this point, Plaintiff has not adduced sufficient evidence that Mr. Schupmann has used confidential information or trade secrets from Fortis to further develop Roofing USA's TRM program. Even if Plaintiff had introduced evidence regarding Mr. Schupmann's improper use of trade secrets or confidential information to develop the TRM program and garner more customers, Plaintiff could nevertheless solicit information regarding the contract prices and agreements to calculate damages. *See id.* at *2, *4 (affirming district court's finding that "even if [defendant's] deals were the result of misappropriation or unlawful competition, any injury [plaintiff] suffered could be quantified and compensated by money damages after trial").

While the Court is sympathetic to Plaintiff's concerns regarding its business, the Court respectfully concludes that at this time, Plaintiff has not adequately adduced evidence of irreparable harm so that the Court could conclude that the right to a preliminary injunction is clear and unequivocal. Because Plaintiff has not carried its burden with respect to the irreparable harm prong, which is the "single most important prerequisite for the issuance of a preliminary injunction," the Court need not address the other factors, and the Court respectfully declines to issue a preliminary injunction. *Dominion Video Satellite, Inc.,* 356 F.3d at 1260. **In so doing, this Court does not pass on the enforceability of the restrictive covenants in the Agreement and expressly advises Defendants that—even absent a preliminary injunction—they may still be bound by such covenants until and unless further Order of the Court, or verdict by the jury.**

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

16

(1)   Plaintiff's Motion for Preliminary Injunction [Doc. 21] is **DENIED**;

(2)   No later than August 1, 2025, the Clerk of the Court is **DIRECTED to EXONERATE** the bond of $ 81,000 posted by Defendant David Schupmann [Doc. 38]; and

(3)   No later than August 1, 2025, Plaintiff shall **SHOW CAUSE** as to why the Motion for Contempt [Doc. 62] should not be denied given the Court's rulings herein.  Failure to respond to the Order to Show Cause may result in the denial of the Motion for Contempt [Doc. 62], and the associated Motion to Strike Plaintiff's Reply in Support of Motion for Contempt. [Doc. 88].

DATED:  July 25, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge