IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00254-NYW-TPO

FW-CO, INC. d/b/a Fortis Warranty,

      Plaintiff,

v.

CHARLES SCHULZ,
DAVID SCHUPMANN, and
TRIDENT SOLUTIONS OF SUGAR GROVE, LLC,

      Defendants,

v.

FW-CO, INC. d/b/a Fortis Warranty, and

Richard M. Lewis,

      Respondents.

---

## DEFENDANT DAVID SCHUPMANN AND TRIDENT SOLUTIONS OF SUGAR GROVE, LLC'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND AMENDED COUNTERCLAIMS

Defendants David Schupmann ("Mr. Schupmann") and Trident Solutions of Sugar Grove, LLC ("Trident") (collectively, "Defendants"), by and through undersigned counsel, hereby submit their Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Second Amended Complaint (the "Complaint") [ECF 105] as follows:

The opening quote before Paragraph 1 of the Complaint is not an allegation to which any answer is required. To the extent that an answer is required, Defendants deny the allegations to the extent that there are any in the opening quote before Paragraph 1.

1.      Defendants deny all alleged wrongdoing and deny the allegations contained in Paragraph 1 of the Complaint.

2.      Paragraph 2 of the Complaint contains allegations directed at defendants other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny those allegations in Paragraph 2 of the Complaint, and therefore deny the same. Defendants deny any remaining allegations in Paragraph 2 of the Complaint that are directed at them.

3.      Defendants deny the allegations contained in Paragraph 3 of the Complaint.

4.      Defendants admit that Plaintiff hired Mr. Schupmann on or around February 27, 2018. Defendants lack sufficient information to admit or deny any remaining allegations in Paragraph 4 of the Complaint, and therefore deny the same.

5.      Defendants admit that Mr. Schupmann was involved in Plaintiff's decision to hire Mr. Schulz. Defendants deny the remainder of the allegations contained in Paragraph 5 of the Complaint, in part, because they are vague.

6.      Defendants admit the allegations in Paragraph 6 of the Complaint.

7.      Paragraph 7 of the Complaint contains allegations directed at defendants other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 7 of the Complaint, and therefore deny the same.

175420238.1

8.      Defendants admit that (a) Mr. Schupmann supervised Mr. Schulz during a portion of their respective employment with Plaintiff; and (b) Mr. Schupmann earned a base salary of $400,000.00 during a portion of his employment with Plaintiff and was eligible to earn certain additional bonuses based upon his performance. Defendants deny that Mr. Schupmann earned over $1.1 million in 2023 or that he averaged wages of $700,000.00 per annum in the last three years of his employment. The remainder of Paragraph 8 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny those allegations in Paragraph 8 of the Complaint that are directed to them, and therefore deny the same.

9.      Paragraph 9 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny those allegations in Paragraph 9 of the Complaint, and therefore deny the same. Defendants deny allegations contained in Paragraph 9 of the Complaint that are directed at them.

10.     Defendants admit that Mr. Schupmann created Trident. Defendants deny all remaining allegations contained in Paragraph 10 of the Complaint.

11.     Defendants deny the allegations contained in Paragraph 11 of the Complaint.

12.     Defendants deny the allegations in Paragraph 12 of the Complaint.

175420238.1

13.     Defendants deny the allegations in Paragraph 13 of the Complaint.

14.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 14 of the Complaint, and therefore deny the same.

15.     Defendants admit the allegations in Paragraph 15 of the Complaint.

16.     Defendants admit that Mr. Schupmann is subject to the personal jurisdiction of this court. Defendants deny the remaining allegations in Paragraph 16 of the Complaint.

17.     Paragraph 17 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 17 of the Complaint, and therefore deny the same.

18.     Paragraph 18 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 18 of the Complaint, and therefore deny the same.

19.     Defendants admit the first sentence contained in Paragraph 19 of the Complaint. The remainder of the allegations contained in Paragraph 19 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the remaining allegations contained in Paragraph 19 of the Complaint.

175420238.1

20.     The allegations contained in Paragraph 20 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations contained in Paragraph 20 of the Complaint. Defendants specifically deny any allegations of wrongdoing.

21.     Defendants admit the allegations in Paragraph 21 of the Complaint.

22.     Defendants admit the allegations in Paragraph 22 of the Complaint.

23.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 23 of the Complaint, and therefore deny them.

24.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 24 of the Complaint, and therefore deny them.

25.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 25 of the Complaint, and therefore deny them.

26.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 26 of the Complaint, and therefore deny them.

27.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 27 of the Complaint, and therefore deny them.

28.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 28 of the Complaint, and therefore deny them.

29.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 29 of the Complaint, and therefore deny them.

30.     Defendants admit that Mr. Schupmann began his employment with Plaintiff on or around February 27, 2018, as Plaintiff's Senior Vice President of Sales, and that in

175420238.1

that role Mr. Schupmann was responsible for various sales tasks, and that he managed certain of Plaintiff's sales personnel. Defendants deny any remaining allegations in Paragraph 30 of the Complaint.

31.    Defendants admit that Mr. Schupmann's initial base salary as Senior Vice President of Sales was $250,000.00 per annum and that he received an options grant of 5% of Fortis's stock that would vest over time. Defendants deny that Mr. Schupmann earned $1.1 million in 2023 or that he earned $2.1 million in total compensation between 2022 and 2024. Defendants lack sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 31 of the Complaint, and therefore deny them.

32.    Defendants admit that Mr. Schupmann executed the Agreement as alleged. Defendants deny the remaining allegations contained in Paragraph 32 of the Complaint, in part, because they are vague.

33.    Defendants admit that the language quoted in Paragraph 33 of the Complaint appears in the Agreement, but deny that it is a completely accurate quotation. Defendants deny any remaining allegations in Paragraph 33 of the Complaint.

34.    Defendants admit that the language quoted in Paragraph 34 of the Complaint appears in the Agreement, but deny that it is an accurate quotation. Defendants deny any remaining allegations in Paragraph 34 of the Complaint.

35.    Defendants admit that the language quoted in Paragraph 35 of the Complaint appears in the Agreement. Defendants deny any remaining allegations in Paragraph 35 of the Complaint.

175420238.1

36.    Defendants admit that the language quoted in Paragraph 36 of the Complaint appears in the Agreement. Defendants deny any remaining allegations in Paragraph 36 of the Complaint.

37.    Defendants admit that the language quoted in Paragraph 37 of the Complaint appears in the Agreement. Defendants deny any remaining allegations in Paragraph 37 of the Complaint.

38.    Defendants admit the Agreement defines "Competing Business." Defendants deny that this definition is accurately quoted in Paragraph 38 of the Complaint and therefore deny the remainder of the allegations in Paragraph 38 of the Complaint.

39.    Defendants admit that the Agreement contains language similar to the allegations in Paragraph 39 of the Complaint, but deny that such provisions are enforceable under applicable state and federal law. Defendants deny any remaining allegations in Paragraph 39 of the Complaint.

40.    Defendants admit the allegations in Paragraph 40 of the Complaint.

41.    Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 41 of the Complaint, and therefore deny them.

42.    Defendants admit that Mr. Schupmann was involved in the Plaintiff's decision to hire Mr. Schulz. The remaining allegations in Paragraph 42 of the Complaint are directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 42 of the Complaint, and therefore deny the same.

175420238.1

43.    Paragraph 43 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 43 of the Complaint, and therefore deny the same.

44.    Paragraph 44 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 44 of the Complaint, and therefore deny the same.

45.    Paragraph 45 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 45 of the Complaint, and therefore deny the same.

46.    Defendants admit that Plaintiff promoted Mr. Schupmann to the position of Plaintiff's Chief Operations Officer in approximately October 2021, and later moved him to the position of Enterprise Accounts Director. Defendants deny, however, that this move was due to "poor job performance." Defendants lack sufficient information to admit or deny any remaining allegations in Paragraph 46 of the Complaint, and therefore deny them.

175420238.1

47.     Paragraph 47 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 47 of the Complaint, and therefore deny the same.

48.     Defendants deny the allegations in Paragraph 48 of the Complaint, in part, because they are vague.

49.     Defendants deny the allegations in Paragraph 49 of the Complaint.

50.     Defendants deny the allegations in Paragraph 50 of the Complaint.

51.     Defendants deny the allegations in Paragraph 51 of the Complaint.

52.     Defendants deny the allegations in Paragraph 52 of the Complaint.

53.     Defendants deny "artificially increasing Fortis's front-end reconditioning and subsequent maintenance costs[.]" Defendants lack sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 53 of the Complaint, and therefore deny them.

54.     Defendants deny the allegations in Paragraph 54 of the Complaint.

55.     Defendants deny that Schulz and Schupmann's primary contact at TopKey was Scott Reynolds and deny proposing any kickback scheme to any persons affiliated with TopKey or promising any work pursuant to such alleged scheme. Defendants are without sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 55 of the Complaint, and therefore deny them.

175420238.1

56.    Defendants deny the existence of any alleged kickback scheme, and any allegations related thereto. Defendants are without sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 56 of the Complaint, and therefore deny them.

57.    Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 57 of the Complaint, and therefore deny them.

58.    Defendants admit that Mr. Schupmann is listed as one of Trident's managers, and he holds 50% ownership in Trident. Defendants deny any remaining allegations in Paragraph 58 of the Complaint.

59.    Paragraph 59 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 59 of the Complaint, and therefore deny the same. Defendants deny any remaining allegations in Paragraph 59 of the Complaint that are directed to them.

60.    Defendants deny the allegations in Paragraph 60 of the Complaint.

61.    Defendants deny the existence of any "illicit relationship." Defendants are without sufficient knowledge or information to admit or deny the allegations in Paragraph 61 of the Complaint, and therefore deny them.

62.    Defendants deny the allegations in Paragraph 62 of the Complaint.

175420238.1

63.     Defendants deny that any "work" was diverted from Fortis to Trident. Defendants lack sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 63 of the Complaint, and therefore deny them.

64.     Defendants deny that any "work" was diverted from Fortis to Trident. Defendants lack sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 64 of the Complaint, and therefore deny them.

65.     Paragraph 65 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 65 of the Complaint, and therefore deny the same. Defendants deny any allegations in Paragraph 65 of the Complaint that are directed to them.

66.     Paragraph 66 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 66 of the Complaint, and therefore deny the same.

67.     Defendants lack sufficient knowledge or information to admit or deny whether the correspondence described in Paragraph 67 of the Complaint was received by Mr. Schupmann, and whether any such correspondence contains the quoted language, and therefore deny the same. The remainder of Paragraph 67 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and

11

as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 67 of the Complaint, and therefore deny the same.

68.    Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 68 of the Complaint, and therefore deny them.

69.    Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 69 of the Complaint, and therefore deny them.

70.    Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 70 of the Complaint, and therefore deny them.

71.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 71 of the Complaint, and therefore deny them.

72.    Defendants deny the allegations in Paragraph 72 of the Complaint.

73.    Defendants deny the allegations in Paragraph 73 of the Complaint.

74.    Defendants deny the allegation regarding Mr. Schupmann's receipt of the described document as written. Defendants lack sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 74 of the Complaint, and therefore deny them.

75.    Defendants deny the allegations in Paragraph 75 of the Complaint.

76.    Paragraph 76 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny those allegations in Paragraph 76 of the Complaint, and therefore deny the

175420238.1

same. Defendants deny all remaining allegations in Paragraph 76 of the Complaint that are directed to them.

77.     Paragraph 77 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 77 of the Complaint, and therefore deny the same.

78.     Paragraph 78 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 78 of the Complaint, and therefore deny the same.

79.     Paragraph 79 of the Complaint contains certain allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny those allegations in Paragraph 79 of the Complaint, and therefore deny the same. Defendants lack sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 79 of the Complaint that are directed to them, and therefore deny them.

80.     Defendants deny the allegations in Paragraph 80 of the Complaint.

81.     Defendants deny the allegations in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations in Paragraph 82 of the Complaint.

83.     Paragraph 83 of the Complaint contains certain allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny those allegations in Paragraph 83 of the Complaint, and therefore deny the same. Defendants lack sufficient knowledge or information to admit or deny any allegations in Paragraph 83 of the Complaint that are directed to them, and therefore deny them.

84.     Paragraph 84 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 84 of the Complaint, and therefore deny the same.

85.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 85 of the Complaint, and therefore deny them.

86.     Paragraph 86 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 86 of the Complaint, and therefore deny the same.

87.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 87 of the Complaint, and therefore deny them.

88.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 88 of the Complaint, and therefore deny them.

89.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 89 of the Complaint, and therefore deny them.

90.     Paragraph 90 of the Complaint contains certain allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny those allegations in Paragraph 90 of the Complaint, and therefore deny the same. Defendants lack sufficient knowledge or information to admit or deny any remaining allegations in Paragraph 90 of the Complaint that are directed to them, and therefore deny them.

91.     Paragraph 91 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 91 of the Complaint, and therefore deny the same.

92.     Paragraph 92 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 92 of the Complaint, and therefore deny the same.

175420238.1

93.     Paragraph 93 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 93 of the Complaint, and therefore deny the same.

94.     Paragraph 94 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 94 of the Complaint, and therefore deny the same.

95.     Paragraph 95 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 95 of the Complaint, and therefore deny the same.

96.     Paragraph 96 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 96 of the Complaint, and therefore deny the same. Defendants deny any remaining allegations in Paragraph 93 of the Complaint that are directed to them.

97.     Paragraph 97 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 97 of the Complaint, and therefore deny the same. Defendants admit that Fortis Warranty terminated Mr. Schupmann's employment on December 24, 2024. Defendants deny any remaining allegations in Paragraph 94 of the Complaint that are directed to them.

98.     Defendants admit Lewis sent Schupmann a letter dated December 24, 2024 and assert that the letter speaks for itself. The remaining allegations contained in Paragraph 98 of the Complaint assert legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 98.

99.     Defendants admit that Defendants inadvertently retained copies of certain documents obtained through the ordinary course of business but deny any remaining allegations contained in Paragraph 99 of the Complaint.

100.    Defendants admit that he acknowledged possession of certain documents during the preliminary injunction hearing on May 30, 2025, and that counsel provided those documents through counsel on July 25, 2025. Defendants assert that Fortis's communication on June 2, 2025 speaks for itself. The remaining allegations in Paragraph 100 state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 100.

175420238.1

101.    Defendants admit that Mr. Schupmann was employed by Tecta America Corporation as Vice President of National Accounts, and that it at one time sued Mr. Schupmann. Defendants affirmatively state that the parties amicably resolved that matter. Defendants deny any remaining allegations in Paragraph 101 of the Complaint.

102.    Defendants deny the allegations in Paragraph 102 of the Complaint.

103.    Defendants deny the allegations in Paragraph 103 of the Complaint, in part, because they are vague.

104.    Defendants admit that the web site of Roofing USA indicates that Roofing USA does some work in the stated identified in Paragraph 104 of the Complaint, but affirmatively states that Roofing USA's core business is located in North Carolina, South Carolina, and occasional projects in Virginia and Georgia. Defendants deny the remainder of the allegations in Paragraph 104 of the Complaint, in part, because they are vague.

105.    Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 105 of the Complaint, and therefore deny them.

106.    Defendants deny the allegations in Paragraph 106 of the Complaint.

107.    Defendants deny the allegations in Paragraph 107 of the Complaint.

108.    Paragraph 108 of the Complaint contains allegations directed at a defendant other than Mr. Schupmann and Trident, and as such no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 108 of the Complaint, and therefore deny the same. Defendants deny any remaining allegations in Paragraph 108 of the Complaint that are directed to them.

175420238.1

109.    Defendants deny the allegations in Paragraph 109 of the Complaint.

110.    Defendants deny the allegations in Paragraph 110 of the Complaint.

111.    Defendants deny the allegations in Paragraph 111 of the Complaint.

## <u>COUNT I</u>
## BREACH OF THE FIDUCIARY DUTY OF LOYALTY
### (Defendants Schulz and Schupmann)

112.    Defendants incorporate their answers to all preceding paragraphs as if fully
stated therein.

113.    Defendants admit that Mr. Schupmann was employed by Plaintiff.
Defendants deny any remaining allegations in Paragraph 113 of the Complaint.

114.    Defendants deny the allegations in Paragraph 114 of the Complaint.

115.    Defendants deny the allegations in Paragraph 115 of the Complaint.

116.    Defendants deny the allegations in Paragraph 116 of the Complaint.

117.    Defendants deny the allegations in Paragraph 117 of the Complaint.

## COUNT II
## <u>BREACH OF CONTRACT [sic]</u>
### (Defendants Schulz and Schupmann)

118.    Defendants incorporate their answers to all preceding paragraphs as if fully
stated therein.

119.    Defendants admit that Mr. Schupmann executed the Agreement.
Defendants deny any remaining allegations in Paragraph 119 of the Complaint, in part,
because they are vague.

120.    Defendants deny the allegations in Paragraph 120 of the Complaint.

121.    Defendants deny the allegations in Paragraph 121 of the Complaint.

175420238.1

122.    Defendants deny the allegations in Paragraph 122 of the Complaint.

123.    Defendants deny the allegations in Paragraph 123 of the Complaint.

124.    Defendants deny the allegations in Paragraph 124 of the Complaint.

125.    Defendants deny the allegations in Paragraph 125 of the Complaint.

126.    Defendants admit they returned the documents at Plaintiff's request.
Defendants deny the remaining allegations contained in Paragraph 126 of the Complaint.

127.    Defendants deny the allegations in Paragraph 127 of the Complaint.

128.    Defendants deny the allegations in Paragraph 128 of the Complaint.

## COUNT III
## TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTION
### (All Defendants)

129.    Defendants incorporate their answers to all preceding paragraphs as if fully
stated therein.

130.    Defendants deny the allegations in Paragraph 130 of the Complaint.

131.    Defendants deny the allegations in Paragraph 131 of the Complaint.

132.    Defendants deny the allegations in Paragraph 131 of the Complaint.

133.    Defendants deny the allegations in Paragraph 133 of the Complaint.

134.    Defendants deny the allegations in Paragraph 134 of the Complaint.

135.    Defendants deny the allegations in Paragraph 135 of the Complaint.

136.    Defendants deny the allegations in Paragraph 136 of the Complaint.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Defendant Trident)

137.    Defendants incorporate their answers to all preceding paragraphs as if fully
stated therein.

175420238.1

138.    Defendants deny the allegations in Paragraph 138 of the Complaint.

139.    Defendants deny the allegations in Paragraph 139 of the Complaint.

140.    Defendants deny the allegations in Paragraph 140 of the Complaint.

141.    Defendants deny the allegations in Paragraph 141 of the Complaint.

142.    Defendants admit the allegations in Paragraph 142 of the Complaint.

143.    Defendants deny the allegations in Paragraph 143 of the Complaint.

144.    Defendants deny the allegations in Paragraph 144 of the Complaint.

145.    Defendants deny the allegations in Paragraph 145 of the Complaint.

**COUNT V**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**
**(Defendant Trident)**

146.    Defendants incorporate their answers to all preceding paragraphs as if fully
stated therein.

147.    Defendants deny the allegations in Paragraph 147 of the Complaint.

148.    Defendants deny the allegations in Paragraph 148 of the Complaint.

149.    Defendants deny the allegations in Paragraph 149 of the Complaint.

150.    Defendants deny the allegations in Paragraph 150 of the Complaint.

151.    Defendants deny the allegations in Paragraph 151 of the Complaint.

152.    Defendants deny the allegations in Paragraph 152 of the Complaint.

153.    Defendants deny the allegations in Paragraph 153 of the Complaint.

154.    Defendants deny the allegations in Paragraph 154 of the Complaint.

175420238.1

**COUNT VI**
**CIVIL THEFT**
**(All Defendants)**

155.    Defendants incorporate their answers to all preceding paragraphs as if fully stated therein.

156.    Defendants deny the allegations in Paragraph 156 of the Complaint.

157.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 157 of the Complaint, and therefore deny them.

158.    Defendants deny the allegations in Paragraph 158 of the Complaint.

159.    Defendants deny the allegations in Paragraph 159 of the Complaint.

160.    Defendants deny the allegations in Paragraph 160 of the Complaint.

161.    Defendants deny the allegations in Paragraph 161 of the Complaint.

162.    Defendants deny the allegations in Paragraph 162 of the Complaint.

163.    Defendants deny the allegations in Paragraph 163 of the Complaint.

**COUNT VII**
**CONVERSION**
**(All Defendants)**

164.    Defendants incorporate their answers to all preceding paragraphs as if fully stated therein.

165.    Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 165 of the Complaint, and therefore deny them.

166.    Defendants deny the allegations in Paragraph 166 of the Complaint.

167.    Defendants deny the allegations in Paragraph 167 of the Complaint.

168.    Defendants deny the allegations in Paragraph 168 of the Complaint.

175420238.1

169.    Defendants deny the allegations in Paragraph 169 of the Complaint.

**COUNT VIII**
**CIVIL CONSPIRACY**
**(All Defendants)**

170.    Defendants incorporate their answers to all preceding paragraphs as if fully stated therein.

171.    Defendants deny the allegations in Paragraph 171 of the Complaint.

172.    Defendants deny the allegations in Paragraph 172 of the Complaint.

173.    Defendants deny the allegations in Paragraph 173 of the Complaint.

174.    Defendants deny the allegations in Paragraph 174 of the Complaint.

175.    Defendants deny the allegations in Paragraph 175 of the Complaint.

176.    Defendants deny that Plaintiff is entitled to any of the relief sought in the "prayer for relief" section, and any sub-paragraphs thereunder, on pages 34-35 of the Complaint.

177.    Defendants deny all allegations made in the Complaint that Defendants have not specifically admitted in this pleading.

**AFFIRMATIVE DEFENSES**

Defendants assert the following affirmative defense to Plaintiff's Complaint:

1.    Some or all of Plaintiff's claims are barred by Colorado Revised Statute Section 8-2-113.

2.    Some or all of Plaintiff's claims are barred by Colorado's common law protections against unfair competition.

3.      Plaintiff failed to state a claim against Defendants upon which relief can be granted.

4.      One or more of the restrictive covenants at issue are unlawful, unenforceable, void, voidable, or against public policy. These restrictive covenants are overly broad in that they include unnecessarily expansive geographic and/or temporal limitations in some instances, are drafted to create an unlawful in terrorem effect on the employee, are too vague to permit reasonable enforcement, lack consideration, and other defects.

5.      Mr. Schupmann's employer is not in competition with Plaintiff as is defined in the Agreement.

6.      Plaintiff is not entitled to recover any punitive damages from Defendants under any claim because their conduct was not willful or malicious, Defendants did not act with a purpose or willingness to commit the alleged wrongful acts, and their conduct was reasonable under the circumstances and undertaken in good faith. Defendants did not act with intent to cause injury, nor were their alleged acts despicable and done with a willful and knowing disregard for the rights of others.

7.      Some or all of the injunctive relief sought is unlawful, overbroad, and impermissible.

8.      Upon information and belief, some or all of Plaintiff's requests for equitable relief are barred by the unclean hands doctrine and potentially other equitable defenses.

9.      Upon information and belief, Plaintiff has failed to mitigate its damages, if any.

175420238.1

10. All actions taken by Defendants were taken in good-faith and for legitimate reasons.

11. Plaintiff's claims are barred, in whole or in part, because they are frivolous and groundless. This suit is being pursued in bad faith for vexatious reasons to harass Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Defendants request that this Court enter judgment in its favor and against Plaintiff, and provide the following relief:

i. Dismiss Plaintiff's Complaint with prejudice;

ii. A judgment awarding Defendants their attorneys' fees and costs as permitted by any applicable statute, rule, or contract;

iii. Such other and further relief, at law and equity, as the Court deems just, proper, and appropriate.

## **AMENDED COUNTERCLAIMS**

Counterclaimant David Schupmann ("Schupmann"), by and through his attorneys, files his Amended Counterclaims ("Counterclaims") against FW-CO, Inc. d/b/a Fortis Warranty ("Fortis Warranty" or "Respondent") and Richard M. Lewis ("Mr. Lewis") for failure to pay wages and breach of contract, and seeks damages. Mr. Schupmann alleges as follows, on actual knowledge with respect to himself and his own acts, and on information and belief as to all other matters.

175420238.1

I.      **PARTIES AND JURISDICTION**

1.      Mr. Schupmann is a resident and citizen of the State of Illinois, with a residential address at S440 Crego Place, Geneva, IL 60134.

2.      Fortis Warranty is a corporation incorporated under the laws of Colorado, with a principal place of business at 50 South Steele Street, Suite 375, Denver, CO 80209, and is therefore a citizen of the State of Colorado.

3.      Mr. Lewis is a resident and citizen of the State of Colorado, with upon information and belief a residential address at 5 Village Road, Cherry Hills Village, CO 80113.

4.      This Court has personal jurisdiction over Fortis Warranty because Fortis Warranty is a citizen of the State of Colorado, conducts business in the State of Colorado, and has established sufficient minimum contacts with the State of Colorado by maintaining a Registered Agent at 1675 Broadway Street, Denver, CO 80202.

5.      This Court has personal jurisdiction over Lewis because he is a citizen of the State of Colorado.

6.      This Court has original jurisdiction over these Counterclaims as the Counterclaimant is pursuing claims for unpaid wages and civil theft under the Fair Labor Standards Act, codified at 29 U.S.C. § 201 *et seq.*

7.      This Court may exercise supplemental jurisdiction over Counterclaimant's remaining claims for unpaid wages and commissions and breach of contract pursuant to 28 U.S.C. § 1367.

175420238.1

8.      This Court also has diversity jurisdiction over these Counterclaims under 28 U.S.C. § 1332 because there is complete diversity between the Parties and the amount in controversy exceeds $75,000.00.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as Fortis Warranty and Lewis are both citizens of the State of Colorado.

## II.     FACTUAL BACKGROUND

### a.     Mr. Schupmann's Employment with Fortis Warranty.

10.     Counterclaimant incorporates the foregoing paragraphs in these Counterclaims by reference as if fully set forth herein.

11.     As the Fortis Warranty, CEO, Mr. Lewis had the discretion to hire a Senior Vice President of Sales and Marketing.

12.     After an employment negotiation period Lewis hired Mr. Schupmann to work for Fortis Warranty on or around February 27, 2018, as its Senior Vice-President of Sales and Marketing.

13.     Mr. Schupmann executed an Employment Agreement dated February 27, 2018 (the "Agreement"), which is attached hereto as **Exhibit A**.

14.     Mr. Lewis signed the Employment Agreement on behalf of Fortis Warranty.

15.     In his role as the Senior Vice-President ("SVP") of Sales and Marketing, Mr. Schupmann received a salary of $250,000.00 per annum.

16.     Mr. Schupmann was later promoted to serve as Fortis Warranty's Chief Operations Officer ("COO") and then Enterprise Accounts Director..

17.     In his role as Fortis Warranty's COO Mr. Schupmann reported directly to Lewis, and later reported to Dan Kimball ("Kimball") when he assumed the Enterprise Accounts Director role.

18.     When Mr. Schupmann assumed his subsequent roles with the company, Fortis Warranty did not require him to execute a new employment agreement, and he did not execute any further Employment Agreements pursuant to his employment therewith.

19.     Mr. Schupmann also participated in a Non-Qualified Stock Option Plan (the "Stock Option Plan"), which provided for a total of 57,500 option shares to vest between 2022 and 2028 at a rate of 5,750 per annum. A copy of September 9, 2022, correspondence regarding Mr. Schupmann's participation therein is attached hereto as **Exhibit B**.

20.     As part of his compensation, Mr. Schupmann also received a commission on transactions that he completed for Fortis Warranty.

21.     When Mr. Schupmann assumed the Enterprise Accounts Director role, Lewis verbally communicated that Mr. Schupmann would receive 10% commission on new projects, 8% commission on expanded projects, and 6% commission on recurring projects. These commission percentages were set and regulated by Lewis while Mr. Schupmann was employed by Fortis Warranty.

22.     Given that Fortis is a small business employing less than twenty employees, assignment of wages and commission rates were negotiated almost entirely through Lewis.

175420238.1

23.    Then, after Mr. Schupmann met with other members of Fortis Warranty's management, he was informed that his commission percentage had in fact changed.

24.    In correspondence dated January 2, 2024, Kimball, who was Fortis Warranty's Director of Growth and Development at the time, explained that Mr. Schupmann's commission would consist of 6% of all cash receivables per project. This meant that he received that commission on all receivables and projects, not just the cash that was collected by Fortis Warranty pursuant to such projects.

25.    Then, Lewis informed Mr. Schupmann that this was not the case, and his commissions would consist of 6% of payments received by Fortis Warranty on his Roof Performance Program projects.

26.    Therefore, Mr. Schupmann understood that he was entitled to commission equaling 6% of payments received by Fortis Warranty on his Roof Performance Program projects. This understanding is consistent with Fortis Warranty's commission payments for the remainder of Mr. Schupmann's employment with Fortis Warranty.

27.    This was not the only time when Fortis Warranty made inconsistent or incorrect wage payments to Mr. Schupmann, however.

28.    It is Fortis Warranty's standard practice to refrain from paying new employees their wages for the first several weeks of their employment, with those wages to be paid later in arrears. In Mr. Schupmann's case, he was not paid for his first approximately four to six weeks of employment, and although several persons acknowledged he was still owed these wages, they were still not paid as recently as October 2024.

29.    Indeed, Mr. Schupmann is in possession of correspondence dated as late as October 1, 2024, over six years after his employment with Fortis Warranty began, in which Fortis Warranty personnel acknowledged that Mr. Schupmann's pay was still not "caught up" and that they had not been given permission by Lewis to pay Mr. Schupmann his outstanding wages.

30.    There were several instances where Mr. Schupmann's bonus payments were withheld or paid late because of Lewis, and were later remitted by Lewis himself. Indeed, Mr. Schupmann also received random bonus payments from Lewis, which were awarded at his sole discretion.

31.    Pursuant to the Agreement, Mr. Schupmann also received other compensation and benefits. During his employment, Mr. Schupmann accrued vacation time at a rate of three weeks per year for the first three calendar years of his employment, and four weeks per year every calendar year thereafter. *See* Exhibit A, at § 2.2.3.

32.    Under the Agreement, a termination for any reason other than a For Cause Termination requires Fortis Warranty to give thirty days' written notice of the termination. Exhibit A, at § 3.2.1(c).

33.    The Agreement also provides that Mr. Schupmann is entitled to severance should he be terminated "without cause." *See id.*, at § 4.2.

34.    Upon a No Cause Termination or an Employee Termination for Cause, Mr. Schupmann is entitled to his regular wages and bonus for the period during which he was terminated, any benefits payable to him, and a lump sum equal to twenty-four (24) months of his base salary at the time of the termination. *Id.*, at § 4.2.1(a)-(b).

175420238.1

**b.** **Mr. Schupmann Was Fired Without Cause by Fortis Warranty.**

35.     In December 2024 Mr. Schupmann received certain correspondence from Lewis via text message that suggested his intent to terminate Mr. Schupmann. As CEO of Fortis Warranty, Lewis was responsible for making the ultimate decision to terminate Fortis employees.

36.     On or around December 24, 2024, without any prior communication by Fortis regarding Mr. Schupmann's performance, Mr. Schupmann received a Notice of Termination of Employment for Cause (the "Notice"), which is attached hereto as **Exhibit C**.

37.     The Notice purported to terminate Mr. Schupmann For Cause due to "fraud or dishonesty against the Company, or other acts or omission which adversely impact the business or image of the Company or cause the Company to fall into disrepute," and "willful misconduct or knowing violation of the law in the course of employment with the Company." *See* Exhibit C. The Notice also alleged that Mr. Schupmann breached his fiduciary duties to Fortis Warranty, diverted monies and opportunities to himself and others, failed to comply with company protocol, and "potentially" engaged in other misconduct. *Id.*

38.     The Notice also terminated all vested and non-vested rights to Options granted to Mr. Schupmann through his Non-Qualified Stock Option Agreement. *Id.* Therefore, the Notice purported to terminate all of Mr. Schupmann's previously vested Option Shares, which at the time he was terminated totaled 17,250.

175420238.1

39.     Approximately two weeks later Mr. Schupmann received his final paycheck, which included pay for approximately his last two weeks of work, but did not include any payments in arrears for the four to six weeks' wages that had been outstanding since the beginning of his employment. [1]

40.     The final paycheck also did not include any compensation for his accrued but unused vacation time, which totals a minimum of four weeks, but likely much more from prior years of employment with Fortis Warranty.

41.     Because Mr. Schupmann earned a base salary of $400,000.00 per annum at the time, he is entitled to a minimum of $30,769.24 for this vacation time.

42.     Fortis Warranty also failed to pay out any due and owing commissions with his final wages on approximately 27 projects, together which total approximately $1,047,273.00.

43.     Fortis Warranty has failed to provide any evidence in support of its allegations that Mr. Schupmann engaged in any unlawful, dishonest, or fraudulent conduct, and Mr. Schupmann did not engage in any such wrongdoing.

44.     Therefore, Fortis Warranty and Lewis did not have sufficient grounds to terminate Mr. Schupmann "For Cause" as defined in Section 3.2.1(b).

45.     Under the Agreement Mr. Schupmann is also entitled to a lump sum severance payment equaling twenty-four months of regular base pay triggered upon his termination without cause. *See* Exhibit A, at § 4.2.1(a)-(b).

---

[1] Further discovery will permit Mr. Schupmann to obtain an accurate and precise accounting of all outstanding wages owed to date.

175420238.1

46.     At the time of his termination, Mr. Schupmann earned a base salary of $400,000.00 per annum.

47.     Mr. Schupmann did not breach his obligations under the Agreement and Fortis Warranty has not proffered any evidence to suggest it had grounds to terminate Mr. Schupmann for cause as defined in the Agreement.

48.     Indeed, Mr. Schupmann had grounds to terminate the Agreement for cause during his employment with Fortis Warranty for its failure to timely remit bonus payments owed him, which would have likewise entitled him to equivalent severance. *See id.*, at § 3.2.2(b). These bonus payments were made by Lewis, and he was solely responsible for remitting any bonuses owed Fortis Warranty employees.

49.     Therefore, Mr. Schupmann is entitled to, and Fortis Warranty still owes, a severance payment equal to $800,000.00.

50.     Mr. Schupmann made a formal written demand for his unpaid wages, commissions, and vacation time, which is attached hereto as **Exhibit D**. Mr. Schupmann also made a demand for the severance owed him for his termination without cause.

51.     Fortis Warranty and Lewis have not yet paid the monies owed Mr. Schupmann. Given that like other payments Lewis was responsible for ultimately remitting them, upon information and belief it is ultimately Lewis' responsibility that Fortis did not pay Mr. Schupmann's owed wages on timely demand.

52.     Upon information and belief, Fortis Warranty and Lewis have refused and continues to refuse to pay any of the outstanding sums owed Mr. Schupmann, despite

175420238.1

ample notice that he was owed, for instance, backpay for wages earned at the beginning

of his employment.

## COUNT I
### Violation of the Fair Labor Standards Act – 29 U.S.C. § 201 *et seq.* (Against Fortis Warranty and Lewis)

53.     Counterclaimant incorporates the foregoing paragraphs of these Counterclaims as if fully set forth herein.

54.     Lewis has the power to hire and fire Fortis Warranty employees.

55.     Lewis had significant ability to supervise and control Counterclaimant's work schedule and conditions of employment.

56.     Lewis had a deciding role in determining the method and rate of Counterclaimant's payment.

57.     As CEO, Lewis is responsible for maintaining employee records and supervises others who are responsible for maintaining employee records.

58.     Fortis Warranty, acting by and through Lewis, knowingly, intentionally, and willfully failed to pay Mr. Schupmann his earned salary for the first four to six weeks of his employment therewith, despite demand made by Mr. Schupmann.

59.     Mr. Schupmann's final paycheck from Fortis Warranty did not include his base compensation for his first four to six weeks of employment, nor did it include his commissions earned which total approximately $1,047,273.00.

60.     The total amount of unpaid wages and commissions is set forth herein by and through Mr. Schupmann's demand letter. *See* Exhibit D.

61.     For each of those four to six weeks, Fortis Warranty and Lewis knowingly, intentionally, and willfully violated 29 U.S.C. § 206(a) by failing to compensate Mr. Schupmann at least the federal minimum wage for hours worked during his first four to six weeks of employment.

62.     Fortis Warranty and Lewis recklessly disregarded the purpose and intent of 29 U.S.C. § 206(a) by withholding wages from Mr. Schupmann for hours worked during his first four to six weeks of employment.

63.     To date, Mr. Schupmann has received no compensation for hours worked during his first four to six weeks of employment despite ample notice during his employment and written demand thereafter.

64.     Fortis Warranty and Lewis have no reasonable basis for withholding wages or commissions from Mr. Schupmann.

65.     Mr. Schupmann is owed such wages from Fortis Warranty and Lewis for wages earned, and hours worked, during his employment with Fortis Warranty. Discovery in this action will permit Mr. Schupmann to ascertain the precise wages earned but unpaid to date.

## **COUNT II**
### **Violation of the Colorado Wage Act – C.R.S. § 8-4-101 *et seq.* (Against Fortis Warranty and Lewis)**

66.     Counterclaimant incorporates the foregoing paragraphs of these Counterclaims as if fully set forth herein.

67.     Lewis has the power to hire and fire Fortis Warranty employees.

175420238.1

68.     Lewis had significant ability to supervise and control Counterclaimant's work schedule and conditions of employment.

69.     Lewis had a deciding role in determining the method and rate of Counterclaimant's payment.

70.     As CEO, Lewis is responsible for maintaining employee records and supervises others who are responsible for maintaining employee records.

71.     Mr. Schupmann is owed wages and compensation in the form of fully earned commissions for services rendered on behalf of Fortis Warranty. Fortis Warranty and Lewis have failed to pay Mr. Schupmann his earned, vested, and determinable wages and commissions, which were earned or accrued prior to his date of termination, December 24, 2024.

72.     Mr. Schupmann's final paycheck from Fortis Warranty did not include his base compensation for his first four to six weeks of employment, nor did it include his commissions earned which total approximately $1,047,273.00.

73.     The total amount of unpaid wages and commissions is set forth herein by and through Mr. Schupmann's demand letter. *See* Exhibit D. Discovery in this action will permit Mr. Schupmann to ascertain the precise amount of wages owed him.

74.     Mr. Schupmann demanded payment of his fully earned commissions and wages from Fortis Warranty, but Fortis Warranty and Lewis have still willfully withheld Mr. Schupmann's earned, vested, and determinable wages and commissions as of the date of this responsive pleading.

175420238.1

75.     Fortis Warranty and Lewis have willfully, knowingly, and recklessly disregarded C.R.S. § 8-4-101 *et seq.*

76.     Fortis Warranty and Lewis have no good faith justification for withholding wages and commissions from Mr. Schupmann.

77.     Mr. Schupmann is entitled to payment of his earned, vested, and determinable wages and commission subject to an automatic penalty of three times the amount of unpaid wages, pursuant to C.R.S. § 8-4-109.

78.     In the alternative, Mr. Schupmann is entitled to payment of his earned, vested, and determinable wages and commissions subject to an automatic penalty of two times the amount of unpaid wages, pursuant to C.R.S. § 8-4-109.

<u>**COUNT III**</u>
**Breach of Employment Agreement (Against Respondent Fortis Warranty)**

79.     Counterclaimant incorporates the foregoing paragraphs of these Counterclaims as if fully set forth herein.

80.     Mr. Schupmann entered into a valid an Agreement with Fortis Warranty on February 27, 2018, that contained enforceable provisions related to severance payments.

81.     Under the Agreement Mr. Schupmann is entitled to a lump sum severance payment equaling twenty-four months of regular base pay triggered upon his termination without cause. *See* Exhibit A, at § 4.2.1(a)-(b).

82.     At the time of his termination, Mr. Schupmann earned a base salary of $400,000.00 per annum.

83.     Mr. Schupmann did not breach his obligations under the Agreement and Fortis Warranty has not proffered any evidence to suggest it had grounds to terminate Mr. Schupmann for cause as defined in the Employment Agreement.

84.     Indeed, Mr. Schupmann has grounds to terminate the Agreement for cause during his employment with Fortis Warranty for its failure to timely remit bonus payments owed him, which would have likewise entitled him to equivalent severance. *See id.*, at § 3.2.2(b).

85.     Despite written demand, Fortis Warranty has still failed to pay Mr. Schupmann his owed severance.

86.     Fortis Warranty's failure to provide Mr. Schupmann with this severance is a material breach of the Agreement.

87.     Therefore, Mr. Schupmann is entitled to, and Fortis Warranty still owes, a severance payment equal to $800,000.00.

## <u>COUNT IV</u>
**Breach of Non-Qualified Stock Option Agreement (Against Respondent Fortis Warranty)**

88.     Counterclaimant incorporates the foregoing paragraphs of these Counterclaims as if fully set forth herein.

89.     Fortis Warranty and Mr. Schupmann entered into a valid and enforceable Stock Option Agreement. *See* Exhibit B.

90.     The Stock Option Agreement provides that Mr. Schupmann, upon termination, may exercise the vested portion of the Option within three (3) months following the termination date.

91.    Fortis Warranty has not provided Mr. Schupmann with the option to exercise his 17,250 vested Options.

92.    Upon information and belief, Fortis Warranty terminated the Option duly owing to Mr. Schupmann purportedly pursuant to the Notice.

93.    Fortis Warranty's failure to provide Mr. Schupmann with the opportunity to exercise the vested portion of the Option is a material breach of the Stock Option Agreement.

94.    Mr. Schupmann did not breach his obligations under the Stock Option Agreement, and Fortis Warranty did not have sufficient cause to void its obligation to permit Mr. Schupmann to exercise the vested portion of the Option, and to terminate the Option.

95.    Mr. Schupmann has suffered damages as a result of Fortis Warranty's breach of the Stock Option Agreement, in an exact amount to be determined at trial.

## COUNT V
### Breach of Equity Incentive Plan (Against Respondent Fortis Warranty)

96.    Counterclaimant incorporates the foregoing paragraphs of these Counterclaims as if fully set forth herein.

97.    Mr. Schupmann and Fortis Warranty entered into a valid and enforceable Equity Incentive Plan.

98.    The Equity Incentive Plan provides that Mr. Schupmann, upon termination, may exercise his Option within three (3) months following the termination date.

99.    Fortis Warranty has failed to provide Mr. Schupmann with the opportunity to exercise the Option provided for in the Equity Incentive Plan.

175420238.1

100.   Upon information and belief, Fortis Warranty terminated the Option duly owing to Mr. Schupmann purportedly pursuant to the Notice.

101.   Fortis Warranty's failure to provide Mr. Schupmann with the opportunity to exercise the vested portion of the Option is a material breach of the Equity Incentive Plan.

102.   Mr. Schupmann did not breach his obligations under the Equity Incentive Plan, and Fortis Warranty did not have sufficient cause to void its obligation to permit Mr. Schupmann to exercise the vested portion of the Option, and to terminate the Option.

103.   Mr. Schupmann has suffered damages as a result of Fortis Warranty's breach of the Equity Incentive Plan, in an exact amount to be determined at trial.

WHEREFORE, Counterclaimant David Schupmann respectfully requests this Court enter judgment in his favor and against Fortis Warranty and Richard Lewis and grant:

i.    Compensatory damages including all monies owed Mr. Schupmann, including but not limited to his earned but unpaid wages, his earned but unpaid commissions, his earned but unpaid and unused vacation time, and his owed but unpaid severance;

ii.   Penalties available under the Colorado Wage Act and the Fair Labor Standards Act;

iii.  Attorneys' fees and costs accrued in this action to the extent permitted by applicable state and federal law;

iv.   Pre- and post-judgment interest on all amounts due and owing at a rate of eight percent (8%) as provided by Colorado law;

175420238.1

v.    Any further relief this Court finds just and proper, and any further relief permitted by law.

Respectfully submitted this 13th day of August, 2025.

TAFT STETTINIUS & HOLLISTER LLP

*s/ Patrick J. Miller*
Patrick J. Miller
Kellie Nelson Fetter
Emily A. England
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202
Telephone:  (303) 297-2900
Facsimile:  (303) 298-0940
Email:  pmiller@taftlaw.com
            kfetter@taftlaw.com
            eengland@taftlaw.com

*ATTORNEYS FOR DEFENDANTS DAVID SCHUPMANN AND TRIDENT SOLUTIONS OF SUGAR GROVE, LLC AND COUNTERCLAIMANT DAVID SCHUPMANN*

41

175420238.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of August, 2025, a true and correct copy of the foregoing **DEFENDANT DAVID SCHUPMANN AND TRIDENT SOLUTIONS OF SUGAR GROVE, LLC'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND AMENDED COUNTERCLAIMS** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_s/ Donna L. Fouts_
Donna L. Fouts, Legal Assistant

175420238.1