**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00254-NYW-TPO

FW-CO, INC.,
d/b/a Fortis Warranty

   Plaintiff and Counter-Defendant,

RICHARD LEWIS,

   Counter-Defendant,

v.

CHARLES SCHULZ,
DAVID SCHUPMANN,

   Defendants and Counter-Claimants,

TRIDENT SOLUTIONS
OF SUGAR GROVE, LLC,

   Defendant.

---

**[PROPOSED] STIPULATED AGREEMENT AND ORDER FOR PROTOCOL**
**GOVERNING PRODUCTION OF HARD COPY AND ELECTRONICALLY STORED**
**INFORMATION**

---

   Plaintiff/Counter-Defendant FW-CO, Inc., d/b/a Fortis ("Fortis") and Counter-Defendant

Richard Lewis (Lewis),  and Defendants Charles Schulz, David Schupmann, and Trident Solutions

of Sugar Grove, LLC (collectively, "Defendants") (each a "Party" and together, the "Parties"), by

and through their undersigned counsel, hereby stipulate and agree to the entry of this [Proposed]

Stipulated  Agreement  and  Order  for  Protocol  Governing  Production  of  Hard  Copy  and

Electronically Stored Information (the "Protocol") in the above-captioned proceeding (the "Proceeding"):[1]

## 1. SCOPE AND PRESERVATION

**1.1** <u>General</u>. The procedures and protocols outlined here govern the production of Discoverable Information by all parties to the above-captioned lawsuit, whether they currently are involved or become so in the future. The parties will take reasonable steps to comply with this agreed-upon Protocol for the production of discoverable information. This Protocol does not supersede prior pretrial orders issued in this action, which shall remain in effect. This Protocol shall be interpreted and applied consistent with the Federal Rules of Civil Procedure (including, without limitation, Rules 1, 16, 26, 34, and 37), the Local Rules of Practice for the District of Colorado, and the Uniform Civil Practice Standards of the United States Magistrate Judges for the District of Colorado.

**1.2** The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. The Parties further acknowledge their obligations under Federal Rule of Civil Procedure 26(b)(1) and 37(e).

**1.3** <u>Cooperation and Proportionality</u>. The parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI (defined below) and paper documents in this lawsuit. This includes identifying appropriate limits to discovery, including limits on custodians, identification

---

[1] The undersigned counsel certify that generative artificial intelligence—specifically, Harvey AI— was used to draft this filing. We further certify that the Parties were advised of and consented to such use. All cited authority was manually reviewed by counsel of record.

of relevant and discoverable subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting discovery requests and responses will be considered in cost-shifting determinations. This Protocol is not intended to expand or reduce the parties' obligations under the Federal Rules. Nothing in this Protocol alters the Parties' obligations to meet and confer in good faith prior to seeking court intervention on discovery disputes, and to follow the Magistrate Judge's discovery dispute procedures.

      **1.4**   <u>Known Responsive ESI Must Be Produced</u>. Documents or ESI known to be responsive to a discovery request or relevant to the subject matter of this action shall be produced without regard to whether it was responsive to any search methodology described herein or developed in accordance with this Order on a rolling basis within thirty (30) days of entry of this Order, unless counsel for the Parties specifically identifies the documents being withheld and as a specific objection for withholding each withheld document. Nothing in this section eliminates the Producing Party's right to object on any ground permitted by the Federal Rules of Civil Procedure and applicable orders.

      **1.5**   <u>Technology Assisted Review ("TAR")</u>. If a party intends to use TAR to assist any portion of its review process, it shall disclose its proposed TAR protocols.

      **1.6**   <u>Retroactivity and Conforming Re-Service of Discovery</u>.

(a) *Retroactive Application*. This Protocol is prospective only and does not apply retroactively to documents or ESI produced prior to its effective date. If any Party requests that materials previously produced be re-produced in a manner that conforms to this Protocol, counsel for both Parties shall meet and confer in good faith regarding the request. No Party is obligated to

re-produce previously produced materials absent agreement of the Parties or further order of the Court.

(b) *Conforming Re-Service*. Within twenty-one (21) days after entry of this Protocol (or such other period as the Parties may agree in writing), each Producing Party shall re-serve, re-produce, or otherwise provide, in the formats and with the metadata and load files required by this Protocol, all documents and ESI that it previously produced or exchanged and that it intends to rely upon or not withdraw. Re-served materials shall retain prior Bates numbers where feasible; if re-Batesing is necessary, the Producing Party shall provide a cross-reference list mapping old to new Bates numbers.

(c) *Privilege Logs and Designations*. Any privilege logs or confidentiality designations previously served shall be updated or supplemented as necessary to conform to this Protocol and any operative protective order within twenty-one (21) days of re-service.

(d) *No Waiver*. Re-service under this section shall not be construed as a waiver of any objection or privilege and shall not expand the scope of discovery beyond the Federal Rules of Civil Procedure, Local Rules, the Magistrate Judges' Practice Standards, or any Court order.

(e) *Meet-and-Confer*. The Parties shall promptly meet and confer to resolve any issues concerning the feasibility of re-serving previously exchanged materials in the specified format(s), custodian attributions, or metadata. If disputes remain after conferral, the Parties shall follow the Magistrate Judge's discovery dispute procedures before filing any motion.

## 2. DEFINITIONS

**2.1.** "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a).

**2.2.** "Hard Copy Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

**2.3.** "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Hard Copy Discovery.

**2.4.** "Format" means the internal structure of a file, which defines the way it is stored and used.

**2.5.** "Native Format" means the format of ESI in the application in which such ESI was originally created.

**2.6.** "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

**2.7.** "Producing Party" means a Party that produces Documents.

**2.8.** "Receiving Party" means a Party to whom Documents are produced.

**2.9.** "Responsive Document" means any Document, excluding source code, that is responsive to any document requests served on the Producing Party in the Action that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

**2.10.** "PDF Format" or "PDF" refers to the graphic file format for producing discovery.

## 3. PRESERVATION OF ESI

**2.1.** Preservation Notices. The Parties certify that they have each issued written preservation notices to custodians and/or employees identified to have information that may be discoverable.

**2.2.** <u>Date Ranges</u>.  The Parties will meet and confer on appropriate date range(s) for the collection and search of ESI.

**2.3.** <u>Other Forms of ESI</u>.  Absent leave of Court for good cause shown by the Requesting Party, the following categories of ESI are not reasonably discoverable, and the Parties shall have no obligation to preserve ESI contained in the following forms:

    **(a)**    Deleted, erased, or overwritten ESI, whether fragmented or whole, which were deleted in the regular course of business. However, if a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, whether any backup or copy of such original responsive ESI exists, and take reasonable steps to restore or replace it through additional discovery

    **(b)**    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    **(c)**    On-line access data such as temporary internet files, history, cache, cookies, and the like.

    **(d)**    Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    **(e)**    Back-up data that are substantially duplicative of data that are more accessible elsewhere.

**(f)** Legacy Data or any data remaining from systems no longer in use that is unintelligible to and inaccessible by the systems currently in use provided such systems are disclosed and any non-duplicative data is preserved.

**(g)** Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

## 4. PRIVILEGE

**4.1.** <u>Negotiation of Format and Timing of Privilege Log.</u> The Parties agree to exchange privilege logs within a reasonable time after a production has been made, containing the information called for by Fed. R. Civ. P. 26(b)(5). Privilege logs may be staged to align with rolling productions.

**4.2.** <u>Default Privilege Log Contents.</u> If the Parties cannot agree to a format for the privilege log then, subject to the other provisions of this Protocol, the Producing Party that withheld information otherwise discoverable by claiming that the information is privileged or protected shall provide the Requesting Party with a privilege log consistent with Fed. R. Civ. P. 26(b)(5)(A).

**4.3.** <u>Privilege Log Exclusions.</u> Privileged or work-product information generated after the filing of the initial Complaint that commenced this Proceeding need not be included in a privilege log.

**4.4.** <u>Protocol for Logging E-Mail Chains.</u> Any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim may be logged as one document and, in that event, shall be identified by the top-most e-mail in the chain that is withheld or redacted. The Parties shall not

be required to log identical copies of an e-mail that is included in a chain that has been logged in accordance with this Paragraph.

    **4.5.**   <u>Protocol for Logging "Families."</u>  Each member of a family (e.g., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified on the log as a family.

    **4.6.**   <u>Contesting Claim of Privilege and/or Protection.</u>  Nothing in this Protocol shall limit the Receiving Party's right, subject to the April 30, 2025 Stipulated Protective Order, to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Producing Party's claim that a requested document is protected from disclosure by the attorney-client privilege or work product doctrine. Parties shall confer in good faith before raising any privilege dispute with the Court and shall follow the Magistrate Judge's discovery dispute procedures.

## 5. ESI DISCOVERY PROCEDURES

    The Parties will endeavor to produce ESI in a reasonably timely manner and in accordance with timelines set forth in the Federal Rules of Civil Procedure, applicable Local Rules, and the Court's orders. The Parties will abide by the April 30, 2025 Stipulated Protective Order and any applicable scheduling orders or written internal agreements between counsel for the Parties. Production in this Proceeding may be made on a rolling basis. If either Party feels production has been unreasonably delayed or otherwise does not comply with the parameters set forth herein, the Parties agree to confer via telephone or in person to reach a mutually agreeable consensus prior to seeking Court intervention. Any discovery disputes shall be handled consistent with the Magistrate Judge's procedures for discovery disputes, including the duty to meet and confer in good faith and joint contact with Chambers when required.

**5.1.**    Costs.  Each party shall bear their own costs for the production of Documents in accordance with this Protocol unless cost-sharing or cost-shifting with respect to any particular source of responsive Documents is appropriate under the law and/or ordered by the Court.

**5.2.**    Subpoenas.  Non-party subpoenas shall include a copy of this Protocol and state that subpoena respondents must produce Documents in accordance with the specifications set forth herein.  The issuing Party is responsible for promptly providing to the other Parties copies of any and all Documents obtained under any subpoena to non-parties.

**5.3.**    Modification.    Any practice or procedure set forth herein may be varied by agreement of the Parties in writing where such variance is deemed appropriate to facilitate the timely and economical production of Documents.

**5.4.**    Inability to Proceed.  Should any Party subsequently determine that it cannot in good faith proceed as required by this Protocol, or if the Parties cannot reach agreement as to the implementation of the Protocol, the Parties will meet and confer to resolve the dispute and if not successful seek assistance from the Court.

**5.5.**    On-Site Inspection of Electronic Media.  Such an inspection shall not be permitted absent a demonstration by the Requesting Party of specific need and good cause or by agreement of the Parties.

**5.6.**    Search methodology.  The Parties may employ search term screening, machine learning, and/or other forms of technology assisted review to identify ESI potentially responsive to discovery requests. The Requesting and Producing Parties shall timely attempt to reach agreement on appropriate custodians and search terms, where applicable. The Producing Party's proposed custodian list will identify the persons and non-custodial sources likely to have created

or maintained discoverable ESI.  The Requesting and Producing Parties shall continue to cooperate in revising the custodian list and search terms in order to ensure that the Producing Party is not unduly burdened and the collection is reasonably limited to Documents that are actually responsive to document requests and does not return excessive false positives.

**5.7.** <u>De-Duplication.</u>  The Producing Party may de-duplicate "globally," based on MD5 or SHA-1 hash values across the entire document collection of all unique custodians or Non-Custodial Data Sources.  Exact duplicate Documents shall be removed at the family level, such that no Document that is the parent or an attachment of a produced Document may be withheld as a duplicate. The Producing Party agrees that the presence of a custodian's name contained in "All Custodians" in the Metadata for a particular Document is evidence that the custodian possessed that Document in his/her custodial files.

**5.8.** <u>Other Filtering and/or Culling Technologies.</u>  The Parties agree to work collaboratively and shall not withhold consent to the use of filtering and/or culling technologies not otherwise addressed in this Protocol that would reasonably mitigate the burden of production on a Producing Party.

**5.9.** <u>Responsive and Privileged Document Reviews.</u>  Nothing in this Protocol shall be construed or interpreted as relieving a Producing Party from the obligation to produce all identified responsive, non-privileged Documents, even if they do not hit on an agreed-upon search term. Further, nothing in this Protocol shall be construed or interpreted as precluding a Producing Party from performing a responsiveness and privilege review to determine if Documents captured by search terms are in fact relevant to the Requesting Party's request and not subject to any claim of privilege and/or protection.  Nothing in this Protocol shall be construed or interpreted as requiring

the production of all Documents or ESI captured by any search term if such Documents and/or ESI are in good faith and reasonably deemed not responsive to the Requesting Party's request or subject to an objection as to relevance, or claim of privilege and/or protection. The Producing Party may redact portions of Documents for relevancy so long as the redaction is evident and the Receiving Party has an opportunity to object to the redaction.

**5.10.** <u>Imaged Files.</u> The parties will produce ESI in searchable PDF image format provided that the Documents do not become illegible or unusable or in any way alter existing metadata when converted to searchable PDF image format. All Documents should be formatted and produced in single page or multi-page PDF format. The filename of both the text and image files (PDFs) should correspond to the Bates number of the document. All Documents should be produced as a e-discovery software database loadable export in accordance with this Protocol.

**5.11.** <u>Non-Imaged Files.</u> For any ESI that cannot reasonably be converted to a PDF (including, but not limited to, spreadsheets, audio files, video files), the Producing Party should produce a Bates numbered PDF placeholder and a Native version of that file, with the Native version named by its Bates number.

**5.12.** <u>Color.</u> Documents containing color need not be produced initially in color. However, if an original document contains color necessary to understand the meaning or content of the document, the Producing Party will honor reasonable requests for a color image of the document. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

**5.13.** <u>Redaction.</u> If a file that originates in ESI needs to be redacted before production, the file will be rendered in PDF, and the PDF will be redacted and produced. In such cases, the

Producing Party will provide searchable text for those portions of the document that have not been redacted.  However, if the Producing Party chooses to instead produce a Native File, it may elect to use a native redaction tool (e.g., Adobe PDF redaction).

    **5.14.**  <u>Endorsements.</u>  The Producing Party will brand all PDF images in the lower right-hand corner with the corresponding Bates and/or control numbers, using a consistent font type and size.  The Producing Party will brand all PDF images in the lower left-hand corner with all confidentiality designations, as needed, in accordance with confidentiality definitions agreed to by the Parties.  The Producing Party will make reasonable efforts to ensure that the Bates number, control number, and/or confidentiality designation does not obscure any part of the underlying data.

    **5.15.**  <u>Hard Copy Discovery.</u>  Any document or thing discoverable under Fed. R. Civ. P. 34 that cannot be characterized as ESI will be scanned as a single-page PDF or multi-page PDF image files, named the same as the sequential Bates production number endorsed on each image.  Images shall be contained in a folder called "IMAGES".  The imaged files shall be OCRed and multi-page text files shall be provided and named the same as the Bates number of the first page of the document, with the extension .txt.  If OCR is not feasible, the document shall be produced as a non-searchable PDF with a notation indicating that no text could be extracted. The OCR text files shall be contained in a folder called "TEXT".  To preserve the manner in which they are maintained, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records.  Start and end points, as well as family relationships for organized compilations of separate Documents (e.g., a binder containing several separate

Documents behind numbered tabs), shall be reflected in proper coding of the BegBates, EndBates, BegAttach, EndAttach, ParentId and AttchIds fields described below.

**5.16.**   Electronic Documents.   Electronic files, including Word and other loose file electronic Documents, as well as e-mails, text messages, online chats, and similar ESI, shall be converted to text-searchable PDF files and produced one document per PDF. Each PDF shall be named with and bear a unique Bates number (and any applicable confidentiality designation) on each page. Spreadsheets, presentations, and other document formats shall likewise be produced as PDFs using settings that reasonably preserve content and readability (*e.g.*, showing all rows/columns/slides or using appropriate print areas). Attachments shall be produced as separate PDFs and document family relationships shall be preserved through appropriate metadata (e.g., parent/child identifiers). PDFs shall contain extracted text where available; where extracted text is not available or incomplete, documents shall be OCR'd to create searchable PDFs. If OCR is not feasible, the document shall be produced as a non-searchable PDF with a notation indicating that no text could be extracted. For items that cannot reasonably be rendered to PDF (e.g., audio or video), the producing party shall provide a PDF placeholder identifying the item and available descriptive metadata in accordance with Section 5.11.

**5.17.**   E-mails.   If available, e-mail shall be collected and searched from the Producing Party's e-mail store (*e.g.,* Microsoft Exchange, Cloud, etc.) and from any reasonably accessible archive sources.  Other e-mail stored on a Custodian's computer, laptop, or other media, to the extent not clearly duplicative of that collected from a Party's e-mail store, shall also be searched along with the contents of any cloud or personal e-mail account that is regularly used for business purposes by a Custodian.  Responsive e-mail messages, meeting notices, calendar items, contacts,

and tasks shall be included in the search.  E-mail shall be produced together with all attachments and family relationships shall be reflected in proper coding of the BegBates, EndBates, BegAttach, EndAttach, ParentId and AttchIds fields described below.  Notwithstanding the above, non-responsive e-mail attachments may be withheld from production provided that the production includes a slip-sheet bearing the designation "Non-Responsive Attachment."  Lesser inclusive portions of e-mail threads or conversations may also be excluded from production.  A lesser inclusive portion is any responsive e-mail file the contents of which are entirely included in a produced e-mail file.

    **5.18.**  <u>Audio Visual Files.</u>  Audio and video files are to be produced in the native file format in which they were maintained in the ordinary course of business.

    **5.19.**  <u>Load Files.</u>  The Producing Party shall provide a data load file encoded in ASCII or UTF-8 in either .dat or .csv format and, if an image cross-reference file is used, an .opt file that references only PDF documents. All imaged documents shall be produced exclusively as multi-page PDF files. Any native, PDF, or text files referenced by the data load file shall reside within a single folder structure, and all referenced paths shall be relative to the root of the production set. If custom delimiters are used in the data load file, they must be valid UTF-8 characters and included in the file itself. Field names shall consist only of letters, numbers, dash, underscore, space, or period. Bates numbers shall consist only of letters, numbers, dash, underscore, ampersand, or space. Each document-level PDF shall be named with its beginning Bates number and shall bear Bates numbering (and any applicable confidentiality designation) on each page, with parent-child relationships preserved through appropriate metadata.

    The following fields may be included in the load file(s):

- All Custodian: - Custodians of any deduplicated versions of the document (if any).

- Duplicate File Name - File names of any deduplicated versions of the document (if any).

- Duplicate File Path - File paths of any deduplicated versions of the documents (If any).

- Redaction Reason - Reason why document was redacted (Privilege, Privacy, etc.)

In the event of rolling productions, an overlay with updated ALL CUSTODIAN, DUPLICATE FILE PATH, and DUPLICATE FILE NAME values may be provided in the event the value becomes outdated.

**5.20.** Encrypted or Password-Protected ESI.  For any ESI that exists in encrypted format or is password-protected, the Producing Party will reasonably attempt to produce such materials in a format that permits the Receiving Party to access the contents of those materials, or, if practicable, will provide the Receiving Party a means to gain access to those native files (for example, by supplying passwords).

**5.21.** System Files.  Common system and program files need not be processed, reviewed or produced.  Upon request, the Producing Party shall provide an index of the system files excluded from production and the criteria (e.g., non-human readable file, etc.) for not processing the files.

**5.22.** Proprietary Software.  To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format and issues as may arise with respect to obtaining access to any such software and operating manuals.

**5.23.**   Other ESI that is Impractical to Produce in Traditional Formats (*e.g.*, Structured Data).   The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats. To the extent a response to discovery requires production of ESI contained in a database, the Parties agree to confer to define appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (e.g., Excel, CSV or SQL format).

**5.24.**   Databases, Structured, Aggregated or Application Data. The Parties will meet and confer to address the production and production format of any responsive ESI contained in a database or other structured or aggregated ESI source or otherwise maintained by an application. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

**5.25.**   Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved.

**5.26.**   Metadata fields.   To the extent it can be extracted from ESI, the Parties will make reasonable efforts to produce with all ESI the metadata fields set forth in Appendix A. The Parties are not obligated to populate manually any of the fields in Appendix A if such fields cannot be extracted from the ESI, with the exception of the CUSTODIAN, BEGBATES, and ENDBATES, which shall be populated by the Producing Party.

**5.27.**   Date Fields Time Zone.   All Documents shall be processed so as to show fielded dates and times in the Mountain Time Zone (U.S. Mountain Time) unless the Parties agree otherwise in writing.

**5.28.** <u>Delivery of Document Productions.</u>  The Parties agree to make reasonable efforts to make ESI productions through secure file transfer protocol ("SFTP") or similar secure or encrypted electronic transmission.  To maximize the security of information in transit, any media on which Documents are produced may be encrypted.  In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

**IT IS HEREBY STIPULATED AND AGREED TO BY:**

Dated: January 14, 2026

FW-CO, INC., d/b/a
Fortis Warranty and Richard Lewis,

By their attorneys,

*/s/ Megan Ratcliffe*
Christine K. Lamb, Atty. Reg. #30326
Elizabeth T. Hartsel, Atty. Reg. #48254
Megan M. Ratcliffe, Atty. Reg. #56489
Senn Fortis LLC
1700 Lincoln Street, Suite 2100
Denver, CO 80203
Telephone: (303) 298-1122
clamb@sennfortis.com
lhartsel@sennfortis.com
mratcliffe@sennfortis.com

CHARLES SCHULZ,

By his attorneys,

*/s/ Gary Benson*
Gary J. Benson, Esq., #19681
Denesh Chukkapalli, #59028
Dworkin, Chambers, Williams, York,
Benson & Evans P.C.
3900 E. Mexico Avenue, Suite 820
Denver, Colorado 80210
Telephone: 303-584-0990 Fax: 303-584-0995
E-mail: gbenson@dnvrlaw.com
dchukkapalli@dnvrlaw.com

DAVID SCHUPPMAN and TRIDENT
SOLUTIONS OF SUGAR GROVE, LLC

By their attorneys,

*/s/ Kellie Fetter*
Kellie Nelson Fetter
Patrick John Miller
Emily A. England
Taft Stettinius & Hollister LLP
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email: eengland@taftlaw.com

**SO ORDERED.**

By: _____

Magistrate Judge Timothy P. O'Hara

Dated: _____

**APPENDIX A**

| DISCO Field Name | Field Description | Sample Values |
| --- | --- | --- |
| BegBates | Bates number for the first page of the document. | ABC0000001 |
| EndBates | Bates number for the last page of the document. | ABC0000002 |
| BegAttach | Bates number for the first page of parent document. | ABC0000001 |
| EndAttach | Bates number for the last page of last attachment. | ABC0000005 |
| ParentId | BegBates of parent document. | ABC0000001 |
| AttchIds | BegBates of each attachment. | ABC0000003, ABC0000004 |
| Pages | Number of printed pages of the document. | 2 |
| Custodian | All custodian names in format: Last name, First name. | Doe, John; Doe, Jane |
| Confidentiality | Indicates if the document has been designated as "Confidential" . | Confidential |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for non-redacted documents. | Yes |
| Subject | Subject line of e-mail. | Text of the subject line |
| FileName | File name of documents. | filename |
| Extension | The file extension. | doc |
| FilePath | The original file path. | \My Documents\Meetings\May |
| Title | The title property of a file. | Title |
| DocDate | Email: Sent Date & Time; Documents: Last Known Modified Date & Time. | mm/dd/yyyyhh:mm:ss |
| To | All SMTP address of email recipients, separated by a semi-colon. | John.doe@email.com |

| DISCO Field Name | Field Description | Sample Values |
|---|---|---|
| | | |
| From | All SMTP address of email author. | John.doe@email.com |
| CC | All SMTP address of email "CC" recipients, separated by a semi-colon. | John.doe@gmail.com; jdoe@yahoo.com |
| BCC | All SMTP address of email "BCC" recipients, separated by a semi-colon. | jdoe@gmail.com |
| Author | The Author property of a file. | John Doe |
| MD5Hash | Hash value in MD5 format. | 693d9a0698aff95c… |
| PathToText | The relative path to the accompanying text file. | \Vol001\TEXT\ABC00001.txt |
| PathToNative | The relative path to the accompanying native file. | \Vol001\NATIVES\spreadsheet.xls |
| SHA1 | Hash value in SHA1 format. | |
| Volume | The production number or reference from the production. | Vol001 |