**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-00254-NYW-TPO

FW-CO, Inc., d/b/a FORTIS,

      Plaintiff and Counter-Defendant,

and

RICHARD LEWIS,

      Counter-Defendant,

v.

CHARLES SCHULZ,
DAVID SCHUPMANN, and
TRIDENT SOLUTIONS OF SUGAR GROVE, LLC,

      Defendants and Counter-Claimants.

---

**ORDER ON MOTION FOR CONTEMPT**

---

This matter comes before the Court on the Motion for Contempt, filed by Plaintiff FW-CO, Inc. d/b/a Fortis ("Plaintiff" or "Fortis") against Defendant David Schupmann ("Defendant Schupmann" or "Mr. Schupmann") on April 29, 2025 ("Motion for Contempt"). [Doc. 62].  Mr. Schupmann responded to the Motion for Contempt, [Doc. 73], and Fortis replied, [Doc. 84].  Fortis's Reply was untimely, and Mr. Schupmann filed a Motion to Strike Plaintiff's Reply in Support of Motion for Contempt ("Motion to Strike").  [Doc 88]. Fortis opposed the Motion to Strike, [Doc. 91], and Mr. Schupmann did not file a reply. The Court finds that oral argument would not materially assist in the disposition of the Motion for Contempt and Motion to Strike.  Upon review of the Parties' briefing, the entire docket, and the applicable case law, the Motion for Contempt and the Motion to Strike

are respectfully **DENIED**.

## BACKGROUND

The Court has previously set out the background of this case in detail, *see, e.g.*, [Doc. 35 at 2–5; Doc. 99 at 2–4], and repeats it here only as pertinent to the instant Motions.   Fortis initiated this action on January 24, 2025 against Charles Schulz ("Defendant Schulz" or "Mr. Schulz"), Mr. Schupmann, and Defendant Trident Solutions of Sugar Grove, LLC ("Defendant Trident" or "Trident," and collectively with Defendants Schultz and Schupmann, "Defendants").   [Doc. 1].   On February 11, 2025, Fortis amended its operative pleading, asserting claims for breach of fiduciary duty against Defendants Schulz and Schupmann (Count I); breach of contract against Mr. Schulz and Mr. Schupmann (Count II); tortious interference against Trident (Count IV); tortious interference of prospective business advantage against Trident (Count V); civil theft against all Defendants (Count VI); conversion against all Defendants (Count VII); and civil conspiracy against all Defendants (Count VIII).[1]   [Doc. 20 at ¶¶ 106–64].   Fortis separately filed its Emergency Motion for Temporary Restraining Order and Preliminary Injunction against Mr. Schupmann and Trident on February 6, 2025.   [Doc. 10].

On February 24, 2025, the Court granted Fortis's request for a temporary restraining order based on Count II, restraining Mr. Schupmann "from engaging in managerial or sales and marketing functions for any entity that offers commercial roof maintenance plans, commercial roof repairs, or commercial roof replacements in any

---

[1] Although Fortis pleaded a Count III for temporary, preliminary, permanent injunctive relief as a cause of action, *see* [Doc. 20 at ¶¶ 121–28], injunctive relief is not a separate cause of action but instead a request for a certain type of relief, *Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019).

2

state in which [Fortis] operated between February 28, 2018 and December 24, 2025"

("TRO").[2]  [Doc. 35 at 14].  The Court granted the TRO "subject to the posting of a bond

and only until the determination of the forthcoming Motion for Preliminary Injunction."  [*Id.*].

Relatedly, the Court ordered the Parties to meet and confer regarding the proper bond

amount based on Mr. Schupmann's compensation at the time.  [*Id.* at 14–15].  The Parties

did so and on February 28, 2025, Fortis agreed to post a bond in the amount of $81,000.

[Doc. 38].

Fortis did not post the bond until May 6, 2025.  [Doc. 71].  However, on April 11,

2025, during a Telephonic Status Conference, Fortis informed the Court for the first time

that it tried to pay the bond but "was informed by the Clerk's Office that [it] can only do so

if the Court has ordered the payment of the bond."  [Doc. 53 at 1–2].  Fortis did not file a

formal motion seeking that relief.  Instead, on April 22, 2025, the Court issued an Order

that Fortis shall post bond in the amount of $81,000, [Doc. 54], and two weeks later, Fortis

posted the bond, [Doc. 71].

On April 29, 2025, Fortis filed the instant Motion for Contempt, alleging that Mr.

Schupmann had violated the TRO repeatedly since it issued and requesting that Mr.

Schupmann "be held in contempt of court and sanctioned accordingly."  [Doc. 62 at 1–2].

Fortis argued that both coercive and compensatory sanctions are appropriate, requesting

that the Court:  (1) impose a fine of $1,000 for each instance of Mr. Schupmann's

violations of the TRO; (2) impose a daily coercive fine of $1,000 for each day that Mr.

Schupmann continues to fail to comply with the TRO; (3) award Fortis its attorney's fees

---

[2] Trident is not named as a defendant to Count II for breach of contract. *See* [Doc. 20 at
¶¶ 112–120].

and costs incurred in connection with bringing the Motion; and (4) require that Mr. Schupmann disgorge all revenues that he received for work he performed in violation of the TRO, "as compensation for Fortis's losses." [*Id.* at 12]. Mr. Schupmann opposed, arguing that he "has at all times attempted to and has complied" with the TRO and therefore civil contempt sanctions are not warranted here. [Doc. 73 at 1, 13–15].

Fortis filed a Reply, eight days after the deadline to do so. *See* [Doc. 84]. Mr. Schupmann promptly moved to strike Fortis's Reply, arguing that Fortis did not even acknowledge that its filing was late, let alone provide a reason as to why its late filing should be excused. [Doc. 88 at 2–3]. Fortis responded to the Motion to Strike, stating that the reason Fortis's Reply did not identify a reason for its late filing was because "due to the error in counsel for Fortis's calendaring system, counsel for Fortis was under the impression that it had complied with the relevant deadline." [Doc. 91 at 2]. Fortis explains that it was not until Mr. Schupmann's counsel notified Fortis's counsel that they planned to file the Motion to Strike that Fortis realized its error. [*Id.*]. Fortis contends that the late filing is a result of excusable neglect and that relevant factors, such as lack of prejudice to Mr. Schupmann, favor denying the Motion the Strike and considering Fortis's Reply. [*Id.* at 1–4]. Mr. Schupmann did not respond to these arguments.

On May 30, 2025, the Court held a hearing on Fortis's Motion for Preliminary Injunction, [Doc. 89], and on July 25, 2025, the Court issued an Order denying it, [Doc. 99]. The Court found that "Plaintiff ha[d] not adequately adduced evidence of irreparable harm so that the Court could conclude that the right to a preliminary injunction is clear and unequivocal." [*Id.* at 16]. Given its ruling, the Court also ordered Fortis to show cause as to why the Motion for Contempt should not be denied. [*Id.* at 17]. Fortis conceded

4

that coercive sanctions are no longer available but responded that up until the Court's preliminary injunction order, "the TRO was a valid, unambiguous Court order that [Mr.] Schupmann chose to ignore," and the Court's denial of Fortis's request for a preliminary injunction "does not change the fact that [Mr.] Schupmann clearly and repeatedly violated the [TRO]." [Doc. 100 at 1–2]. Mr. Schupmann filed a short opposition incorporating his previous arguments and contending that the TRO did not take effect until the bond was posted, i.e. May 6, 2025. [Doc 110]. Because all the conduct Fortis complained of in its Motion occurred before the TRO went into effect on May 6, 2025, Mr. Schupmann argues, the Court should deny the Motion. [*Id.* at 4].

## LEGAL STANDARD

Courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "Civil contempt has a remedial, rather than a punitive, objective," *Coomer v. Make Your Life Epic LLC*, No. 21-cv-03440-WJM-KAS, 2024 WL 4042952, at *4 (D. Colo. Sept. 4, 2024), and "[c]ivil-contempt sanctions may be imposed only" to (a) "compel or coerce obedience to a court order" or (b) "compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance," *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018) (quotation omitted). Within these parameters, district courts enjoy "broad discretion" in exercising their inherent power and fashioning a remedy for civil contempt. *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001).

To prove civil contempt, "the plaintiff has the burden of proving, by clear and convincing evidence" that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order. *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998). Once that showing is made, the burden shifts

to the defendant "to show either that he had complied with the order or that he could not comply with it." *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008).

## ANALYSIS

The threshold question, as raised by the Parties' briefing in response to the Order to Show Cause, *see* [Doc. 100 at 8–10; Doc. 110 at 2–4], is when the TRO went into effect. As Mr. Schupmann correctly observes,[3] Federal Rule of Civil Procedure 65(c) dictates that posting bond "is an absolute condition precedent to the issuance of a [TRO]." [Doc. 110 at 3 (quoting *Atomic Oil Co. v. Bardahl Oil. Co.*, 419 F.3d 1097, 1100 (10th Cir. 1969))]; *see* Fed. R. Civ. P. 65(c) ("The court may issue . . . temporary restraining order *only if* the movant gives security in an amount that the court considers proper. . . ." (emphasis added)). And the Court emphasized as much in its Order granting the TRO. *See* [Doc. 35 at 14 (instructing, in bold font, that Plaintiff's request for a TRO is granted "subject to the posting of a bond")]; *see also* [*id.* at 13–14 ("Given the restrictions on Mr. Schupmann's employment, this Court finds that security is required . . . for the duration of the TRO.")]. Generally, an order for preliminary injunctive relief becomes effective upon the posting of the bond. *See, e.g.*, *Britt Interactive LLC v. A3 Media LLC*, No. 1:16-cv-

---

[3] Fortis contends that Mr. Schupmann waived any argument on this issue by failing to include such argument in his original response to Fortis's Motion for Contempt. [Doc. 100 at 9–10]. The Court need not resolve the issue of waiver, however, because it "may, in its sound discretion, address an argument despite a litigant's failure to raise it. . . . The exercise of such discretion is appropriate 'where the proper resolution is beyond any doubt or where injustice might otherwise result.'" *Perez v. Astrue*, No. 08-cv-02176-PAB, 2009 WL 3076259, at *1 (D. Colo. Sept. 23, 2009) (quoting *United States v. Jarvis*, 499 F.3d 1196, 1201–02 (10th Cir. 2007)) (explaining that the Tenth Circuit "has recognized an exception [to forfeiture] where the argument involves a pure matter of law and the proper resolution of the issue is certain"). Here, the Court prefers to resolve the issue on the merits rather than on procedural grounds. *See Watts v. Smoke Guard, Inc.*, No. 14-cv-01909-WYD-NYW, 2016 WL 26503, at *1 (D. Colo. Jan. 4, 2016) (stating that courts prefer resolution on the merits as opposed to procedural grounds).

02884-TWP-DML, 2017 WL 3610600, at *4 (S.D. Ind. July 28, 2017) (concluding that the effective date of the temporary restraining order was the date and time the security posted), *recommendation adopted*, 2018 WL 1165862 (S.D. Ind. Mar. 6, 2018); *Glasser v. Blixseth*, No. 14-cv-01576-RAJ, 2014 WL 12514894, at *2 (W.D. Wash. Nov. 14, 2014) (same).

Fortis acknowledges that "payment of the TRO bond was not entered until May 6, 2025." [Doc. 100 at 2]. Mr. Schupmann argues that this means that the TRO was not in effect until May 6, 2025. [Doc. 110 at 4]. Fortis disagrees, contending that the Court did not intend for the TRO to go into effect only when bond was paid, given that its "TRO did not contain language predicating its initiation on the bond payment." [Doc. 100 at 8]. But, as discussed above, the Court did include such language in its Order granting the TRO. *See, e.g.*, [Doc. 35 at 13–14 ("[T]his Court finds that security is required . . . for the duration of the TRO.")]. Further, Rule 65(c) plainly requires as much and does not impose an obligation on the district court to include specific language in its order. Fed. R. Civ. P. 65(c).

Fortis's citation to court rulings that "the posting of bond is not a jurisdictional prerequisite to the validity of a preliminary injunction," [Doc. 100 at 8], is inapposite— those cases merely hold that a district court is not jurisdictionally required *to set a bond* for a preliminary injunction to be valid. *See Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 464 (S.D. Fla. 1998) (explaining that in the First Circuit's decision in *Aoude v. Mobil Oil Corp.*, 862 F.2d 890 (1st Cir. 1988), the court affirmed a preliminary injunction where the district court did not require the moving party to post any bond). In other words, these cases stand for the proposition that a court may use its

discretion to issue a preliminary injunction without requiring security.  But if a Court sets a bond, that bond must be paid for the TRO to go into effect unless otherwise ordered by the Court.  *See 7-Eleven, Inc. v. Sandhu*, No. 24-cv-00490-JWH-KES, 2024 WL 3586797, at * 17 (C.D. Cal. July 16, 2024) ("Once the Court finds that a bond is required, the injunction will not take effect until the bond is posted. . . .  The district court is given discretion as to the amount of security required, if any." (cleaned up)), *amended*, 2024 WL 3586794 (C.D. Cal. July 26, 2024).

The Court is sympathetic to Fortis's argument regarding its good faith efforts to tender the bond payment prior to May 6, 2025.  [Doc. 100 at 8–9].  At some point prior to April 11, 2025, Fortis apparently tried to post bond but was told by the Clerk's Office that it could not accept the payment without a further order from this Court.  [Doc. 53; Doc. 100 at 8–9; Doc. 100-2 at ¶¶ 3–4 (declaring that Fortis attempted to make the payment "promptly" after February 24, 2025, but not providing dates)].  But Fortis did not formally move the Court for relief.  Nor did it even inform the Court about this payment obstacle until April 11, 2025.  [Doc. 53 at 1–2; Doc. 100 at 8 n.7].  And, once the Court issued the requested Order on April 22, 2025, [Doc. 54], Fortis did not post bond for another two weeks, [Doc. 71].  These facts do not prove that "it would be highly inequitable to find that the TRO was invalid before the bond was paid," [Doc. 100 at 8], and cannot override the well-established rule requiring bond to be posted for a TRO to become operative.  Accordingly, this Court concludes that the TRO became operative on May 6, 2025—and was in effect until the Court denied the preliminary injunction on July 25, 2025.

Having established May 6, 2025 as the operative effective date of the TRO, the Court turns to whether any of the conduct alleged in the Motion for Contempt occurred

8

after that date.[4]  Upon review of the record, the Court finds that the answer to this question

is no.  The Motion for Contempt was filed on April 29, 2025 and only cites documents and

testimony predating May 6, 2025.  *See generally* [Doc. 62].  Fortis's Reply, filed on May

27, 2025, refers only to those same documents and testimony.[5]  Fortis brings forth no

evidence, including in its August 1, 2025 response to the Order to Show Cause, *see* [Doc.

100], regarding any specific TRO violations taking place after May 6, 2025.  Accordingly,

---

[4] It is undisputed that Mr. Schupmann is subject to contempt for violations of the TRO during its operative period, even though the TRO expired upon the Court's denial of the preliminary injunction.  *See* [Doc. 100 at 4–5 ("[A] person who violates an injunction or temporary restraining order during its pendency is subject to a compensatory civil contempt judgment, even if the injunction or restraining order later terminates. . . ." (quoting *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 376 (10th Cir. 1996))); Doc. 110 (Mr. Schupmann not disputing this argument)].

[5] The Reply was filed 8 days late.  Mr. Schupmann moved to strike the Reply as untimely, arguing that Fortis did not seek leave to file the Reply out of time or allege any excusable neglect in its Reply, as required by Federal Rule of Civil Procedure 6(1)(B).  [Doc. 88 at 2–3].  Fortis opposed, explaining that its counsel's calendaring system reflected the wrong date and Fortis did not realize the Reply was untimely until after it was filed.  [Doc. 91 at 2].  Fortis then argued that this technical error constitutes excusable neglect and urged the Court to deny the Motion to Strike.  [*Id.* at 2–4].  Mr. Schupmann did not file a reply.

"A finding of excusable neglect depends on four factors:  '[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'"  *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  Based on these factors—and Mr. Schupmann's lack of reply to Fortis's arguments—the Court finds that the inadvertent calendaring mistake constitutes excusable neglect.  First, the risk of prejudice to Mr. Schupmann is low if it exists at all, considering that Mr. Schupmann would not have had the ability to respond in writing to Fortis's Reply even if it were timely filed.  [Doc. 91 at 3].  Second, the eight-day delay in the filing of the Reply is not so great as to have had an impact on judicial proceedings.  The third factor weighs against a finding of excusable neglect, because Fortis's counsel's calendaring system was entirely in its control, but "missed deadlines caused by 'oversight' are generally deemed excusable."  *Loomis v Specialized Desanders, Inc.*, No. 18-cv-00525-PRW, 2019 WL 5197565, at *2 & n.5 (W.D. Okla. Sept. 25, 2019) (collecting cases).  Finally, there is "no hint of bad faith; this is [Fortis]'s first time to miss a deadline."  *Id.* at *2; [Doc. 91 at 3–4].  Accordingly, the Court respectfully **DENIES** the Motion to Strike.

the Court finds that Fortis did not prove by clear and convincing evidence that Mr. Schupmann violated the TRO, and the Court respectfully **DENIES** the Motion for Contempt.  To the extent that discovery has produced evidence of violations of the TRO occurring during the period that the TRO was in effect, i.e., between May 6 and July 25, 2025, Fortis remains free to bring a renewed Motion for Contempt.  And as the Court has previously advised, this Court does not pass on the enforceability of the restrictive covenants in the Parties' employment agreement and expressly advises Defendants that—even absent a preliminary injunction—they may still be bound by such covenants and subject to damages arising from any breach, until and unless further Order of the Court or verdict by the jury.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)    Plaintiff FW-CO, Inc. d/b/a Fortis's Motion for Contempt [Doc. 62] is **DENIED**; and

(2)    Defendant David Schupmann's Motion to Strike Plaintiff's Reply in Support of Motion for Contempt [Doc. 88] is **DENIED**.

DATED:  March 25, 2026                 BY THE COURT:

_____
Nina Y. Wang
United States District Judge

10