**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00254-NYW-TPO

**FW-CO, INC., d/b/a FORTIS WARRANTY**,

      Plaintiff and Counter-Defendant;

**RICHARD LEWIS**,

      Counter-Defendant;

v.

**CHARLES SCHULZ**;
**DAVID SCHUPMANN**,

      Defendants and Counter-Claimants;

**TRIDENT SOLUTIONS OF SUGAR GROVE, LLC**; **ROOFING USA, LLC**; and
**INSTALLATION SERVICES LLC d/b/a TOPKEY CONSTRUCTION**,

      Defendants.

---

**INSTALLATION SERVICES LLC D/B/A TOPKEY CONSTRUCTION'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT**

---

Defendant, Installation Services, LLC, d/b/a TopKey Construction ("**TopKey**"),

respectfully moves to dismiss all claims asserted against TopKey in the Third Amended

Complaint (the "**Complaint**") filed by Plaintiff, FW-CO, Inc. d/b/a Fortis Warranty

("**Fortis**"), for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P., and

to dismiss the Eighth Claim for Civil Conspiracy as to TopKey under Rules 12(b)(6) and

9(b), Fed. R. Civ. P., and in support thereof, TopKey states as follows:[1]

---

[1] The instant motion is focused solely on the Rule 12(b) matters presented. Due to applicable page limits
and procedural posture, this motion does not address the underlying merits of the claims asserted by Fortis
against TopKey and the accusations of wrongdoing Fortis alleges in support of same, all of which TopKey
denies in the strongest terms.

CERTIFICATE OF CONFERRAL

Pursuant to Civil Practice Standard 7.1.B(b), the undersigned hereby certifies that, on June 2-3, 2026, he conferred in good faith with counsel for Plaintiff in this action regarding the relief requested in the instant motion. The motion is *opposed*.

## I.    INTRODUCTION

TopKey is a Maryland limited liability company with its principal place of business in Laurel, Maryland. Compl. at ¶ 26. TopKey has never been incorporated, licensed, or registered to do business in Colorado; has never maintained an office, employees, or agents in Colorado; has never owned or leased property in Colorado; and has never performed any roofing or construction work at any job site in Colorado. *See* Declaration of Dan Schardt, attached hereto as **Exhibit 1**, at ¶¶ 9-17. TopKey has no bank accounts, telephone listings, or agents in Colorado and has never paid taxes to the State of Colorado. *Id.*

The only connection between TopKey and Colorado alleged in the Complaint is the fortuity that Fortis is headquartered in Denver—a constitutionally insufficient basis to hale TopKey into this forum. Every act of **alleged** wrongdoing attributed to TopKey— embedding concealed fees, coordinating with co-defendants Charles Schulz ("**Schulz**") and David Schupmann ("**Schupmann**"), paying referral fees to Trident—are described as occurring entirely outside Colorado. Compl. at ¶¶ 64, 68–74 and Ex. C, Ex. F.

Three facts are critical. **First**, neither Schulz nor Schupmann was ever employed by TopKey—they were Fortis employees. Compl. at ¶¶ 38-53. *Their* Colorado contacts arose from their Fortis employment and cannot be attributed to TopKey. **Second**, Roofing USA, LLC ("**Roofing USA**") is not a subsidiary, affiliate, or entity owned or operated by TopKey— the two are wholly unrelated. **Exhibit 1** at ¶ 7. **Third**, Scott Reynolds ("**Reynolds**"), the sole

TopKey employee alleged to have participated in the conduct at issue, was terminated by TopKey in late 2024. *Id.* at ¶¶ 8. Reynolds' disclosures to Fortis's CEO, Richard Lewis ("**Lewis**"), constitute **the only** alleged communication between any TopKey-affiliated individual and any person in Colorado concerning the facts and events that are the subject of this action. Those communications did not occur until *after* TopKey terminated Reynolds and cannot support jurisdiction as to TopKey.

Because this Court lacks both general and specific personal jurisdiction over TopKey, all claims against it should be dismissed.

## II. STATEMENT OF RELEVANT FACTS

### A. The Parties

1. Fortis is a privately held Colorado corporation with its principal place of business in Colorado. Compl. at ¶ 17.

2. TopKey is a Maryland limited liability company and its principal place of business located in Laurel, Maryland. Compl. at ¶ 26; **Exhibit 1** at ¶ 4.

3. TopKey provides roofing and other construction services in multiple states, primarily in Maryland and Virginia. **Exhibit 1** at ¶ 5.

4. TopKey has no physical presence of any kind in Colorado and does not maintain any employees or operations in Colorado. *Id.* at ¶¶ 9-17.

5. Schulz is an individual who resides in Wisconsin. Compl. at ¶ 20.

6. Schupmann is an individual who resides in Illinois. *Id.* at ¶ 18.

7. Trident Solutions of Sugar Grove, LLC ("**Trident**") is an Illinois limited liability company owned by Schulz and Schupmann. *Id.* at ¶ 22.

8.      Roofing USA is a South Carolina limited liability company with its principal place of business in Mount Pleasant, South Carolina. *Id.* at ¶ 24.

9.      None of these parties are affiliated with TopKey. **Exhibit 1** at ¶¶ 6-7.

## B.  The Claims Against TopKey

10.      The Complaint asserts four claims against TopKey: **(1)** Aiding and Abetting Breach of Fiduciary Duty (Ninth Claim); **(2)** Unjust Enrichment (Tenth Claim); **(3)** Tortious Interference with Prospective Business Advantage (Eleventh Claim); and **(4)** Civil Conspiracy (Eighth Claim, asserted against all defendants). Compl. at ¶¶ 215-248.

## C.  The Alleged Kickback Scheme

10.      The Complaint alleges that Schulz and Schupmann operated a kickback scheme while employed by Fortis. *Id.* at. ¶¶ 57–75.

11.      Specifically, Fortis alleges that Schulz and Schupmann demanded that multiple Fortis subcontractors inflate their bids by 5–7.5% and pay the excess to Schulz and Schupmann through their entity, Trident (the "**Kickback Scheme**"). *Id.*

12.      Fortis alleges that Schulz and Schupmann's "primary contact at TopKey was Reynolds." *Id.* at. ¶ 68. Reynolds worked for TopKey from July 2022 to November 2024. *Id.* **Exhibit 1** at ¶ 8.

13.      During his employment, Reynolds communicated with Schulz (in Wisconsin) and Schupmann (in Illinois) about roofing projects located exclusively outside Colorado. Compl. at Ex. C, Ex. F, Ex. H, Ex. M.

14.      The email exhibits attached to the Complaint reflect that these communications involve TopKey personnel in Maryland communicating with Schulz and/or Schupmann at

their Trident email addresses regarding projects in Virginia, Florida, North Carolina, Arkansas, Ohio, and Maryland—never Colorado. *Id.* at Ex. C, pp. 2–22, Ex. F, Ex. H, Ex. M.

15.     At no point does the Complaint or any attached exhibit identify a single communication directed by any TopKey employee to any person located in Colorado.

**D.  TopKey's Contractual Relationship with Fortis**

14.     The Complaint identifies two written instruments between TopKey and Fortis: a June 28, 2022, Mutual Confidentiality and Non-Disclosure Agreement (the "**NDA**") and a June 21, 2023, contract for the Park Shirlington Project. *Id.* at. ¶¶ 66–67.

15.     Fortis alleges that the NDA was signed by TopKey's Director of Operations and Fortis's then-COO, Schupmann, but does not produce a copy of the NDA. *Id.* at ¶ 66. The Park Shirlington Project was a roofing project in Virginia, not Colorado. *Id.* at. ¶ 67.

16.     The Park Shirlington Contract was executed by Reynolds, who was not an officer of TopKey, without the knowledge, consent, approval or authority of TopKey. **Exhibit 1** at ¶¶ 18-19.

17.     The Park Shirlington Contract was voluntarily terminated by Fortis on August 31, 2023 prior to any work being undertaken. *Id.* at ¶ 20.

18.     Neither the NDA nor the contract for Park Shirlington were negotiated in Colorado, and neither contract required performance in Colorado. *Id.* at ¶¶ 21.

### III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) is the proper vehicle to challenge a court's personal jurisdiction over a defendant. *See Albuquerque Facility, LLC v. Danielson*, 181 F. Supp. 3d 924, 929-30 (D.N.M. 2016). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086,

1091 (10th Cir. 1998) (citations omitted). Well-pled factual allegations that are "plausible, non-conclusory, and non-speculative" must be taken as true and factual disputes must be resolved in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citations omitted). "Conclusory allegations of defendant's minimum contacts are insufficient to establish personal jurisdiction." *Black & Veatch Const., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 572 (D. Kan. 2000) (citations omitted).

To establish personal jurisdiction over a nonresident in a diversity action, plaintiff must demonstrate that jurisdiction is consistent with both the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). "'Colorado's long-arm statute,'" C.R.S. § 13-1-124, "is coextensive with constitutional limitations imposed by the due process clause." *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1229 (D. Colo. 2009) (quoting *Day v. Snowmass Stables, Inc.*, 810 F. Supp. 289, 291 (D. Colo. 1993)). Accordingly, "if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant." *Id. (citations omitted)* The inquiry thus collapses into a two-step due process analysis. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010) (citing *OMI Holdings, Inc.*, 149 F.3d at 1091).

Under the Due Process Clause, a federal court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State and the defendant's contacts with the forum are such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (citations omitted). This

standard may be satisfied by either general or specific jurisdiction. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

## IV.    ARGUMENT

### A.  This Court Lacks General Jurisdiction Over TopKey.

Fortis does not appear to invoke general jurisdiction as a basis for personal jurisdiction over TopKey in this action. In an abundance of caution, TopKey states that it's operations cannot support general jurisdiction, which exists only when a defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted).[2] TopKey satisfies none of the relevant factors. See **Exhibit 1** a ¶¶ 9–17.

TopKey's lack of contacts with Colorado precludes a finding that it is essentially at home in Colorado. Consequently, general jurisdiction over TopKey does not exist.

### B.  This Court Lacks Specific Jurisdiction Over TopKey.

"The minimum contacts test for specific jurisdiction . . ." requires that **(1)** the defendant "purposefully directed its activities at residents of the forum state . . . ," **and (2)** "the plaintiff's injuries arise out of [the] defendant's forum-directed activities." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (citations omitted). Even if minimum contacts are established, the court must then consider whether the exercise of personal jurisdiction would "offend 'traditional notions of fair play and substantial justice.'"

---

[2] In evaluating general jurisdiction over a business entity, courts consider whether the defendant is "(1) engaged in business in the state; (2) licensed to do business in [the] state; (3) owning, leasing, or controlling property in [the] state; (4) maintaining employees, offices, agents, or bank accounts in [the] state; (5) shareholders reside in [the] state; (6) maintaining phone or fax listings in [the] state; (7) advertising or soliciting business in [the] state; (8) traveling to [the] state by way of salespersons; (9) paying taxes in [the] state; (10) visiting potential customers in [the] state; (11) recruiting employees in [the] state; and (12) generating a substantial percentage of its national sales from in-state customers." *Bathcrest, Inc. v. Safeway Safety Step, Inc.*, 417 F. Supp. 2d 1236, 1240 (D. Utah 2006) (citations omitted).

*OMI Holdings*, 149 F.3d at 1091 (citations omitted). TopKey's alleged activities in Colorado do not satisfy any element of this analysis.

### i. *TopKey Did Not Purposefully Direct Conduct to Colorado.*

Fortis's claims against TopKey sound in tort. *See Newsome v. Gallacher*, 722 F.3d 1257, 1264-65 (10th Cir. 2013) (characterizing aiding and abetting breach of fiduciary duty as "tort-based") (citations omitted). For tort-based claims, the Tenth Circuit applies the *Calder Effects Test* to evaluate purposeful direction: **(1)** an intentional action, **(2)** expressly aimed at the forum state, **and (3)** with knowledge that the brunt of the injury would be felt in the forum state. *Dudnikov*, 514 F.3d at 1071-79; *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230-33 (10th Cir. 2020).

TopKey's alleged tortious acts—embedding concealed fees, paying kickbacks to Trident, and coordinating with Schulz and Schupmann—allegedly occurred in Maryland, where TopKey is based, and were directed to individuals in Wisconsin and Illinois, where Schulz and Schupmann reside. Compl. at. ¶¶ 18, 20, 68–73, Ex. C, Ex. F.

The roofing projects that generated the alleged kickback payments are all located in states other than Colorado. *Id.* at ¶¶ 64, 67, 70, 78, Ex. F, Ex. H, Ex. M. Not a single communication from TopKey pertaining to any project or issue as to which Fortis complains was directed to Colorado. However, even where a defendant has had incidental contacts with a forum, the Tenth Circuit has found such contacts insufficient to establish specific jurisdiction absent a more substantial nexus. *See C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323-25 (10th Cir. 2019) (attendance at trade shows in the forum state and sending a cease-and-desist letter there did not establish minimum contacts for specific jurisdiction); *Great Divide Brewing Co. v. Gold Key/PHR Food Servs., LLC*, 127 F.

Supp. 3d 1137, 1141-46 (D. Colo. 2015) (dismissing suit for lack of personal jurisdiction where contacts with Colorado were minimal and incidental). TopKey's contacts with Colorado are even more attenuated than those found lacking in *C5 Medical* and *Great Divide*. TopKey never sent correspondence to Colorado related to Fortis's allegations, never sent its personnel to Colorado, and never performed any work in Colorado.

"'[W]hen both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court.'" 666 F. Supp. 2d at 1233 (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1507-08 (10th Cir. 1995)) (citations omitted). Therefore, the alleged injury in Colorado, to be cognizable for jurisdictional purposes, "'must be direct, **not** consequential and remote.'" *Id.* at 1233 (quoting *Amax Potash Corp. v. Trans-Resources, Inc.*, 817 P.2d 598, 600 (Colo. Ct. App. 1991)) (emphasis added).

Here, the alleged injuries (inflated project costs and diverted project revenue) occurred on undeniably out-of-state projects. Any financial impact felt at Fortis's Colorado headquarters is merely a derivative consequence of Fortis's corporate domicile, the same type of indirect and remote injury held insufficient in *Grynberg*. *See* 666 F. Supp. 2d at 1233-34; *see also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074-80 (10th Cir. 1995) (minimum contacts insufficient where court found "no evidence that defendants' alleged torts had any connection to [the forum state] beyond plaintiff's corporate domicile").

Further, the *Far West* court expressly warned that "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West*,

46 F.3d at 1079; *accord Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193–1201 (Colo. 2005). This aligns with recent Supreme Court precedent on specific jurisdiction holding that there must be a sufficient "relationship among the defendant, the forum, and the litigation . . ." that is "close enough to support specific jurisdiction." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1028–32, 1032 (2021).

In *Ford Motor*, the Court found sufficient contact between the defendant and the forum because the defendant had extensive in-state contacts—dealerships, advertising, and vehicles sold—in the very states where the injuries occurred. *Id.* at 1024-32. Here, the alleged Kickback Scheme has no connection to Colorado beyond the fortuity that Fortis maintains its corporate headquarters in Denver. That alone is insufficient for the Court to establish specific jurisdiction over TopKey.

### ii.  *Fortis Cannot Be the Only Link Between TopKey and Colorado.*

In *Walden v. Fiore,* the Supreme Court held that a defendant's knowledge of a plaintiff's connection to the forum state, on its own, cannot confer personal jurisdiction over a defendant engaged in allegedly tortious activity. 571 U.S. 277, 283-290 (2014). Instead, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him . . ." because the plaintiff "cannot be the only link between the defendant and the forum." *Id.* at 276, 285.

That is precisely the situation here. The Complaint alleges jurisdiction based on TopKey allegedly directing its conduct to "a Colorado resident (Fortis)." Compl. at ¶ 27. But TopKey's alleged conduct—embedding fees in its pricing, paying kickbacks to an Illinois entity, coordinating with individuals in Wisconsin and Illinois on out-of-state projects—as pled, was not aimed at Colorado. *See Eighteen Seventy, L.P. v. Jayson*, 532 F. Supp. 3d

1125, 1132-39 (D. Wyo. 2020) (no purposeful direction where defendant acted in a foreign country to solicit investments for a foreign company from investors around the world, with investors serving as the only link to forum state); *see also Dental Dynamics*, 946 F.3d at 1231-32 (holding that the "incidental fact that broker was located [in the forum state]" was insufficient to establish personal jurisdiction); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-07 (9th Cir. 2004). Accordingly, even if TopKey knew that Fortis was located in Colorado, that is insufficient to establish specific jurisdiction when TopKey's alleged conduct was directed to and involved parties/matters outside Colorado.

### iii. *The Contacts of Schulz, Schupmann, and Roofing USA Cannot Be Attributed to TopKey.*

Fortis appears to imply that the contacts of all co-defendants should be imputed to TopKey. This theory fails as a matter of law. Schulz and Schupmann were not employees of TopKey—they were Forits employees. Whatever contacts Schulz and Schupmann may have had with Colorado through their Fortis employment, forum-selection clauses, and travel to Colorado, are attributable to Schulz, Schupmann, and Fortis, *not* TopKey.

Roofing USA is similarly unaffiliated with TopKey. Roofing USA is a South Carolina LLC. Compl. at ¶ 24. It is not a subsidiary, affiliate, parent, or partner of TopKey. Its contacts with Colorado cannot be attributed to TopKey for any purpose. *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) ("Due process requires that [the defendant] itself have minimum contacts with Colorado.") (citations omitted).

To the extent Fortis argues that a conspiracy among the Defendants creates a basis for jurisdiction, that theory likewise fails. Under *Ammerman v. Fisher*, "[t]he existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction . . .'" **but** "the plaintiff

must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." No. 2:24-cv-00790, 2026 WL 626481, at *4 (D. Utah Jan. 20, 2026) (citations omitted).[3]

Even if a prima facie case of conspiracy were sufficiently pled, conspiracy allegations "do not necessarily establish jurisdiction over [an alleged] nonresident co-conspirator." *Id.* Sufficient minimum contacts require "more than the presence of [an alleged] co-conspirator within the forum state." *Id.* Either **(1)** the conspiracy must be "directed toward the forum . . ." **or (2)** "substantial steps in furtherance of the conspiracy must be taken in the forum 'of which the out-of-state co-conspirator was or should have been aware.'" *Id.* (citations omitted); *see also Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*, 45 F. Supp. 2d 1255, 1257-63 (D.N.M. 1999) (co-conspirator contacts cannot be attributed to another for jurisdictional purposes absent strict requirements). Here, the alleged Kickback Scheme was not directed to Colorado but rather to projects in other states. Finally, the Complaint fails to identify any substantial steps in furtherance of the Kickback Scheme that took place in Colorado or that TopKey was aware of any such steps.

---

[3] Dismissal of the conspiracy claim is also proper under Rules 12(b)(6) and 9(b) for failure to state a cause of action. The Complaint does not identify the components of a conspiracy claim as to TopKey or distinguish TopKey's alleged role from that of any other defendant. The sole allegation is that "[t]he Defendants agreed, by words or conduct, to engage in unlawful conduct to personally enrich themselves." Compl. at ¶ 216. The Complaint fails to support this bare contention—Fortis does not identify when any alleged five-party agreement was formed, which individuals participated, the terms of the agreement, or any meeting among Schulz, Schupmann, Trident, Roofing USA, and TopKey at which a common objective was discussed. Because the conspiracy claim is predicated on alleged acts of deception and concealment, it sounds in fraud and Rule 9(b)'s heightened pleading standard applies. The Complaint falls far short of pleading the conspiracy claim with requisite particularity. Even if the Court declines to apply Rule 9(b), the conspiracy claim independently fails under the standard pleading requirements of Fed. R. Civ. P. 8(a) because the Complaint's own factual allegations describe distinct, disconnected schemes involving different defendants at different times for different purposes, rendering the existence of a single unified conspiracy implausible on its face. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### iv.  Reynolds' Contacts are Insufficient to Establish Specific Jurisdiction.

Reynolds was a TopKey employee from July 2022 through November 2024. During his employment, Reynolds's contacts were directed *exclusively* to out-of-state parties concerning out-of-state projects. Reynolds's post-termination disclosures to Fortis are irrelevant to the jurisdictional analysis. Because Reynolds was no longer a TopKey employee at the time of the disclosures, those contacts cannot be imputed to TopKey. *See Newsome*, 722 F.3d at 1264-81 (contacts must be the defendant's own).

### v.The Calder Effects Test Is Not Satisfied.

Applying the *Calder Effects Test*, Fortis cannot establish that TopKey's conduct was expressly aimed at Colorado or that TopKey knew the brunt of the injury would be felt in Colorado. The "expressly aimed" prong focuses on the defendant's intentional actions and asks whether the forum state was the "focal point" of the defendant's tortious actions. *Newsome*, 722 F.3d at 1265-68. The Supreme Court clarified in *Walden* that the focus must be on the defendant's contacts with the forum state, not with plaintiff's residence. 571 U.S. at 285. A plaintiff must allege more than a foreseeable economic injury in the forum state to demonstrate that a defendant had sufficient minimum contacts with the forum state. That "'something more' is the requirement that the defendant have 'expressly aimed' his activities at the forum state such that the forum is the 'focal point' of the tort and the injury." *Floyd's 99 Holdings, LLC v. Jude's Barbershop, Inc.*, 898 F. Supp. 2d 1202, 1207 (D. Colo. 2012) (citations omitted).

Here, TopKey's actions were aimed at obtaining roofing projects and **allegedly** paying kickbacks entirely outside Colorado. Colorado was not the focal point. Fortis claims it was the target, and Fortis happens to be in Colorado. That is not enough to satisfy the

"expressly aimed" prong of the *Calder Effects Test. Cf. Eighteen Seventy L.P.*, 532 F. Supp. 3d at 1133–38 (citations omitted).

As to the "brunt of the injury" prong, Fortis may argue that financial harm was felt at its Colorado headquarters. But the Tenth Circuit characterizes the location of a headquarters as a "mere fortuity" in a jurisdictional analysis. *Far West*, 46 F.3d at 1079 (quoting *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988)). Under *Newsome*, the injury must occur primarily in the forum state. *See* 722 F.3d at 1268-75; *see also Eighteen Seventy L.P.*, 532 F. Supp. 3d at 1137-39. Whatever injury occurred relative to those out-of-state projects was felt, if at all, in those out-of-state markets, and only derivatively at Fortis's headquarters location.

### C. The Exercise of Jurisdiction Over TopKey Would Offend Traditional Notions of Fair Play and Substantial Justice.

Even if the Court finds that Fortis has made a prima facie showing of minimum contacts, the exercise of jurisdiction must still comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This is assessed through five factors: "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings*, 149 F.3d at 1095 (citations omitted). TopKey's showing under these factors runs on a "sliding scale" because "[t]he weaker a plaintiff's showing on [minimum contacts], 'the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *AST Sports Sci., Inc. v. CLF Distribution. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008).

**Burden on TopKey.** TopKey is a Maryland LLC with all of its operations in the Mid-Atlantic. Litigating in Colorado would impose a significant burden. TopKey has no office, employees, agents, or property in Colorado, and all relevant witnesses are located in Maryland. This factor weighs heavily against the exercise of jurisdiction.[4]

**Colorado's Interest.** While Colorado has an interest in providing a forum for its residents, that interest is attenuated where the alleged acts and direct injuries occurred outside Colorado. *See Grynberg*, 666 F. Supp. 2d at 1237–38. Further, the Court's interest is already served by its jurisdiction over Schulz, Schupmann, and the other defendants.

**Plaintiff's Interest in Convenient Relief.** Fortis can obtain convenient and effective relief against TopKey in Maryland, where TopKey would be subject to general jurisdiction. Fortis cannot establish that litigation in Maryland would be "so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI Holdings*, 149 F.3d at 1097.

**Efficient Resolution.** While litigating against multiple defendants in a single forum promotes efficiency, this consideration cannot override due process. Fortis's claims against TopKey involve distinct factual issues, TopKey's pricing, its alleged payments to Trident, and its employees' alleged knowledge. These alleged actions are separate from Fortis's employment-related claims against Schulz and Schupmann. This factor is, at best, neutral.

**The States' Shared Interest in Furthering Social Policies.** Maryland has a strong interest in adjudicating disputes involving its residents. Hauling TopKey into court

---

[4] *See Grynberg*, 666 F. Supp. 2d at 1237 (finding significant burden on defendants with "no office or property located in Colorado"); *Craig Hosp. v. Empire Healthchoice, Inc.*, No. 18-CV-00794-WYD-STV, 2019 WL 10258608, at *2, *8 ( (D. Colo. Apr. 1, 2019) (burden on defendant weighed against jurisdiction where defendant was "incorporated in [another state], [was] not licensed to do business in Colorado, and [did] not pay Colorado taxes, maintain Colorado bank accounts, or have any Colorado offices").

in Colorado based on the fortuity of Fortis's domicile does not advance any fundamental social policy. This factor is neutral to slightly favoring TopKey.

These factors confirm that even if there were a marginal showing of minimum contacts—which TopKey denies—exercising jurisdiction over TopKey in Colorado would be unreasonable and would offend traditional notions of fair play and substantial justice.

**WHEREFORE**, Defendant, Installation Services LLC, d/b/a TopKey Construction, respectfully requests that this Court enter an order: **(1)** granting the instant motion and dismissing all claims asserted in this action against TopKey for lack of personal jurisdiction pursuant to Rule 12(b)(2); **(2)** dismissing the conspiracy claim as to TopKey under Rules 12(b)(6) and 9(b) for failure to state a cause of action, and **(3)** awarding any other relief in favor of TopKey that the Court deems just and proper.

DATED: June 4, 2026.

Respectfully submitted,

*/s/ Gabriel D. Pinilla*
Gabriel D. Pinilla (CO Bar #54504)
Uriel Martinez (CO Bar #57394)
**ADAMS & REESE LLP**
1001 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 970-2156
Gabriel.Pinilla@arlaw.com
Uriel.Martinez@arlaw.com
Secondary:Alisyn.Bukowski@arlaw.com

***Attorneys for Installation Services LLC, d/b/a TopKey Construction***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will automatically serve a copy via electronic mail to all counsel of record.


/s/ Gabriel D. Pinilla
Gabriel D. Pinilla