# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00254-NYW-TPO

FW-CO, INC. d/b/a Fortis Warranty,

      Plaintiff/Counter-Defendant,

RICHARD LEWIS,

      Counter-Defendant,

v.

CHARLES SCHULZ,

DAVID SCHUPMANN,

      Defendants/Counter-Claimants,


TRIDENT SOLUTIONS OF SUGAR GROVE, LLC;

ROOFING USA, LLC; and

INSTALLATION SERVICES LLC d/b/a TOPKEY CONSTRUCTION,

      Defendants.

---

## MOTION TO DISMISS

---

Defendant Roofing USA, LLC, by and through its undersigned counsel, moves to dismiss the claims asserted against it in the Third Amended Complaint & Jury Demand filed by Plaintiff FW-CO, Inc. d/b/a/ Fortis Warranty ("Fortis") for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). (D.E. 153, 3d Am. Compl. ("Compl.").) Fortis cannot show that this Court has personal jurisdiction over Roofing USA because Fortis cannot establish that Roofing USA had adequate "minimum contacts" with Colorado or that asserting jurisdiction over Roofing USA comports with traditional notions of fair play and substantial justice.

Fortis cannot show that Roofing USA has the necessary minimum contacts with

Colorado because Roofing USA does not conduct any business in Colorado, and Fortis does not allege otherwise. (*See generally* Compl.) Fortis claims that Roofing USA interfered with Fortis's employment contracts with Defendants Schupmann and Schulz, business relations, trade secrets and proprietary information, among other things. (Compl. ¶ 25.) Fortis asserts that Roofing USA does business in other states and that Defendant Schupmann—who Fortis alleges began working for Roofing USA during and after his employment with Fortis—was responsible for sales in those other states when he worked for Fortis. (Compl. ¶ 126, 132–33.) But Fortis cannot show that Roofing USA directed its actions at Colorado, especially when it conducts no business in Colorado. Instead, Fortis merely restates the elements of personal jurisdiction by claiming that "Roofing USA committed intentional wrongful acts directed at Fortis, a Colorado resident, with the knowledge that the brunt of the injury from its wrongful acts would be felt in Colorado." (Compl. ¶ 25.) This is insufficient under *Twombly*, and the Court should disregard these formulaic recitations. Also, Fortis does not claim that Roofing USA "expressly aimed" any alleged tortious conduct at Colorado, a necessary element of personal jurisdiction.

Even if Fortis could show that Roofing USA had sufficient minimum contacts with Colorado, this Court still does not have personal jurisdiction over Roofing USA because (1) litigating this case in Colorado would be burdensome for Roofing USA since it conducts no business in Colorado, (2) Colorado's interest in resolving this dispute is no greater than any other state that has a connection to the Defendants, (3) the relief Fortis seeks would not be impossible in a different jurisdiction or create a hardship for Fortis, (4) based on information and belief, most of parties, witnesses, and evidence exist outside

2

of Colorado, and (5) several other relevant jurisdictions have strong social policies in favor of freedom of competition and against unduly burdensome restraints on trade which are at the heart of this litigation.

For these reasons, discussed more fully below, the Court should find that personal jurisdiction over Roofing USA is lacking.

## STATEMENT OF CONFERRAL

On June 2, 2026, Roofing USA's counsel met and conferred with Fortis's counsel via video conference regarding the relief requested herein. Fortis opposes the requested relief.

## GENERATIVE AI USE CERTIFICATION

The undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

## BACKGROUND

Fortis filed its Third Amended Complaint & Jury Demand on May 7, 2026, adding two defendants to the litigation: Roofing USA and Installation Services LLC d/b/a TopKey Construction ("TopKey"). (Compl.) Roofing USA was served on May 19. (D.E. 159, Aff. of Serv.) In the Complaint, Fortis states that it is a privately held Colorado corporation with its principal place of business in Colorado. (Compl. ¶ 17.) Defendant Schupmann is an individual residing in Illinois. (*Id.* ¶ 18.) Defendant Schulz is an individual residing in Wisconsin. (*Id.* ¶ 20.) Defendant Trident Solutions of Sugar Grove, LLC ("Trident") is a limited liability company organized under the laws of Illinois and owned by Schulz and Schupmann. (*Id.* ¶ 22.) Defendant TopKey is a limited liability company with its principal place

3

of business in Maryland. (*Id.* ¶ 26.)

Roofing USA is a limited liability company organized under the laws of South Carolina and headquartered in Ladson, South Carolina. (*Id.* ¶ 24; **Ex. A**, Decl. of Brian Tice ("Tice Decl.") ¶ 3.) Roofing USA was formed in 2021 and employs 15 employees. (Tice Decl. ¶¶ 2, 4.) Fortis claims that "[t]his Court has specific personal jurisdiction over Roofing USA because Roofing USA committed intentional, wrongful acts directed at Fortis, a Colorado resident, with the knowledge that the brunt of the injury from its wrongful acts would be felt in Colorado." (Compl. ¶ 25.) Fortis further alleges that "Roofing USA knew Fortis was a Colorado based company and knew this when it intentionally and tortiously interfered with Fortis's employment contracts, business relations, trade secrets and proprietary information, among other wrongs." (*Id.*) Roofing USA has conducted business in Virgina, North Carolina, South Carolina, Georgia, Florida, and North Dakota. (Tice Decl. ¶ 10.) Fortis does not allege that Roofing USA does any business in Colorado. (*See generally* Compl.) Roofing USA does not own property or maintain offices in Colorado. (Tice Decl. ¶ 6.) Nor does it maintain any bank account, real or personal property, mailing address, or telephone listing in Colorado. (*Id.* ¶ 7.) Roofing USA does not conduct business in Colorado, is not registered or licensed to conduct business in Colorado, and has never filed a Colorado state tax return. (*Id.* ¶¶ 8–10.) Roofing USA does not advertise to or solicit Colorado residents, and it does not have any Colorado customers or projects. (*Id.* ¶ 8–11.)

The Complaint asserts claims against Roofing USA for injunctive relief (Count III), tortious interference with contractual relations as to alleged Employment Agreements

between Fortis on the one hand and Schupmann and Schulz on the other (Count IV), tortious interference with prospective business advantage (Count V), civil conspiracy (Count VIII), and aiding and abetting breach of fiduciary duty (Count IX). (Compl. ¶¶ 161–99.) The Complaint does not assert any causes of action against only Roofing USA.

Fortis alleges that Defendants Schulz and Schupmann operated a kickback scheme while employed by Fortis. (*Id.* ¶¶ 54–75.) Specifically, Fortis claims that Schulz and Schupmann offered Fortis subcontractors guaranteed work if they inflated their bids by 5 to 7.5% and paid the excess to Schulz and Schupmann through their entity, Trident. (*Id.* ¶ 58.)

Fortis asserts that Schupmann and Schulz entered into employment agreements with Fortis. (*Id.* ¶ 2.) Fortis alleges that Roofing USA knew Defendants Schulz and Schupmann had employment agreements with Fortis and duties of loyalty to Fortis, but "willfully exploited and benefited" from Defendant Schulz's alleged breaches during his employment with Fortis and from Defendant Schupmann's alleged breaches during and after his employment with Fortis. (*Id.* ¶ 14.) Fortis also claims that Roofing USA "knowingly and willingly participated in" Defendants Schulz and Schupmann's "kickback scheme and diversion of work away from Fortis" along with Defendants Trident and TopKey (*Id.* ¶ 16), and solicited and accepted from Schulz and Schupmann Fortis's proprietary materials and work product. (*Id.* ¶ 137.) Specifically, the Complaint states that Roofing USA has used confidential information Schupmann and Schulz learned while employed by Fortis to help Roofing USA pitch customers. (*Id.* ¶ 138.) Again, none of these

5

alleged competitive activities occurred in Colorado.

## LEGAL STANDARD

Fortis bears the burden of establishing that the Court has personal jurisdiction over Roofing USA. *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1160 (D. Colo. 2010). At this stage, Fortis must establish a prima facie case of personal jurisdiction. *Id.* Fortis must show "via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* (citation omitted). And Fortis "must make this showing with respect to each of the claims alleged." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). As part of this inquiry, the Court accepts as true only the "non-conclusory and non-speculative" facts alleged in the Complaint. *Id.; see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And even if Fortis meets its burden, Roofing USA may still prevail by presenting "a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *Ajjarapu*, 728 F. Supp. 2d 1154 at 1160.

## ARGUMENT

Fortis fails to meet its burden to show the Court has personal jurisdiction over Roofing USA. The personal jurisdiction inquiry involves two subparts: (1) whether a "statute authorizes service of process on defendants" and (2) "whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1279 (10th Cir. 2016) (citation omitted). In a diversity action, a plaintiff must show that statutory jurisdiction is proper under the laws of the forum state. *Dental Dynamics*, 946 F.3d at 1228. Colorado's long-arm statute establishes the

6

basis for Colorado courts to exercise personal jurisdiction over nonresidents who engage in specified activities within the state. C.R.S. § 13-1-124; *Dental Dynamics*, 946 F.3d at 1228. Colorado Revised Statute § 13-1-124 states that Colorado courts will have personal jurisdiction over persons or entities that (i) transact any business within Colorado, (ii) commit a tortious act within Colorado, (iii) own, use, or possess real property situated in Colorado, among other acts that are irrelevant to this case. *Id.*

Because Colorado's long-arm statute confers the "maximum jurisdiction permissible consistent with the Due Process Clause," the analysis primarily turns on the constitutional assessment. *Anzures*, 819 F.3d 1277 at 1279. The Supreme Court has held that the exercise of jurisdiction consistent with due process requires that a defendant have "minimum contacts" with the forum state so that having to defend a lawsuit would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For tort claims, the "minimum contacts" analysis is based on two distinct requirements. First, the Court considers whether the out-of-state defendant "purposefully directed its activities at the forum state." *Anzures*, 819 F.3d 1277 at 1280 (cleaned up). Second, the plaintiff's alleged injuries must "arise out of the defendant's forum-related activities." *Id.* (cleaned up).

If the court determines that the above-requirements are met, it must then consider whether the exercise of jurisdiction is reasonable and fair. *Dental Dynamics,* 946 F.3d at 1229. This inquiry requires assessing the following factors: "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in

obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.*

## I.     Fortis fails to show that Roofing USA has sufficient "minimum contacts" with Colorado.

Fortis fails to establish personal jurisdiction over Roofing USA, requiring dismissal of its claims against Roofing USA. While personal jurisdiction can be general or specific, Fortis relies on only specific jurisdiction, "which exists only when the suit relates to the defendant's contacts with the forum state." *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014).

Fortis asserts tort claims against Roofing USA. When analyzing a tort-based claim in this context, courts examine the harmful effects in the forum state to assess the purposeful direction of the action. *Dental Dynamics*, 946 F.3d at 1231. "Purposeful direction in this context has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Id.* "Mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The minimum contacts inquiry does not focus on the plaintiff but rather "must be analyzed with regard to the defendant's contacts with the forum itself." *Id.* at 277. Indeed, the Tenth Circuit has "taken a somewhat . . . restrictive approach, holding that the forum state itself must be the focal point of the tort." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 97 (10th Cir. 2012) (cleaned up). The purposeful direction analysis "ensures that defendants will not be haled into court in foreign jurisdictions solely as a result of 'random, fortuitous, or attenuated contacts.'" *Dental Dynamics*, 946 F.3d at 1229 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

(1985)).

Like in *Grynberg*, Roofing USA's alleged conduct occurred entirely outside of the forum state (Colorado), and the mere fact that its alleged conduct affected Fortis, a Colorado resident, does not suffice to authorize jurisdiction. 490 F. App'x at 91; *see also Walden*, 571 U.S. at 290 (holding that "the mere fact that [the petitioner's] conduct affected plaintiffs with connections to the forum State" did not create personal jurisdiction.). In *Grynberg*, the plaintiffs brought claims of fraud, intentional and tortious interference with business advantages, unjust enrichment, civil conspiracy, and RICO violations against the defendants. 490 F. App'x at 89. The court held that the plaintiffs failed to establish that the defendants expressly aimed their alleged wrongful conduct at Colorado, the forum state.

Mr. Grynberg, one of the plaintiffs, acted through an Ecuadorian company to obtain concessions to explore and produce oil from an area of Ecuador. *Id.* at 88–89. He then contacted an executive of defendant Ivanhoe and they discussed a possible joint venture. *Id.* Mr. Grynberg then provided the Ivanhoe executive a proprietary report about the oil deposits in this area of Ecuador. *Id.* Ecuador later declared certain mining concessions, including the plaintiffs' concession, expired, and Ivanhoe obtained a mining concession from Ecuador shortly thereafter. A journal article was published that contained confidential information that was in the report provided to Ivanhoe by Mr. Grynberg. *Id.* The plaintiffs filed suit in the United States District Court for the District of Colorado, claiming that Ivanhoe used the confidential information in the report to wrongfully obtain the mining concession from Ecuador. *Id.* While the plaintiffs identified "conduct that [was] connected

in an attenuated fashion to Colorado, they fail[ed] to establish that Colorado was the focal point of the defendants' torts." *Id.* at 97. The court focused on where the defendants *intended* to aim their conduct. *Id.* at 98. The focus in *Grynberg* was the location of the alleged wrongful acts: oil fields in Ecuador; therefore, the focus here is the places where Roofing USA actually conducted business: Virginia, North Carolina, South Carolina, Georgia, Florida, and North Dakota. (Compl. ¶ 133.)

Fortis does not allege, nor could it, that Roofing USA conducts any business in Colorado. (*See generally* Compl.; *see* Tice Decl. ¶¶ 8–11.) Roofing USA also did not target Colorado residents, as it did not advertise to or solicit Colorado residents and has no Colorado customers. (Tice Decl. ¶ 11.) Fortis does not allege that Roofing USA directed any communication towards a person located in Colorado, as Defendants Schupmann and Schulz were based in Illinois and Wisconsin, respectively. (Compl. ¶¶ 18, 20.) Roofing USA through its CEO, Brian Tice, never directed Schupmann and Schulz to conduct any business or perform any services for Roofing USA in Colorado. (Tice Decl. ¶ 13.) With no connection to Colorado, Roofing USA did not "expressly aim" any tortious acts at Colorado. Simply harming a Colorado resident is not enough to show that personal jurisdiction exists. *See Grynberg*, 490 F. App'x at 100 ("[T]he mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts.").

The fact that Fortis's principal place of business is in Colorado is a "mere fortuity," which does not create personal jurisdiction for Roofing USA. *Id.* Even if Roofing USA had

10

incidental contacts with Colorado, that would be insufficient for personal jurisdiction pur-

poses. *See C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319 (10th Cir. 2019*)*

(attending three trade shows in forum state, seizing product outside forum state, and

sending cease-and-desist letter to forum state were insufficient to establish minimum con-

tacts).

Fortis attempts to establish personal jurisdiction by stating bare legal conclusions

regarding purposeful direction. Fortis alleges that "Roofing USA committed intentional,

wrongful acts directed at Fortis, a Colorado resident, with the knowledge that the brunt of

the injury from its wrongful acts would be felt in Colorado." (Compl. ¶ 25.) This is merely

a recitation of the elements of purposeful direction which include: (1) an intentional action;

(2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury

would be felt in the forum state." *Dental Dynamics*, 946 F.3d at 1231. The Court is "not

bound to accept as true a legal conclusion couched as a factual allegation," including

these recitations, and it should afford them no weight here. *Twombly*, 550 U.S. at 555.

Fortis states in a conclusory fashion that Roofing USA's alleged wrongful acts were

"directed at Fortis, a Colorado resident" and does not allege that the acts were expressly

aimed at the forum state. (Compl. ¶ 25.) Fortis does not explain why, how, or what actions

of Roofing USA indicate that Roofing USA expressly aimed intentional acts at Colorado—

when Roofing USA does not conduct business in Colorado—nor does it provide any fac-

tual allegations about how it knows that Roofing USA allegedly knew the brunt of the

injury would be felt in Colorado when all the alleged wrongful acts involved other states.

(*See id.*) Under *Twombly*, this formulaic recitation of the personal jurisdiction elements is

insufficient to show that Roofing USA had minimum contacts *with the forum state* to confer personal jurisdiction on Roofing USA. 550 U.S. at 555.

Fortis further states in the Complaint that "Roofing USA knew Fortis was a Colorado based company and knew this when it intentionally and tortiously interfered with Fortis's employment contracts, business relations, trade secrets and proprietary information, among other wrongs." (Compl. ¶ 25.) This allegation does not show that personal jurisdiction exists. *Dental Dynamics*, 946 F.3d at 1231 (holding that the fact that the defendant knew that the plaintiff was a resident of the forum state did not change the analysis that no personal jurisdiction existed). This is because the allegation still does not show that Roofing USA engaged in an intentional act expressly aimed at the forum state. "Mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 278.

Fortis also cannot establish personal jurisdiction based on a conspiracy theory. To establish personal jurisdiction on a conspiracy theory, a plaintiff must allege facts that support a prima facie showing of conspiracy. *Ammerman v. Fisher*, No. 2:24-CV-00790, 2026 WL 626481, at *4 (D. Utah Jan. 20, 2026) (report and recommendation), *adopted*, 2026 WL 623638 (D. Utah Mar. 5, 2026). If the plaintiff makes this showing, it must then show that the conspiracy was directed at the forum state or "substantial steps in furtherance of the conspiracy must be taken in the forum of which the out-of-state co-conspirator was or should have been aware." *Id.* (cleaned up). Any alleged conspiracy was not directed at Colorado since all projects and business at issue occurred in other states. Also, Fortis does not claim that substantial steps in furtherance of any alleged conspiracy took place in Colorado or that Roofing USA

12

was aware of any such steps.

Fortis thus fails to show that Roofing USA had sufficient minimum contacts with Colorado to support the exercise of personal jurisdiction, requiring dismissal under Rule 12(b)(2).

## II. Exercising personal jurisdiction over Roofing USA in Colorado does not comport with traditional notions of fair play and substantial justice.

Because Fortis has failed to show that Roofing USA has sufficient minimum contacts with Colorado, the Court is not required to analyze "whether the exercise of personal jurisdiction over [Roofing USA] would offend traditional notions of fair play and substantial justice." *Anzures*, 819 F.3d at 1279 (cleaned up). Regardless, Fortis cannot meet its burden here, either. As noted above, when conducting this analysis, the court looks at the following factors: "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Dental Dynamics*, 946 F.3d at 1229.

Both here and in *Dental Dynamics*, the defendant had no business dealings in the forum state. *Id.* There, the defendant was an Arkansas entity with its principal place of business in Arkansas, and the owner of the business lived in Arkansas. *Id.* at 1226–27. The owner, Dr. Jolly, made business inquiries to the plaintiff, a pre-owned dental equipment broker based in Oklahoma, on three occasions regarding the sale of dental equipment. *Id.* at 1227. On one occasion, Dr. Jolly shipped a piece of dental equipment from Arkansas to California through plaintiff, and that piece of equipment was alleged to be defective leading to the litigation. *Id.* The court in *Dental Dynamics* determined that the

13

five factors listed above weighed in the defendant's favor because the defendant had no business dealings, property, or offices in the forum state of Oklahoma (making defending the action in Oklahoma burdensome), Arkansas law likely governed the contract claims, litigating in Arkansas would not foreclose the plaintiff's pursuit of the lawsuit, a majority of the parties, witnesses, and evidence existed outside of Oklahoma, and there were no social policies at issue. *Id.* at 1232–33.

As in *Dental Dynamics*, the factors in this case favor Roofing USA. First, litigating this case in Colorado would be burdensome for Roofing USA because it conducts no business in Colorado, owns no property in Colorado, has no Colorado customers, has no offices in Colorado, and otherwise has no interaction with Colorado. *Id.* at 1232 ("Defending an action in [the forum state] despite having no business dealings, property, or offices there is burdensome."); (*see* Tice Decl. ¶¶ 6–11.) Roofing USA is a small company that was founded in 2021 and employs just 15 individuals. (*Id.* ¶¶ 2, 12.) Requiring any Roofing USA member or employee to travel approximately 1,700 miles from Roofing USA's headquarters in South Carolina to Denver, Colorado to participate in this litigation would be expensive, time consuming, and burdensome for Roofing USA. (*Id.*)

Second, while Roofing USA understands that Colorado has an interest in protecting its residents, this interest is no greater than any other state that has a connection to the Defendants such as Illinois, Wisconsin, Maryland, or South Carolina, the locations of the Defendants. Third, while Fortis likely has an interest in receiving relief in Colorado, it has not shown that such relief would be impossible in a different jurisdiction or that pursuing a claim in a different jurisdiction would create a hardship. *Dental Dynamics*, 946

F.3d at 1233. Fourth, based on information and belief, most of parties, witnesses, and evidence exist outside of Colorado, therefore, a different jurisdiction would further the judicial system's interests. *Id.*; (*see* Tice Decl. ¶ 5.) Lastly, several other relevant jurisdictions have strong social policies in favor of freedom of competition and against unduly burdensome restraints on trade. Therefore, this last factor regarding whether there is a "shared interest of the several states in furthering fundamental social policies" is neutral. *Id.* at 1229. In totality, the factors favor a finding that personal jurisdiction in Colorado does not comport with traditional notions of fair play or substantial justice. Fortis thus fails to satisfy this element of its burden as well, further showing that dismissal is warranted.

## CONCLUSION

For the reasons discussed above, the Court should grant this motion and dismiss Roofing USA from this case for lack of personal jurisdiction.

Date: June 9, 2026                    Respectfully submitted,

                                      ROOFING USA, LLC

                                      /s/ *Todd A. Rowden*
                                      Todd A. Rowden
                                      TAFT STETTINIUS & HOLLISTER LLP
                                      111 East Wacker Drive, Suite 2600
                                      Chicago, IL 60601
                                      Telephone: (312) 527-4000
                                      Facsimile: (312) 527-4011
                                      trowden@taftlaw.com

                                      *Counsel for Defendant Roofing USA, LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record.

Date: June 9, 2026

/s/ *Todd A. Rowden*

16