# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00254-NYW-TPO

FW-CO, INC.,
d/b/a FORTIS WARRANTY,

      Plaintiff and Counter-Defendant,

RICHARD LEWIS,

      Counter-Defendant,

v.

CHARLES SCHULZ,
DAVID SCHUPMANN,

      Defendants and Counter-Claimants,

TRIDENT SOLUTIONS
OF SUGAR GROVE, LLC; ROOFING USA, LLC; and
INSTALLATION SERVICES LLC d/b/a TOPKEY CONSTRUCTION,

      Defendants.

---

## PLAINTIFF'S OPPOSITION TO ROOFING USA'S MOTION TO STAY AND SCHULZ'S JOINDER IN THE MOTION TO STAY

---

Plaintiff FW-CO, Inc. d/b/a Fortis ("Fortis"), by and through its counsel, respectfully submits this Opposition to Defendant Roofing USA, LLC's ("RUSA") Motion to Stay Discovery [ECF 167] and Defendant Charles Schulz's Joinder [ECF 179] in the same (collectively, the "Motion to Stay"). In support, Fortis states as follows:

## INTRODUCTION

It is important for the Court to understand and consider the broader context of this case when deciding the Motion to Stay. The crux of this case is that RUSA and co-Defendant Installation Services LLC d/b/a TopKey Construction ("TopKey") engaged in and profited from an elaborate, secret scheme whereby former Fortis employees, Defendants David Schupmann ("Schupmann") and Charles Schulz ("Schulz"), solicited and received kickbacks from Fortis's roofing contractors, misappropriated Fortis's proprietary and confidential information, and diverted Fortis's corporate opportunities. This case involves years of covert, conspiratorial, and disloyal activities by these two individuals, aided and abetted along the way by RUSA and TopKey.

The five Defendants in this case conspired with each other to harm Fortis and took steps to conceal their activities from Fortis.[1] Among other acts, RUSA secretly engaged Schupmann to lead its sales operation while Schupmann was still employed by Fortis and bound by a noncompete. RUSA paid Schupmann and Schulz $10,000/month through Trident Solutions of Sugar Grove ("Trident"), the entity Schupmann and Schulz set up, rather than dealing with them transparently or via Fortis. Through that arrangement,

---

[1] Details are set out in Fortis's oppositions to RUSA's and Top Key's motions to dismiss.

1

RUSA obtained Fortis's proprietary materials and business opportunities. One email chain alone tells the story: Schulz forwarded a Fortis opportunity from his Fortis email, to his personal, to his and Schupmann's Trident emails, and then Schupmann forwarded it on to RUSA: a business opportunity plainly belonging to, and actively stolen from, Fortis.

Eighteen months into this litigation, Trident, Schupmann,[2] and Schulz still have failed to produce complete records, including outstanding Trident emails or personal bank records (among other outstanding materials). Similarly, despite being served with a valid subpoena in February 2026 (the "2026 Subpoena"), RUSA has significantly refused to comply with it; failing, for example, to produce documents showing its full communications with Schupmann while he worked for Fortis, any analysis of Schupmann's or Schulz's restrictive covenants with Fortis, or complete records of payments to Trident, Schupmann, or Schulz. The Motion to Stay represents a continuation of Defendants' efforts to avoid discovery and will cause serious prejudice to Fortis. The Motion to Stay should be denied.

Stays of discovery are broadly disfavored for a reason. RUSA and the joining parties bear a heavy burden to justify a stay and fall far short of meeting it. The Court should deny the Motion to Stay, but even if it determines a stay is warranted, the Court should nevertheless permit Fortis to pursue narrowly tailored jurisdictional discovery from RUSA and TopKey relevant to their motions to dismiss. Lastly, as discussed at the

---

[2] The case was stayed as to Schupmann on or about March 30, 2026, when he filed for Chapter 11 bankruptcy in the Northern District of Illinois. [ECF 143] However, he did not meet his discovery obligations prior to the stay, which has seriously prejudiced Fortis—compounding the prejudice that would be wrought if a stay is granted.

hearing, Fortis remains entitled to enforce its pre-existing discovery requests, including but not limited to its 2026 Subpoena to RUSA, which RUSA has largely ignored.

**RELEVANT BACKGROUND**

Fortis filed its original Complaint on January 24, 2025, alleging that Schulz and Schupmann, through their side business, Trident, breached restrictive covenants in their employment agreements with Fortis and fiduciary duties arising from their employment with Fortis. [ECF 1.] Through discovery, Fortis has since learned of the significant involvement of other key entities in the conspiracy, including TopKey and RUSA who acted in numerous instances through and with the help of their agents and attorneys.

**1. TopKey's Role and Involvement.**

TopKey is a general contractor that Fortis alleges knowingly participated in and gave substantial assistance to Schulz and Schupmann's kickback scheme by embedding concealed fees into its external pricing and paying those fees to Schulz and Schupmann via Trident. *See generally* Third Amended Complaint ("TAC"). [ECF 153.] While TopKey has moved to dismiss, its motion rests nearly exclusively on perjury. TopKey's President, Daniel Schardt, swears that the kickbacks were for projects that Fortis was not interested in pursuing, but avoids admitting that the projects were part and parcel of Fortis's product offerings, which included roof replacements with subcontractors when needed, as well as ongoing roof maintenance services, again through subcontractors. TopKey's own former project manager (Scott Reynolds) flatly refutes Schardt's spin on the facts, and numerous documents in the case are evidence of the real nature of the arrangement: it was a *quid*

3

*pro quo*, pure and simple—Schulz and Schupmann passed Fortis projects to TopKey and RUSA in exchange for inflated prices, off of which they would skim personal profits.

### 2. Taft, Stettinius & Hollister's Role and Involvement.

Taft, which represents RUSA, has been counsel of record in this case from day one, representing Schupmann and, until recently, representing Trident as well. Trident is now proceeding to a default, and Taft withdrew from its representation without being replaced. Through discovery, Fortis learned that Taft began representing Schulz and/or Schupmann as early as 2022 when Taft helped them create their secret side business (Trident), by authoring its Operating Agreement in September 2022 (**Exhibit 1**) and serving as "Organizer" on its Articles of Organization (**Exhibit 2**). In April 2024, Taft drafted the "Referral Agreement" between TopKey and Trident which governed the kickback payments, ostensibly to protect Schupmann and Schulz individually and make it harder for Fortis to uncover their wrongdoing. **Exhibit 3**. Then, in August 2024, Taft advised Schupmann and Schulz pertaining to the legality of their decision to begin secretly working for RUSA while they were still employed at Fortis. **Exhibit 4**.[3]

### 3. RUSA's Role and Involvement.

Fortis initially believed RUSA hired Schupmann only after his Fortis employment ended. Discovery revealed that Schupmann began working for RUSA months earlier, while still Fortis's Director of Enterprise Accounts. When recruiting Schupmann, RUSA's owner and CEO, Brian Tice, knew from the outset that he was employed by Fortis, a

---

[3] In this email thread (bate-stamped SCHULZ 010312), references to "Mike" indicate, on information and belief, "Michael Jurasek", a lawyer with Taft.

4

Colorado company. **Exhibit 5** (Excerpts of April 15, 2025 Deposition of Brian Tice) ("Tice Dep.") at 60:12-25, 106:18-107:10. Tice reviewed Schupmann's resume and saw that he worked for Fortis. *Id.* at 106:9-107:10. Tice visited Fortis's website—which has always prominently displayed its Colorado headquarters—to study how Fortis marketed itself. *Id.* at 67:1-68:3. Tice knew that Fortis and RUSA were competing for business by "offering two different solutions to the same" need—namely, "prolonging the performance life of a commercial roof" and reducing the "costs of managing roof assets." *Id.* at 71:1-72:25.

Schupmann himself was "pretty quick" to disclose to Tice that he had an employment agreement with Fortis that barred him from competing with Fortis. *Id.* at 60: 12-22. Schupmann told Tice that he "would have to be very careful" because there would be "things [he] can't go do." *Id.* at 61:14-19. Tice's response was simply: "Whatever." *Id.* at 61:22. Despite RUSA's knowledge that Schupmann was actively working for the Colorado-based Fortis and bound by a non-compete, Tice began working with Schupmann as least as early as August 2024. *Id.* at 77:12-78:1.

Later that month, and at Schupmann's suggestion, RUSA brought Schulz into the same arrangement. *Id.* at 78:10-17. RUSA paid Schupmann and Schulz, through Trident, a retainer of approximately $10,000 per month. *Id.* at 78:15-79:9. Only after Fortis terminated his employment in December of 2024 did RUSA drop the pretense of paying Schupmann through Trident for "consulting" and hired him as RUSA's Vice President of Sales, to perform the same work he had for Fortis. *Id.* at 79:14-18, 107:11-16.

On February 24, 2025, after this case was filed, the Court granted Fortis's motion for a temporary restraining order ("TRO") against Schupmann, finding that Fortis had

demonstrated a substantial likelihood of success on the merits, including a likelihood that, as Tice himself admitted, RUSA offers services directly competitive with Fortis. [ECF 35.]

The harm to Fortis is substantial and ongoing. RUSA has built precisely the competing capability it desired, using the very executive Fortis trained and entrusted with its confidential information. Even the issuance of a TRO did not fully halt RUSA and Schupmann's conduct and caused Fortis to move for contempt. *See* [ECF 62]. On information and belief, during the TRO, Schupmann continued to attend RUSA's weekly sales meetings and to "ghostwrit[e]" RUSA's sales proposals and pitch emails for other RUSA employees to send to prospective clients. *See id.* at 2.

After engaging in significant investigation into RUSA and TopKey's involvement, Fortis filed its Third Amended Complaint on May 7, 2026, adding RUSA and TopKey as Defendants. [ECF 153]. It is against this backdrop—not the arrival of strangers to the case, but the formal addition of two longtime, well-informed participants in the conduct at issue—that Defendants now ask this Court for a blanket stay of discovery. Their request should be denied as both unnecessary and prejudicial. Alternatively, in addition to ensuring that Fortis receives the outstanding discovery that it is owed, the Court should allow for limited jurisdictional discovery.

## **LEGAL STANDARD**

While the Court has an inherent power to stay proceedings, the Tenth Circuit cautions that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). Accordingly, "where a movant seeks relief that

would delay court proceedings by other litigants[,] he must make a *strong showing* of necessity because the relief would severely affect the rights of others." *Id.* (emphasis added). Put differently, Defendants "must demonstrate a clear case of hardship or inequity if even a fair possibility exists that the stay would damage another party." *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).

"Staying discovery pending a ruling on a motion to dismiss is generally disfavored in this District[.]" *MacMillan v. Rural Partners in Med., LLC*, No. 123CV00216RMRSBP, 2024 WL 415455, at *2 (D. Colo. Feb. 5, 2024). Indeed, "a stay is not warranted merely by virtue of a defendant's filing of a purportedly dispositive motion to dismiss." *Vora v. Dionne*, No. 22–CV–00572–CNS–MDB, 2022 WL 14813723, at *3 (D. Colo. Oct. 26, 2022). To evaluate the propriety of such a stay, federal courts in Colorado look to the framework set forth in *String Cheese Incident, LLC v. Stylus Shows, Inc.* ("*String Cheese*") which include: (1) the plaintiff's interest in proceeding expeditiously with the civil action and the potential prejudice to the plaintiff from a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

Defendants fail to make the "strong showing" required to justify a blanket stay of all discovery. As such, the Motion to Stay should be denied.

## <u>ARGUMENT</u>

**I.      THE STRING CHEESE FACTORS WEIGH DECISIVELY AGAINST A STAY.**

A. <u>Fortis Must Proceed Expeditiously, and a Stay Would Cause Substantial Prejudice</u>.

The first *String Cheese* factor asks whether Fortis has an interest in proceeding expeditiously and whether a stay would cause it prejudice. *Id.* at *2. The answer to both is a firm *yes*.

Fortis "undoubtedly ha[s] an interest in proceeding expeditiously in this matter." *MacMillan*, 2024 WL 415455, at *3 (quotation omitted). As a threshold matter, it is undisputed that a stay pending resolution of the motions to dismiss will result in a significant delay. "The average time from the filing of a dispositive motion to its determination in this district exceeds six months. Consequently…staying a case while the defendants' motions to dismiss are pending [can] substantially delay the ultimate resolution of the matter *with injurious consequences*." *Webb v. Brandon Exp. Inc.*, No. Civ.09-CV-00792-WYD-BNB, 2009 WL 4061827, at *2 (D. Colo. Nov. 20, 2009) (emphasis added) (quotation omitted). RUSA's alternative offer—that the Court reset discovery cutoff to *nine months after* a ruling on the motion to dismiss (Mot. at 8-9)—itself acknowledges that the anticipated delay is substantial. Assuming six months to resolve the motions, what RUSA offers would result in a *fifteen-month* extension of the discovery cutoff, concluding at the end of 2027, almost two years after this case was originally filed.

If the delay itself were not enough, its consequences are: delays routinely "result[] in a decrease in evidentiary quality and witness availability[.]" *Id.* In other words, the passage of time increases the risk that witness's memories fade and evidence becomes more difficult to obtain. The latter risk is particularly acute here, given the discovery obstructions already exhibited by Schulz (who owes significant discovery), Schupmann (who failed to respond to discovery and then filed for bankruptcy), Trident (which is

8

unrepresented and facing default), third party Top Pick Investment Group LLC (which ignored a subpoena and disobeyed a Court order) and RUSA itself, which effectively refused to comply with Fortis's duly-served 2026 Subpoena.

Most importantly, continued delays also perpetuate Defendants' ongoing interference with Fortis's customer and business relationships that lie at the heart of this suit, prolonging Fortis's inability to compete on a level playing field. Here, "injurious consequences" are already accruing and will only compound with further delay. *Id.* RUSA continues to employ Schupmann in his same sales and management capacity, notwithstanding Fortis's allegations that this employment breaches Schupmann's restrictive covenants and enables RUSA to continue to exploit Fortis's confidential information and customer relationships. Every day that discovery is delayed is a day Fortis is denied the ability to build the evidentiary record it needs—both to pursue injunctive relief and to quantify its damages—while RUSA continues to benefit from the very conduct at issue today. Ordering a stay only worsens the prejudice already caused to Fortis in its attempts to reach the merits of this case. This factor heavily favors Fortis.

B. The Burden on RUSA Does Not Warrant a Stay.

The second factor—burden on the defendant—again favors Fortis. Courts in this District have uniformly held that the ordinary burdens associated with litigation do not constitute "undue burden[s]" sufficient to justify a stay. *See, e.g.*, *MacMillan*, 2024 WL 415455, at *3; *Graesser v. IQVIA RDS Inc.*, No. 21-CV-01337-PAB-KLM, 2021 WL 5909017, at *1 (D. Colo. Dec. 14, 2021) (same). And RUSA's only claimed burden is the current schedule: specifically, the upcoming closure of discovery. Mot. at 7. This has

9

already been resolved by the Court at the recent status conference, where the Court indicated that no deadlines would be deemed missed and that the parties should work together to request a scheduling conference, modify the scheduling order, and push out the discovery cutoff following the resolution of this Motion. *See* [ECF 184.] No purported burdens (outside ordinary litigation) remain, and RUSA's arguments are unavailing:

1.  <u>RUSA was a major participant in the Schupmann/Schulz/Trident scheme</u>.

RUSA's effort to cast itself as a "minor participant" because the precise words "Roofing USA" are do not appear frequently enough in the Complaint (Mot. at 6) does not survive a full reading of the Complaint. RUSA ignores the more than 60 allegations against "Defendants," a term which includes RUSA. RUSA also sidesteps the fact that the allegations against RUSA are serious. Fortis alleges that: (1) RUSA hired Fortis's Director with knowledge that he worked for Fortis, a Colorado company; (2) RUSA knew that Schupmann owed fiduciary duties to Fortis and was bound by a non-compete with Fortis; (3) RUSA knew that Fortis was a competitor; and, among other things, (4) RUSA obtained corporate opportunities that were clearly stolen from Fortis. *See* [ECF 153].

In short, the number of paragraphs containing the words "Roofing USA" is irrelevant; what those paragraphs say matters far more. It is clear from the allegations that RUSA is a major participant in the Schupmann/Schulz/Trident scheme and that it engaged in activities directed at Fortis which caused harm to Fortis.

2.  <u>RUSA and its counsel have been involved in this case from the outset</u>.

RUSA's argument that "it will need considerable time to investigate and defend against Fortis's allegations" (Mot. at 4) is meritless considering RUSA and its counsel's

long and intimate involvement in this case. RUSA is hardly a newcomer to this litigation. It has been aware from the outset of this case that Fortis is suing RUSA's Vice President (Schupmann) over the fact that he works for RUSA in breach of his non-compete. The TRO required that RUSA not employ Schupmann in a capacity that would violate his Fortis non-compete—a questionable proposition at best—and RUSA has employed Schupmann throughout this case and continues to employ him today.

In addition, RUSA shares legal counsel with both Trident (until its counsel recently withdrew, strategically leaving Trident out in the cold to default) and Schupmann, who have been defendants from the very beginning. Due to its joint representation, Taft already has copies of all documents in this case, participated in written discovery, attended all of the depositions, attended all hearings, and received and responded to all relevant pleadings in real time. To suggest that RUSA's attorneys at Taft are not fully up to speed or able to immediately defend RUSA is frivolous at best.

In addition to RUSA's lawyers' ongoing, active participation throughout this case, RUSA itself has been intimately involved as a third party. Just months after the case was filed, in April 2025, RUSA's CEO, Brian Tice was deposed and Taft attorneys defended him. *See* Tice Dep. A few weeks later, RUSA, again through Taft, produced a limited number of documents in response to a Fortis subpoena. In February 2026, Fortis served a follow-up subpoena on RUSA, directed at new and discrete topics. Despite repeated conferrals and promises to comply over many months, RUSA has never produced a *single* document in response to the 2026 Subpoena.

11

There can be no question that RUSA will in fact be burdened *far less* than a new defendant might typically be: not only has it been involved in the case since its inception, but its attorneys are jointly representing other parties and are already fully integrated.

3. <u>RUSA and its counsel are actively participating in discovery in the Schupmann bankruptcy case</u>.

In addition, discovery is ongoing[4] in Schupmann's bankruptcy case and RUSA is involved. First, Schupmann's ability to pay his debts to creditors rests in large part on his ongoing employment at RUSA. It is anticipated that Rule 2004 examinations of Schupmann in the bankruptcy case will explore his engagement with RUSA in detail. In addition, Fortis anticipates filing similar claims against Schupmann in the bankruptcy case that it filed against Schupmann in this case. Discovery in the adversary proceeding in bankruptcy will also entail depositions of Schupmann, Schulz, RUSA, TopKey, and others, along with other third-party discovery.

Staying discovery here does nothing to stay discovery in the bankruptcy, and every participant will continue litigating in one forum or another. It would be far more efficient to permit discovery to proceed, giving the parties an opportunity to coordinate discovery efforts between this case and the bankruptcy matter to avoid duplication later.

4. <u>RUSA and Top Key's Motions to Dismiss are meritless and do not justify a stay</u>.

The burdens of litigation on RUSA and Top Key are also low because their motions are likely to be denied. "[M]otions to dismiss are denied more often than they result in the

---

[4] By way of example, more than ten Rule 2004 subpoenas have been issued in the bankruptcy, and depositions of third parties are set to begin within weeks.

termination of a case." *Webb*, 2009 WL 4061827, at *2. Here, both RUSA and TopKey's motions to dismiss lack merit. TopKey's motion, in particular, is borderline frivolous.

RUSA's jurisdictional argument—that it does not conduct business in Colorado and that Fortis has not alleged conduct aimed at the state—ignores its own CEO's testimony. As detailed in Fortis's opposition to RUSA's motion to dismiss, Tice knowingly engaged Schupmann as a Trident "consultant" while Schupmann remained a Fortis employee bound by Colorado-governed restrictive covenants, and RUSA used that arrangement to obtain Fortis's marketing materials and misappropriate its business opportunities.

TopKey's motion fares no better and borders on frivolous. As Fortis's opposition to the same explains, TopKey was a central participant in the kickback scheme, knowingly embedding referral fees into its external pricing and paying them to Trident. TopKey's declaration disclaiming any awareness is directly contradicted by the record.

In sum, this second factor (the burden on defendants) favors Fortis.

C. <u>Convenience to the Court Weighs Against a Stay</u>.

The third factor, convenience to the Court, again favors Fortis. A stay of discovery like the one sought here delays case progress and causes inefficiencies in the administration of the docket. *MacMillan*, 2024 WL 415455, at *9. In fact, "[e]ntry of a stay may cause significant delay of the resolution of [a] matter, which in turn makes the Court's docket less predictable and less manageable." *Choice Genetics USA, LLC v. Peetz Co-Op. Co.*, 16-CV-00154-WJM-KLM, 2016 WL 9344066, at *2 (D. Colo. Nov. 7, 2016).

This case has already been litigated for eighteen months. Both Judge Wang and Judge O'Hara have invested substantial resources in managing it, following changes of

counsel, a bankruptcy filing, discovery disputes, and even the effective default of a party. A stay would only further disrupt the exhaustive efforts made to progress it.

    D. <u>The Interests of Non-Parties and the Public Interest Do Not Support a Stay</u>.

The fourth and fifth factors—interests of non-parties and the public—close out the analysis and likewise favor Fortis. On the former, RUSA does not meaningfully argue whether non-party interests favor a stay (Mot. at 7). If anything, those interests cut the other way. Other companies, employers, and the public at large have a substantial interest in ensuring that individuals like Schupmann and Schulz—who exploited their positions of trust to defraud their own employer—are held to account, along with Trident, RUSA, TopKey, and the other entities and individuals who knowingly facilitated and profited from that scheme. Reaching the merits of Fortis's claims serves the public's interest in deterring similar misconduct by corporate insiders and their business partners.

RUSA's reliance upon *Zayo Group, LLC v. Sender* to argue that third-party interests are "minimal" at this stage (Mot. at 7) is misplaced. There, "[n]o Party assert[ed] that there is a third-party that will be affected by this litigation." 25-CV-00662-CNS-TPO, 2025 WL 4709009 at *5 (D. Colo. Sept. 11, 2025). Here, the opposite is true: Fortis has stressed that Defendants' misconduct serves as a risk to future employers, companies, and the public at large.

The last factor (public interest) also cuts in Fortis's favor. Here, "[t]he public interest at stake… is the same interest underlying all lawsuits: that they be resolved as fairly and quickly as possible." *Choice Genetics*, 2016 WL 9344066 at *2. Despite RUSA's claims

that a stay avoids "wasteful efforts" (Mot. at 8), there is no countervailing public interest in awaiting the resolution of a jurisdictional challenge that is sure to fail.

## II.   ALTERNATIVELY, THE COURT SHOULD PERMIT JURISDICTIONAL DISCOVERY AND REQUIRE COMPLIANCE WITH PRE-EXISTING DISCOVERY OBLIGATIONS.

If the Court is inclined to grant any relief at all (it should not), the appropriate course is to permit narrowly tailored jurisdictional discovery directed at RUSA and TopKey, while all other discovery proceeds on the existing schedule, pending its anticipated reset.

"[T]he long-held view in the Tenth Circuit is that "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Centennial Fence Supply Co., LLC v. Toolguy.com*, No. 1:23-CV-02825-DDD-SBP, 2025 WL 1382997, at *2 (D. Colo. May 13, 2025) (*quoting Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 102 (10th Cir. 2012)). It is an abuse of discretion to refuse jurisdictional discovery where "pertinent facts bearing on the question of jurisdiction are controverted" or "a more satisfactory showing of the facts is necessary." *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016) (cleaned up).

Here, TopKey's motion is flawed and should be denied, not least because it rests on a declaration that the evidence contradicts. Fortis's allegations and declarations must be credited and the motion denied, but if they are not, or if evidence is deemed lacking, that would justify jurisdictional discovery, as "there is a certain unfairness to…allow affidavits from one side without allowing at least some corresponding adversarial opportunity to probe" them. *Am. Fam. Mut. Ins., Co. v. Robert Bosch, LLC*, No. 23-CV-00455-DDD-NRN, 2023 WL 8479021, at *7 (D. Colo. Dec. 7, 2023) (citation omitted).

15

The case for jurisdictional discovery on RUSA is stronger still, because RUSA created the very informational gap it relies upon. A defendant cannot defeat jurisdiction "by withholding information on its contacts with the forum." *Id.* (quotation omitted). While existing testimony, records, and declarations should block dismissal, RUSA never complied with the 2026 Subpoena—which sought documents on RUSA's Colorado-directed conduct and details about its engagement of then-employed Schupmann and Schulz, solicitation of Fortis-cultivated accounts, and receipt of Fortis materials.

## CONCLUSION

For the foregoing reasons, Fortis respectfully requests that the Court deny RUSA's Motion to Stay Discovery [ECF 167] and Schulz's Joinder [ECF 179] in their entirety and decline RUSA's alternative request to reset the discovery schedule. In the alternative, Fortis requests that the Court permit jurisdictional discovery to proceed as to RUSA and TopKey and to permit Fortis to obtain responses to its pre-existing discovery requests, including its 2026 Subpoena.

Respectfully submitted this 14th day of July, 2026.

SENN FORTIS, LLC

*/s/ Christine K. Lamb*
Christine K. Lamb, Atty. Reg. #30326
Lenora B. Plimpton, Atty. Reg. #48194
Megan M. Ratcliffe, Atty. Reg. #56489
Senn Fortis LLC
1700 Lincoln Street, Suite 2100
Denver, CO 80203
Telephone: (303) 298-1122
clamb@sennfortis.com
lplimpton@sennfortis.com
mratcliffe@sennfortis.com
*Attorneys for Plaintiff/Counter-Defendants*

16

## **CERTIFICATION OF USE OF AI**

Undersigned counsel certifies that generative artificial intelligence, specifically, Harvey AI, was used to assist counsel in the preparation of this pleading. Counsel further certifies that our clients were advised of and consented to such use. All cited authority was carefully and manually reviewed by counsel of record.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2026, I served the foregoing **PLAINTIFF'S OPPOSITION TO ROOFING USA'S MOTION TO STAY AND SCHULZ'S JOINDER IN THE MOTION TO STAY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kellie Nelson Fetter
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Telephone: (303) 299-8354
Facsimile: (303) 298-0940
kfetter@taftlaw.com
*Attorney for Defendants David Schuppman*

Todd Rowden
Taft Stettinius & Hollister, LLP
111 East Wacker Suite 2600, Chicago, IL 60601
TRowden@Taftlaw.com
Phone: 312.836.4060
Fax: (312) 527-4011
*Attorney for Defendants David Schuppman and Roofing USA, LLC*

Denesh Chukkapalli
Dworkin Chambers Williams York
Benson & Evans, PC
3900 East Mexico Avenue
Suite 820
Denver, CO 80210
303-584-0990
Fax: 303-584-0995
Email: dchukkapalli@dnvrlaw.com

Gary J. Benson
Dworkin Chambers Williams York
Benson & Evans, PC
3900 East Mexico Avenue
Suite 1300
Denver, CO 80210
303-584-0990
Fax: 303-584-0995
Email: gbenson@dnvrlaw.com
*Attorneys for Defendant Charles Schulz*

Gabriel D. Pinilla (CO Bar # 54504)
Uriel Martinez (CO Bar # 57394)
ADAMS & REESE, LLP
1001 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 970-2156
Gabriel.Pinilla@arlaw.com
Uriel.Martinez@arlaw.com
Secondary:
Alisyn.Bukowski@arlaw.com
*Attorneys for Defendant Installation Services dba TopKey Construction*

*Via U.S. Mail*:
Trident Solutions of Sugar Grove
c/o David Schupmann
0S440 Crego Place
Geneva, IL 60134


*s/Katie Witt*
Katie Witt
SENN FORTIS LLC