**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00254-NYW-TPO

**FW-CO, INC. d/b/a FORTIS WARRANTY**,

      Plaintiff and Counter-Defendant,

**RICHARD LEWIS**,

      Counter-Defendant,

v.

**CHARLES SCHULZ**;
**DAVID SCHUPMANN**;

      Defendants and Counter-Claimants.

**TRIDENT SOLUTIONS OF SUGAR GROVE, LLC**;
**ROOFING USA, LLC**; and
**INSTALLATION SERVICES LLC d/b/a TOPKEY CONSTRUCTION**,

      Defendants.

---

**INSTALLATION SERVICES d/b/a TOPKEY CONSTRUCTION'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

---

Defendant, Installation Services LLC d/b/a TopKey Construction's ("**TopKey**"),

respectfully submits its reply in support of its Motion to Dismiss Plaintiff's Third Amended

Complaint [D.E. 164], and in support thereof, states as follows:

### I.    INTRODUCTION

In attempting to refute TopKey's motion to dismiss, Fortis's Response confirms the

fundamental jurisdictional deficiencies that TopKey identified. TopKey does not dispute that

Fortis is based in Colorado. However, knowledge of a plaintiff's principal place of business is

not the constitutional test to confer personal jurisdiction over an out-of-state defendant.

The central question here is whether TopKey's alleged conduct created a substantial connection with Colorado to exercise jurisdiction. Here, every alleged act of wrongdoing occurred entirely outside Colorado. Fortis's twenty-two-page response conspicuously fails to identify: **(1)** a single Colorado-based project on which TopKey performed or proposed to perform work; **(2)** a single communication from any TopKey employee to any person in Colorado concerning the alleged kickback scheme; or **(3)** a single act of alleged wrongdoing that took place in Colorado. Fortis remains the only link between TopKey and Colorado, and that is insufficient to confer jurisdiction over TopKey. These omissions are dispositive and warrant dismissal of Fortis's claims against TopKey.

## II.    ARGUMENT

### A. Fortis Conflates Knowledge of its Location with Expressly Aiming Conduct Toward Colorado.

The core basis of Fortis's response attempts to cast TopKey's awareness of Fortis's Colorado location[1] as equivalent to TopKey expressly aiming conduct towards Colorado. The Supreme Court rejected this reasoning In *Walden v. Fiore*. 571 U.S. 277 (2014).

In *Walden*, the US Court of Appeals for the Ninth Circuit found jurisdiction based on the defendant's knowledge that his conduct (drafting an alleged false affidavit in Georgia to seize money) would affect persons residing in Nevada. *Id.* at 282 (citations omitted). The Supreme Court explained that the petitioner's reasoning "improperly attribute[d] a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Id.* at 289 (citing and quoting *Rush v. Savchuk*,

---

[1] In support of its primary but unavailing contention that its Colorado location was known to TopKey, Fortis relies heavily on the Affidavit of Scott Reynolds, a former TopKey employee. Reynolds resigned from TopKey to avoid being terminated for cause on grounds of chronic dishonesty in the performance of his duties and uncured poor performance. Reynolds's affidavit is replete with factual inaccuracies and false statements, some of which are noted in the Second Declaration of Daniel Schardt attached hereto as **Exhibit 2**.

2

444 U.S. 320, 332, (1980). Explaining further, the Supreme Court noted that the plaintiff's reasoning failed to recognize that none of the alleged conduct attributed to the defendant occurred in Nevada which "obscure[d] the reality that none of petitioner's challenged conduct had anything to do with Nevada itself." *Id. at 289*. Following that line of thinking, the Court held that alleged actions in Georgia did not create sufficient contacts with Nevada to confer personal jurisdiction in Nevada over an out-of-state defendant, even despite the defendant's uncontested knowledge of the plaintiff's connections to Nevada. *Id.* at 289-90 (relying on *Calder v. Jones*, 465 U.S. 783 (1984)).

Fortis attempts to establish personal jurisdiction over TopKey by arguing that TopKey had knowledge of Fortis's Colorado residence and that TopKey's alleged conduct in other forums targeted Fortis's business relationships and money. Response at pp. 3-4, 9, 14-18. However, in furtherance of this approach, Fortis concedes that TopKey's alleged conduct involved only out-of-state roofing projects and alleged kickback scheme payments derived from projects in Virginia, Florida, North Carolina, and other non-forum states, directed to Trident in Illinois. Fortis attempts to tie this out to the personal jurisdiction standard merely by reiterating TopKey's knowledge of Fortis's principal location. That is not enough to satisfy the minimum contacts test, which requires a showing that TopKey intentionally directed actions toward Colorado. *See id.*; *Walden*, 571 U.S. at 289-90.

*Walden* bars Fortis from shifting the jurisdiction analysis to its own fortuitous connection to Colorado. Instead, *Walden* dictates that Fortis must rely on the location of alleged acts, not knowledge of Fortis's residence. Fortis's argument is contrary to the principal that "the defendant, not the plaintiff or third parties . . . must create contacts with the forum State" to confer personal jurisdiction on a foreign defendant. *Walden*, 571 U.S. at 291.

3

**B. Colorado Is Not the Focal Point of the Alleged Misconduct or Its Harm.**

Under the Tenth Circuit's application of the *Calder* effects test, the forum state must be the focal point of both the defendant's alleged tortious conduct and the resulting harm. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071-82 (citations omitted).; *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077-80 (10th Cir. 1995) (citations omitted) (holding that communications into a forum do establish minimum contacts). Fortis cannot satisfy this requirement by any objective measure.

The focal point of the alleged kickback scheme was plainly not Colorado. Every alleged component of the purported scheme occurred outside Colorado:

- TopKey operated from Maryland;
- Charles Schulz ("**Schulz**") resided in Wisconsin; David Schupmann ("**Schupmann**") resided in Illinois;
- Trident (the alleged recipient of kickback payments) is an Illinois LLC;
- All roofing projects generating the alleged inflated bids were located in Virginia, Florida, North Carolina, Arkansas, Ohio, and Maryland;
- All communications about the alleged scheme were between TopKey personnel in Maryland and Schulz/Schupmann in Wisconsin/Illinois; and
- Not a single project allegedly involved in the kickback scheme was located in nor was any payment involving TopKey processed through Colorado.

The only Colorado connection is Fortis. This is exactly the scenario the Tenth Circuit addressed in *Far West Capital*. There, the court explained that its review of "post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West*, 46 F.3d at 1079. The *Far West* Court explained that "a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws" was necessary to resolve jurisdictional questions arising from contract and business torts. *Id.*

Here, Fortis urges that TopKey expressly aimed its conduct towards Colorado because the alleged bid inflation was embedded in Fortis work and the kickbacks "targeted Fortis's business relationship and Fortis's money." Response at p. 14. But this argument ignores the scope of the applicable analysis. If directing tortious conduct at a plaintiff's money or business relationship automatically made the plaintiff's headquarters the central reason for finding that a defendant purposely availed itself of a forum, then every business tort would confer jurisdiction wherever the plaintiff resides, the very result *Walden* prohibits. The focal point must be determined by where the alleged conduct occurred, not by where the plaintiff's ledger reflects a loss. Here, the alleged inflated costs were incurred on out-of-state projects, and any downstream financial impact in Colorado is merely a derivative consequence of Fortis's corporate domicile.

### C. Fortis's Contract-Based Arguments Do Not Establish Jurisdiction Over the Tort Claims at Issue.

Fortis emphasizes two contracts: the NDA (with a Colorado choice-of-law provision) and the Park Shirlington Contract (with a Denver County dispute resolution clause). Response at ¶¶ 4, 11-13. Neither establishes jurisdiction over the *tort* and non-contract claims asserted against TopKey.

**First**, the Supreme Court has cautioned that one party's act of contracting with an out-of-state party does not automatically establish sufficient minimum contacts for personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *see also Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (citing and quoting *Burger King*). The court must examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . [to determine] whether the defendant purposefully established minimum contacts within the forum." *Burger*

*King,* 471 U.S. at 479. Here, the actual course of dealing consisted entirely of out-of-state roofing projects or an NDA which led to nothing and was unrelated to any of Fortis's claims. *See* **Exhibit 1** [D.E. 164-1] (Schardt Decl.) at ¶¶ 9-21; *see also* **Exhibit 2** at ¶¶ 8-16.

The NDA was a mutual confidentiality agreement with no performance obligations in Colorado. *See* **Exhibit 1** at ¶ 21; *see also* **Exhibit 2** at ¶¶ 15-16. The NDA did not result in any expanded relationship between TopKey and Fortis and the substance of the NDA has no connection to Fortis's claims pertaining to the alleged kickback scheme. *Id.*

Likewise, the Park Shirlington Contract concerned a Virginia project terminated by Fortis before any work commenced. *See* **Exhibit 1** at ¶¶ 9-21; *see also* **Exhibit 2** at ¶¶ 8-14. TopKey's work on that project did not involve Fortis in any way because Fortis voluntarily withdrew from the opportunity to serve as the primary roofing services subcontractor for the project and later unilaterally terminated and was ultimately released from the Park Shirlington Contract. *See id.*

**Second**, and more fundamentally, Fortis's claims against TopKey are tort-based/non-contract law claims (aiding and abetting breach of fiduciary duty, unjust enrichment, tortious interference, and civil conspiracy) not contract claims. None of Fortis's claims against TopKey arise from the NDA or the Park Shirlington Contract. They arise from the alleged kickback scheme. Under specific jurisdiction's relatedness requirement, the plaintiff's injuries ***must*** stem from the defendant's forum-directed activities. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351, 359-60 (2021) (citations omitted). Even if the contracts reflect some connection with Fortis, they do not supply the required nexus between TopKey's alleged misconduct and Colorado. *See id.* at 361-71 (citations omitted). The allegations against

TopKey plainly do not arise from or have any link to those contracts and TopKey's alleged connections to Colorado do not rise to the level outlined in *Fort Motor Co. Id.*

**Third**, the noted choice-of-law and venue provisions in the contracts cited are not jurisdictional consent clauses. The dispute resolution clause in the Park Shirlington Contract applies to disputes arising under that specific contract, not to claims arising from an entirely separate alleged conspiracy. These provisions were not intended to confer jurisdiction automatically in Colorado on matters that do not pertain to or arise from the contracts. Moreover, as noted previously, Fortis *twice* opted out of the Park Shirlington Contract project, and it unilaterally terminated the Park Shirlington Contract. *See* **Exhibit 2** at ¶¶ 8-13. As such, that contract cannot serve to support Fortis's underlying claims nor jurisdiction over TopKey.

### D.  Fortis's Reliance on *Pro Axess* and *Benton* Is Misplaced.

Fortis relies on *Pro Axess* and *Benton v. Cameco Corp.*, 375 F.3d 1070 (10th Cir. 2004) in arguing that a continuing business relationship with a forum state resident establishes jurisdiction. Response at pp. 11-12. Both cases are readily distinguishable.

In *Pro Axess*, the defendant specifically solicited the Utah plaintiff's services that "were to be performed in Utah." 428 F.3d at 1277 (citation omitted). The defendant sent agents to the forum state and exercised control over a forum-state subsidiary. *Id.* at 1278-79. Here, no services were performed or contemplated in Colorado. TopKey did not solicit Fortis's services to be performed in Colorado; TopKey performed roofing work exclusively outside Colorado; TopKey has no subsidiary, affiliate, or agent in Colorado. *See* **Exhibit 1** at ¶¶ 9-21. The *Pro Axess* court's finding of purposeful availment rested on the defendant's engagement for services contemplated for performance *in* the forum state, a fact entirely absent here. *Pro Axess*, 428 F.3d at 1277-79 (citations omitted).

As for *Benton*, Fortis fails to disclose to this Court that the *Benton* Court **denied** jurisdiction despite finding sufficient minimum contacts because the contacts were so minimal that the reasonableness factors weighed against asserting personal jurisdiction over an out-of-state defendant. 375 F.3d at 1077-81 (citations omitted). While the *Benton* Court found borderline contacts between Cameco Corp. ("**Cameco**") and Colorado based on a memorandum of understanding and a due diligence visit, it held that exercising jurisdiction "would be inconsistent with traditional notions of fair play and substantial justice." *Id.* at 1078-79 (citations omitted). The court emphasized that the defendant's contacts "barely satisf[ied] the minimum contacts standard" and therefore "Cameco need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry." *Id.* at 1080 (citing *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*, 149 F.3d 1086, 1095, 1092 (10th Cir. 1998)).

Accordingly, *Benton* supports TopKey's position in two ways. **First**, TopKey's contacts with Colorado are weaker than Cameco's because TopKey never sent employees to Colorado for any purpose, whereas Cameco sent employees to Colorado for a due diligence review. *See* **Exhibit 1** at ¶¶ 9-17. **Second**, even if this Court finds borderline contacts, *Benton*'s sliding-scale analysis means TopKey need only make a modest showing of unreasonableness, a showing it readily satisfies as described below.

### E.  Daniel Schardt's Email Does Not Establish Jurisdiction.

Fortis highlights an email from Daniel Schardt to Richard Lewis regarding the Park Shirlington Contract. In the email, Schardt states that he has "not accepted [Lewis's] note to terminate the contract, so you are still liable." Response at ¶ 5. Even crediting the email fully, it does not establish jurisdiction over TopKey based on the claims asserted.

8

The Schardt email was a response to Fortis's unilateral termination of the Park Shirlington Contract. Again, none of Plaintiff's allegations against TopKey arise in any way from the Park Shirlington Contract or the NDA. Because of that, the Park Shirlington Contract, emails about the same, and the NDA cannot support jurisdiction over TopKey because Fortis's allegations arise from subjects entirely outside those contracts. A party's defense of its contractual position is not an intentionally tortious action that supports jurisdiction. *Calder*, 465 U.S. at 789-90 (citations omitted); *see also Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. 915, 919, (2011) and explaining that specific jurisdiction requires "'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'").

Consequently, an email defending a contractual position on a Virginia project that Fortis ultimately declined to perform cannot supply the affiliation between Colorado and the underlying kickback scheme allegations required to support jurisdiction over TopKey. The same applies to emails pertaining to the NDA that did not lead to any expanded relationship between TopKey and Fortis and otherwise does not pertain to Fortis's underlying claims.

### F.  The Fair Play and Substantial Justice Factors Defeat Jurisdiction.

Even assuming that Fortis has made a borderline showing of minimum contacts, which TopKey does not concede, exercising jurisdiction over TopKey in Colorado would be unreasonable. Under *OMI Holdings*, the five-factor reasonableness test applies to determine whether exercising jurisdiction over a party violates notions of fair play and substantial justice. 149 F.3d at 1095-98 (citations omitted). Further, under *Benton*'s sliding scale, the strength or weakness of the plaintiff's showing as to minimum contacts

with the forum determines the weight of a defendant's burden to show unreasonableness in seeking to defeat personal jurisdiction. 375 F.3d at 1078-80. The weaker the minimum contacts, the lighter the burden the defendant must carry to defeat jurisdiction. *See id.*

**Factor 1: Burden on TopKey.** TopKey is a Maryland LLC with all operations in the Mid-Atlantic. It has no office, employees, agents, or property in Colorado. All relevant witnesses and documents are located outside Colorado. *See* **Exhibit 1** at ¶¶ 4-17. Fortis's observation that TopKey has retained Colorado counsel, misses the point—the constitutional inquiry concerns the burden of substantive litigation, not the ability to retain local counsel to challenge jurisdiction. Successfully retaining counsel in a forum to defend against claims does not amount to a showing that litigating the matter in the forum is not burdensome for an out-of-state defendant with no operations in the forum state.

**Factor 2: Colorado's Interest.** While Colorado has an interest in providing a forum for its residents, that interest is diminished where the alleged acts and injuries occurred entirely outside Colorado. Importantly, Colorado's interest is already served by its jurisdiction over Schulz, Schupmann, and Trident. Dismissing TopKey does not leave Fortis without a Colorado forum for the vast principal thrust of this dispute.

**Factor 3: Plaintiff's Interest.** Fortis can obtain relief against TopKey in Maryland, where TopKey would be subject to general jurisdiction. Fortis has not shown that litigation in Maryland would be "so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI Holdings*, 149 F.3d at 1097 (citation omitted). Evidence in possession of TopKey and witnesses from TopKey are all located in Maryland or elsewhere outside of Colorado. Moreover, any claim against TopKey is necessarily derivative of Fortis's ability to establish claims against Schulz, Schupmann, and Trident—the defendants that Fortis

identifies as the principal architects and actors in the alleged wrongdoing at issue. This is plainly reflected by the fact that TopKey was never even sought to be joined to the case until nearly eighteen months after Fortis initiated this action.

**Factor 4: Efficient Resolution.** The fourth factor asks whether the forum state is the most efficient place to litigate the dispute. *OMI Holdings*, 149 F.3d at 1097 (citations omitted). Courts assess efficiency by considering the location of witnesses, the location of the underlying wrong, which forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *See id.* This factor weighs in TopKey's favor because the claims against TopKey involve distinct factual issues (its pricing, its payments to Trident, its employees' knowledge) that are analytically distinct from the employment-related claims against Schulz and Schupmann. Likewise, witnesses and the location of the alleged underlying wrongs as it relates to TopKey are all outside of Colorado.

Fortis principally argues that the litigation started in Colorado so it should stay in Colorado despite acknowledging that many witnesses are located outside of Colorado. This is not enough to overcome its heightened burden because of Fortis's sparse showing as to TopKey's contacts with Colorado. Moreover, attempting to join TopKey after the case against the original defendants had progressed for approximately sixteen months cannot be viewed as efficient as it relates to the original litigation. Allowing the case to proceed with TopKey belatedly added will necessarily prolong and complicate the case as it relates to the original defendants, not make it more efficient.

**Factor 5: States' Shared Interests.** "The fifth factor . . . is the interests of the several states. . . [and] the forum state, in advancing fundamental substantive social policies." *Id.* at 1099. Maryland has a strong interest in adjudicating disputes involving its

11

residents. Hauling TopKey into court in Colorado based solely on Fortis's domicile does not advance any fundamental policy.

These factors considered together, and on the sliding scale applicable to a case where minimum contacts are, at best, borderline, compel the conclusion that exercising jurisdiction over TopKey would offend traditional notions of fair play and substantial justice.

### G. The Conspiracy Theory Cannot Salvage Jurisdiction.

Any suggestion by Fortis that jurisdiction is proper because TopKey allegedly conspired with other defendants fails. Under *Ammerman v. Fisher*, conspiracy allegations "do not necessarily establish jurisdiction over [an alleged] nonresident co-conspirator." No. 2:24-cv-00790, 2026 WL 626481, at *4 (D. Utah Jan. 20, 2026) (holding that conspiracy allegations in a "complaint did not support an inference that the conspiracy was directed toward" the forum to establish minimum contracts) (citations omitted). To extend personal jurisdiction to an alleged co-conspirator, the plaintiff must show that "the conspiracy was directed toward the forum" or that "substantial steps in furtherance of the conspiracy . . ." occurred in the forum "'of which the out-of-state co-conspirator was or should have been aware.'" *Id.* (citation omitted). Neither condition is met here.

TopKey's purported involvement in the alleged kickback scheme was directed at obtaining out-of-state project revenue, and no alleged substantial steps in furtherance thereof occurred in Colorado because of the locality of the projects. Moreover, the alleged co-conspirators (Schulz and Schupmann), whose forum contacts Fortis seeks to impute on TopKey, were Fortis's employees and not TopKey's agents. Their Colorado contacts, if any, arose exclusively from their employment with Fortis, not from any relationship with TopKey. Accordingly, Fortis has not established a reasonable probability that TopKey

was or should have been aware of the alleged conspiracy, and as such, jurisdiction over

TopKey is not warranted on this basis. Without these showings, Fortis's conspiracy theory

fails to provide a basis for exercising jurisdiction over TopKey.

### III.    CONCLUSION

For the foregoing reasons, TopKey respectfully requests that this Court grant its

Motion and dismiss all claims against TopKey for lack of personal jurisdiction pursuant to

Fed. R. Civ. P. 12(b)(2), dismiss the conspiracy claim pursuant to Fed. R. Civ. P. Rules

12(b)(6) and 9(b), and award such other relief as the Court deems just and proper.

DATED: August 7, 2026.

Respectfully submitted,

*/s/ Gabriel D. Pinilla*
Gabriel D. Pinilla (CO Bar # 54504)
Uriel Martinez (CO Bar # 57394)
**ADAMS & REESE, LLP**
1001 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 970-2156
Gabriel.Pinilla@arlaw.com
Uriel.Martinez@arlaw.com
Secondary:Alisyn.Bukowski@arlaw.com
***Attorneys for Defendant***

### CERTIFICATE REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

TopKey's undersigned counsel certifies that generative artificial intelligence was **not** used to draft this motion.

*/s/ Gabriel D. Pinilla*
Gabriel D. Pinilla

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will automatically serve a copy via electronic mail to all counsel of record.

*/s/ Gabriel D. Pinilla*
Gabriel D. Pinilla