**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00254-NYW-TPO

FW-CO, INC. d/b/a FORTIS WARRANTY,

      Plaintiff/Counter-Defendant,

RICHARD LEWIS,

      Counter-Defendant,

v.

CHARLES SCHULZ;
DAVID SCHUPMANN,

      Defendants/Counter-Claimants,

TRIDENT SOLUTIONS OF SUGAR GROVE, LLC;
ROOFING USA, LLC; and
INSTALLATION SERVICES LLC d/b/a TOPKEY CONSTRUCTION,

      Defendants.

---

### REPLY IN SUPPORT OF ROOFING USA'S MOTION TO DISMISS

To establish personal jurisdiction over Roofing USA in this case, Fortis must show that Roofing USA knew Fortis was located in Colorado at the time of the conduct alleged in the Complaint. Dismissal is required because Fortis fails to satisfy this element. Roofing USA's CEO, Brian Tice, swore under oath that he did not have this knowledge. All Fortis can muster to dispute this evidence of Tice's lack of knowledge is conjecture and speculation. This is not enough under established caselaw. Fortis instead attempts to distract by violating several Court rules, discussing its views on the merits of its claims, and misstating evidence in the record. Fortis also fails to show that Roofing USA "expressly aimed" any act at Colorado, or that exercising personal jurisdiction over it here would pass constitutional muster. For these reasons, discussed more fully below, the Court

should grant this motion and dismiss Fortis's claims against Roofing USA.

## I. Portions of Fortis's filings should be disregarded for failure to follow this Court's rules.

Fortis's filings opposing Roofing USA's motion to dismiss violate several Court rules and procedures. First, Fortis appears to have filed an oversized brief in violation of this Court's Uniform Civil Practice Standard 10.1(c)(1), which requires response briefs to be no more than 15 pages without prior authorization from the Court. *See Ass'n Voice, Inc. v. Athomenet, Inc.*, No. 10-CV-00109-CMA-MEH, 2010 WL 3086113, at *2 (D. Colo. Aug. 5, 2010). Fortis sought no authorization from the Court and did not meet and confer with Roofing USA over extending the page limit for its brief. Papers that do not comply with the Civil Practice Standards and the Local Rules of the Court "may be denied without prejudice or stricken *sua sponte.*" *Homewatch Int'l, Inc. v. Pac. Home Care Servs., Inc.*, No. 10-CV-03045-REB-KLM, 2011 WL 1660612, at *5 n.6 (D. Colo. May 2, 2011).

Second, Exhibits 3, 5, 6, 7, and 8 to the Lewis declaration submitted in support of Fortis's response are all marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE OR-DER." Yet Fortis filed them on the public docket, which appears to violate the protective order entered in this case, stating that the parties can disclose confidential information only to certain individuals as opposed to the public. (Stip. Protective Order, D.E. 66, § 6(b)); *see Digital Advert. Displays, Inc. v. Newforth Partners, LLC*, No. 12-CV-00682-WJM-MEH, 2014 WL 128010 (D. Colo. Jan. 10, 2014) (granting motion for sanctions and ordering fees and costs when counsel filed documents on public docket that should have been marked confidential per protective order).

Third, the Declaration of Richard Lewis submitted by Fortis states that "everything in this Declaration is based on my own personal knowledge." (D.E. 187-1, ¶ 1.) Lewis's

blanket attempt to verify every single allegation in the Complaint is implausible and con-

clusory. (*Id.* ¶ 18.) He cannot show he has any personal knowledge regarding whether,

for example (and as discussed below), "Roofing USA knew Fortis was a Colorado based

company and knew this when it intentionally and tortiously interfered with Fortis's employ-

ment contracts, business relations, trade secrets and proprietary information, among

other wrongs." (3d Am. Compl., D.E. 153, ¶ 25.) Neither Lewis nor Fortis attempts to

elaborate on his vague, conclusory assertion. Further, Lewis is not included on the email

chains that comprise Exhibits 2, 3, 4, 5, 6, 7, or 8, and they were produced by Schupmann

or Schulz in this litigation. (*See* D.E. 187-3–187-9.) Fortis fails to otherwise establish that

Lewis has any personal knowledge of these emails or their contents.

“Affidavits submitted in support of or in opposition to [a] motion to dismiss for lack

of jurisdiction must comply with the requirements of Rule 56(e)," which "requires that af-

fidavits be based on personal knowledge and admissible facts." *Consumer Crusade, Inc.*

*v. JD&T Enters., Inc.*, No. 05-CV-00211-EWN-MJW, 2005 WL 8178491, at *3, 4 (D. Colo.

Oct. 17, 2005); *see* Fed. R. Civ. P. 56(c)(4) (after amendment to the rule). "When the

affidavit is not based on personal knowledge, the Court may disregard the assertions

made." *Gann v. Katmai Gov't Servs., LLC*, No. 20-CV-01615-RM-MEH, 2020 WL

7389116, at *5 (D. Colo. Nov. 30, 2020) (report and recommendation), *adopted*, 2020 WL

7384837 (D. Colo. Dec. 16, 2020); *see Consumer Crusade,* 2005 WL 8178491, at *3

(declining "to accept . . . [an] affidavit consisting of hearsay statements on important facts

relating to personal jurisdiction"); *see also Fuller v. Old Dominion Freight Line, Inc.*, No.

17-CV-00080-RBJ, 2018 WL 2335696, at *2 (D. Colo. May 23, 2018) (striking portions of

a declaration that were "entirely based on hearsay" and "d[id] not come from [the

declarant's] personal knowledge"). That remedy is appropriate here.

In light of Fortis's violations of this Court's orders and rules, Roofing USA respectfully suggests that the Court disregard portions of Fortis's filings opposing this motion, as the Court deems appropriate.

## II.    Fortis distracts by focusing primarily on the merits of its claims.

Other large portions of Fortis's response should be disregarded because they are irrelevant to the inquiry here. The majority of the "statement of facts" section and the exhibits attached to the Lewis declaration go to the underlying merits of the case rather than personal jurisdiction. For example, Fortis discusses its allegations that Tice knew Schupmann had a restrictive covenant agreement with Fortis, that Roofing USA and Fortis were competitors, what Schupmann was not going to sell to avoid violating the restrictive covenant agreement, Schupmann's obligations of loyalty to Fortis, how Schupmann worked as a consultant for Roofing USA, and how Fortis believes that Schupmann received a kickback for the Coca-Cola sales, and otherwise restates the allegations in its Complaint. (Pl.'s Br., D.E. 187, at 3–7, 11.) Fortis does little to explain how these allegations about non-competes, kickbacks, duties of loyalty, etc. relate to this Court having personal jurisdiction over Roofing USA in Colorado. Fortis also does not dispute that Defendants Schulz and Schupmann did not reside in Colorado or that Roofing USA did not conduct business in Colorado. (*See* Tice Decl. ¶¶ 5–11.)

## III.    Brian Tice's sworn statement that he lacked knowledge of Fortis's location controls over Fortis's speculation about documents that are not in evidence.

Fortis attempts to dispute Tice's statement under oath that "[a]t the time the allegations in the Third Amended Complaint are alleged to have taken place, I did not know that Fortis was a Colorado company." (Tice Decl. ¶ 14.) This is a critical point because,

4

as the Tenth Circuit stressed in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), a plaintiff's burden to establish personal jurisdiction in the tort context includes showing that the defendant "kn[e]w that the harm was suffered in the forum state." *Id.* at 1075 (cleaned up). As Fortis admits, however, its allegations are taken as true only if they do not rest on "conjecture or supposition." (Pl.'s Br. at 14 (quoting *Dudnikov*, 514 F.3d at 1076)); *see Dudnikov*, 514 F.3d at 1070 (only the "plausible, non-conclusory, and non-speculative" allegations in the Complaint qualify as "well-pled" and are taken as true). Fortis's allegations attempting to dispute this point are based solely on conjecture or supposition and should therefore be disregarded.

First, Fortis assumes that when Schupmann applied to Roofing USA, his resume listed Denver, Colorado as the location of his employment with Fortis. (Pl.'s Br. at 3.) But that resume is not in evidence, nor is any testimony from Tice or any other witness stating that the resume showed Fortis is located in Colorado. Fortis further assumes that Tice learned from reading Schupmann's resume that Fortis is located in Colorado. Because Fortis has no evidence to support either assumption, Tice's declaration controls.

Second, Fortis asserts that before hiring Schupmann, Tice "discussed Fortis at length with Schupmann, which included learning about 'what Fortis did,' 'the service that they offered,' and 'what [Schupmann] did for them.'" (Pl.'s Br. at 12 (quoting Tice Dep., D.E. 187-10, 61:01–05); *see* Pl.'s Br. at 3.) Fortis mischaracterizes this testimony by taking it out of context and representing that the discussion of Fortis was "at length." Tice actually testified: "I think, at that time, is when [Schupmann] told us *a little bit* about what Fortis did, and just like *vaguely kind of* described the service that they offered there, and what he did for them." (Tice Dep. 61:01–05 (emphases added).) This directly contradicts

5

Fortis's spin on Tice's testimony. More importantly, nothing about this testimony indicates that Tice learned from his conversation with Schupmann that Fortis is located in Colorado. Fortis's suggestion that he did is thus based on only speculation and conjecture.

Third, Fortis similarly highlights that the non-compete agreement between Schupmann and Fortis contained provisions stating the agreement was governed by Colorado law, Colorado was listed as the venue, and Fortis's offices were in Colorado. (Pl.'s Br. at 3.) But that has nothing to do with Roofing USA. Fortis does not allege that Tice or any representative of Roofing USA saw this agreement or knew about these specific terms.

Fourth, Fortis assumes that when Tice viewed Fortis's website, he noticed that Fortis listed a Colorado address on it. (Pl.'s Br. at 4.) Here, Fortis mischaracterizes the evidence by asserting that "Tice admitted, under oath, that he extensively perused Fortis's website prior to hiring Schupmann and Schulz." (*Id.* at 12.) That is not his testimony. Tice recalled that he went to Fortis's website to "watch[ ] their promotional materials there," and elaborated as follows:

> [Q.]    What is your understanding, in terms of Fortis's offerings, based on your review of the website?
>
> A.    It's probably been a year since I've been on the website. My takeaway was that businesses that were going to be told they needed to replace their roofs, that Fortis could offer an alternative, kind of financial product that would basically guarantee the roof for 10 years or some period like a 10-year period at a fraction of the cost, and they would bear the burden of that liability.

(Tice Dep. 67:03–04, 67:17–68:02.)

Tice never said that he "perused" the website or that he did so "extensively." And his testimony shows that his focus was on Fortis's business and promotional materials, not its location. Fortis declines to show the Court what its website looked like at the time Tice viewed it, or how prominently its address was displayed. Today, the home page of

6

Fortis's website, https://fortis.us.com/ (*see* Lewis Decl., D.E. 187-1, ¶¶ 5, 8), lists "Green-wood, CO 80111" only once, in small type, at the very bottom right corner of the page, requiring that the user scroll all the way down to view it.[1] Fortis's assertion that this con-stitutes a "prominent" indication of its address is, at best, overstated. (Pl.'s Br. at 12.)

Tice's sworn statement that "[a]t the time the allegations in the Third Amended Complaint are alleged to have taken place, I did not know that Fortis was a Colorado company," controls over Fortis's weak assumptions about a resume and a website as it existed in 2024—which are not in evidence. (*Id.* ¶ 14.) Fortis does not argue that Roofing USA had knowledge that Fortis is located in Colorado through any other representative or agent. As such, Fortis fails to meet its burden to show that Roofing USA "kn[e]w that the harm [alleged in the complaint] was suffered in" Colorado. *Dudnikov*, 514 F.3d at 1075 (cleaned up). The Court need go no further than this to grant Roofing USA's motion, as Fortis's failure of proof as to this essential element of specific personal jurisdiction sinks its claims against Roofing USA. *Dudnikov*, 514 F.3d at 1075.

## IV. Fortis also fails to show Roofing USA "expressly aimed" any actions at Colorado.

Fortis argues that Roofing USA injured Fortis by working with Schupmann and Schulz. But Fortis never alleged that Roofing USA "expressly aimed" its conduct at Colo-rado. (Pl.'s Br. at 11.) It must do so to meet its burden, as one of the elements of pur-poseful direction for personal jurisdiction is an act "expressly aimed at the forum state." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020).

Fortis appears to argue that personal jurisdiction over Roofing USA exists because

---

[1] The Court may take judicial notice of publicly available information on Fortis's website: https://fortis.us.com/. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007).

Schupmann sent an email saying: "Here are the details for those skylights in Monroe [North Carolina] we talked about earlier." (Pl.'s Br. at 12; *see* Lewis Decl. Ex. 2, D.E. 187-3.) The email explicitly acknowledges, however, that the work was for a facility located in North Carolina, not Colorado. Fortis does not attempt to explain how an opportunity for work that would be performed at a third-party facility in North Carolina translates to personal jurisdiction in Colorado.

Fortis further argues that because an individual in one of these emails stated that Schupmann had Coca-Cola as a "national account," that this creates personal jurisdiction for Roofing USA in Colorado. (Pl.'s Br. at 12; *see* Lewis Decl. Ex. 3, D.E. 187-4.) This is far too remote and attenuated. *See Dental Dynamics,* 946 F.3d at 1230 (finding no personal jurisdiction when there was only one sale, and the equipment purchased in the sale never passed through the forum state); *Rockwood Select Asset Fund XI (6)-1, LLC*, 750 F.3d at 1180 (holding alleged falsities in an opinion letter sent from a New Hampshire law firm defendant to a Utah plaintiff failed to establish jurisdiction in Utah). By that logic, personal jurisdiction over Roofing USA exists in every district court in the country, simply because a single email characterized Coca-Cola as a "national account." Because that is not the law, Fortis's argument fails.[2]

Fortis's heavy reliance on the *Dudnikov* decision is misplaced. There, the plaintiffs listed for auction on eBay fabric made in their home in Colorado. *Dudnikov*, 514 F.3d at 1067. The defendants believed they owned the copyright to the image on the fabric being sold and tried to stop the auction by contacting eBay. *Id.* The plaintiffs filed a declaratory

---

[2] If anything, Fortis's puffery regarding it being a "national commercial roofing company" with "national accounts" further obscures its Colorado location to someone like Tice. (Pl.'s Br. at 6.)

judgment action in Colorado, claiming that their prints did not infringe on the defendants'

copyright. *Id.* The Tenth Circuit found that there was personal jurisdiction over the de-

fendants based in part on the fact that they sent a letter to eBay to stop the plaintiffs'

auction of the fabric in Colorado. *Id.* at 1075.

Here, there is no evidence (and Fortis has not alleged) that Roofing USA did busi-

ness in Colorado or otherwise intended to interfere with Fortis's business relationships *in*

*Colorado.* Roofing USA never tried to generate business or intercept business deals in

Colorado. If anything, Fortis's evidence shows the opposite. The Coca-Cola emails might

show that Roofing USA tried to obtain business in North Carolina, but there is no evidence

that it intended to obtain customers or generate sales in Colorado. (*See* Lewis Decl. Exs.

1, 2, 3.) As such, Fortis has failed to make a prima facie showing that Roofing USA ex-

pressly aimed its alleged conduct at Colorado.

## V. Exercising personal jurisdiction over Roofing USA would offend traditional notions of fair play and substantial justice.

As discussed in the Motion to Dismiss, if minimum contacts are satisfied, the Court

determines whether the exercise of personal jurisdiction would offend traditional notions

of fair play and substantial justice. *Dental Dynamics*, 946 F.3d at 1229.

While Fortis may have an interest in adjudicating this case in Colorado, the other

relevant factors do not favor jurisdiction in this Court. Colorado is across the country from

South Carolina, where Roofing USA is located, and Roofing USA conducts no business

in Colorado. Therefore, the burden of litigating this case in Colorado is significant to Roof-

ing USA. Moreover, courts often have an interest in resolving disputes involving their cit-

izens when the plaintiff is injured in the forum state. See *Watson v. Dillon Cos., Inc.*, 615

F. Supp. 2d 1221, 1228 (D. Colo. 2009). However, as discussed above, Fortis has

presented no evidence that any of Roofing USA's alleged conduct occurred in Colorado or that any of the alleged injuries occurred in Colorado.

Fortis complains that it would have to pursue piecemeal litigation if the Court determined it did not have personal jurisdiction over Roofing USA. (Pl.'s Br. at 16–17.) Not necessarily. Fortis could avoid piecemeal litigation by choosing to litigate this matter in another jurisdiction, one which has personal jurisdiction over all Defendants. Moreover, as Fortis notes, *Watson* found that plaintiffs "have a strong interest in having all the defendants in a single lawsuit rather than pursuing piece meal litigation, [when] *the other defendants do not dispute jurisdiction. Id.* (emphasis added). Here, TopKey, the other recently added Defendant, has also moved to dismiss for lack of personal jurisdiction. (D.E. 164.) Overall, these factors tend to show that jurisdiction in this Court would offend notices of fair play and substantial justice.

Regardless of efficiencies or convenience to Fortis, Fortis has not shown that Roofing USA has sufficient minimum contacts with Colorado, which is fatal for the personal jurisdiction analysis. *Dental Dynamics*, 946 F.3d at 1229 ("*If* the minimum contacts test is met, we must then assess whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." (emphasis added).)

## V.    Conclusion

For the reasons discussed above and in Roofing USA's initial brief, the Court should grant this motion and dismiss Fortis's claims against Roofing USA for lack of personal jurisdiction.

10

**GENERATIVE AI USE CERTIFICATION**

The undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

Date: August 7, 2026                Respectfully submitted,

                                    ROOFING USA, LLC

                                    /s/ *Todd A. Rowden*
                                    Todd A. Rowden
                                    TAFT STETTINIUS & HOLLISTER LLP
                                    111 East Wacker Drive, Suite 2600
                                    Chicago, IL 60601
                                    Telephone: (312) 527-4000
                                    Facsimile: (312) 527-4011
                                    trowden@taftlaw.com

                                    *Counsel for Defendant Roofing USA, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record.

Date: August 7, 2026

/s/ *Todd A. Rowden*